UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JANE DOE,<br><br>              Plaintiff,<br><br>     v.<br><br>ALFREDO SIMON CABRERA<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 14-1005 (RBW)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

      The plaintiff filed this civil action, using the pseudonym Jane Doe, against the defendant, Alfredo Simon Cabrera, in the Superior Court of the District of Columbia, for alleged: (1) assault; (2) battery; and (3) intentional infliction of emotional distress.  Complaint ("Compl.") at 1.  The case was subsequently removed to this Court pursuant to 28 U.S.C. § 1441(b) (2012). Notice of Removal of Action Under 28 U.S.C. § 1441(b), ECF No. 1, at 1-2.  Currently before the Court is Alfredo Simon Cabrera's Motion To Preclude [The] Plaintiff From Using A Pseudonym ("Def.'s Mot.").  On August 19, 2014, the Court heard oral argument on the merits of the defendant's motion.  Upon careful consideration of the parties' submissions,[1] as well as

---

[1] In addition to the filings already identified, the Court considered the following submissions by the parties in rendering its decision: (1) Memorandum Of Law In Support [Of The] Defendant's Motion To Preclude [The] Plaintiff From Using A Pseudonym ("Def.'s Mem."); (2) [The] Plaintiff's Memorandum In Opposition To [The] Defendant's Motion To Preclude [The] Plaintiff From Using A Pseudonym ("Pl.'s Mem."); and (3) Reply Memorandum To [The] Plaintiff's [Memorandum In] Opposition To [The] Defendant's Motion to Preclude [The] Plaintiff From Using A Pseudonym ("Def.'s Reply").

1

their oral arguments, the Court concludes for the reasons below that the defendant's motion must be granted in part and denied in part.[2]

## I. BACKGROUND

**A. Factual Background**

The plaintiff asserts the following in her complaint. In April 2013, the plaintiff, Jane Doe, was a 27-year old woman, who resided in the District of Columbia. See Compl. ¶ 7. The defendant, Alfredo Simon Cabrera, is a professional baseball player for the Cincinnati Reds major league baseball team. Id. ¶ 6. On April 25, 2013, the defendant visited the District of Columbia as a member of the Cincinnati Reds to participate in several baseball games against the Washington Nationals major league baseball team. See id.

"On the night of April 27, 2013, [the plaintiff] went to the Huxley nightclub . . . with her roommate and her friends." Compl. ¶ 8. While at the nightclub, she met the defendant. See id. ¶ 9. The defendant "bought [the plaintiff] drinks" and eventually "grabbed [the plaintiff]'s hand" and told her they were leaving the nightclub together. Id. ¶¶ 10, 11. The "[d]efendant hailed a taxi [that took the two of them] to the Mayflower Renaissance Hotel," where the Cincinnati Reds players were staying while in Washington. Id. ¶ 11. "At that point, [the plaintiff] was visibly intoxicated." Id. "Around 2:30 a.m., [the plaintiff] entered [the] [d]efendant's [hotel] room, where he began to kiss her." Id. ¶ 12. Then, the following events transpired according to the plaintiff:

> [The] [d]efendant abruptly changed his behavior from a romantic encounter into a terrifying physical attack. As soon as [the] [d]efendant started to get rough with her, [the plaintiff] told him to stop. [The] [d]efendant ignored that plea, pinning [the plaintiff] down on her stomach while she struggled and continued to demand [the] [d]efendant stop and get off of her. [The] [d]efendant then grabbed her by

---

[2] As explained herein, the plaintiff will be permitted to use a pseudonym throughout the pretrial process, but not at trial, if there is a trial in this case.

the hair and attempted unsuccessfully and repeatedly to force his penis (without a condom) into her vagina, causing [the] [p]laintiff to be in immediate searing pain. Unable to penetrate her vagina, [the] [d]efendant shoved his penis (without a condom) into her rectum, causing [the] [p]laintiff to cry out in unbearable physical pain as he continued to rape her anally. Despite the fact that [the] [p]laintiff was crying and she was now bleeding from her vagina and anus, [the] [d]efendant proceeded to grab [the plaintiff] by the hair and to hold her head in front of his penis until he ejaculated all over her face and hair.

Id. ¶ 12. "Crying, disheveled and in fear for her safety, [the plaintiff] fled [the] [d]efendant's [hotel] room and took a taxi back to [the] Huxley" nightclub to "seek help from her roommate." Id. ¶ 14. The plaintiff "continued to experience extreme physical pain and bleeding" from her genitalia, id., and "[l]ater that morning, [the plaintiff] went to the Washington Hospital Center for a Sexual Assault Forensic Examination ('SAFE')[,]" which revealed several injuries to her genitalia, id. ¶ 15.

### B. The Defendant's Motion

The plaintiff filed a complaint against the defendant on April 24, 2014 in the Superior Court of the District of Columbia, contemporaneously moving to proceed under a pseudonym and to have her name and address be sealed in an affidavit that accompanied the filing of the complaint. Compl. at 1; id. at 1 n.1; Def.'s Mem., Exhibit ("Ex.") 1 (The Plaintiff's Motion For Leave To Proceed Under A Pseudonym And Memorandum of Points And Authorities In Support Thereof Filed In Superior Court Of The District Of Columbia ("Pl.'s Superior Court Mot.")); id. Ex. 2 (The Plaintiff's Motion For Sealing The Plaintiff's Address Filed In Superior Court Of The District Of Columbia ("Pl.'s Superior Court Mot. to Seal")). Those motions were granted.[3] See Def.'s Mem., Ex. 3 (Superior Court Order).

---

[3] As the defendant correctly points out, there appears to be some confusion as to whether the Superior Court granted both of the plaintiff's motions or only the motion to seal. See Def.'s Mem., Ex. 3. But given the defendant's motion, which likely would not have been filed if both motions were not granted, the Court will proceed under the assumption that the Superior Court granted both motions.

3

Notwithstanding the plaintiff's desire to proceed anonymously in her lawsuit against the defendant, the plaintiff—through counsel—released a public statement about the alleged encounter with the defendant after the complaint was filed.[4]  E.g., Def.'s Mem., Ex. 4 (Statement on www.WBALTV.com) at 1. The statement read as follows:

> The public may know me as Jane Doe, but I have a name, a face and a family.  I am as human as the next person.  When I moved to DC for my job I really wanted to help people.  I always felt so fortunate to have the family I did and especially my education.  I wanted to make a difference.  Being a counselor for at-risk youth was hard but there was nothing more fulfilling than helping someone to become the person they were mean[t] to be.  But I never went back to that job after April 27, 2013.  I sometimes feel like this man stole my sense of purpose in life.  I am in therapy now trying to work through the pain, but I am still angry.  While the physical injuries have healed, I will never be the same.

Id.  This statement, as well as other statements by the plaintiff's counsel, was published by a number of media outlets.  E.g., id., Ex. 5 (Statement in USA Today Sports) at 1; id., Ex. 6 (Statement on www.Fox19.com); see also id., Ex. 7 (Statement on www.cbsports.com) at 2 ("[The plaintiff] knows this is going to be an incredibly traumatic event.  It already has been . . . . You would never subject yourself to that had it not been for a real concern for the potential for this happening to other people."); id., Ex. 8 (Statement on www.wjla.com) at 1 ("This was a very brutal attack. . . . It was very traumatic for her."); id., Ex. 9 (Statement on www.abc2news.com) at 2 ("What she thought was going to be a romantic evening turned into a violent and brutal attack[.] . . . There was forensic evidence that demonstrated injuries that are just inconsistent with the notion of consent[.] . . . You do not consent to the type of injuries that are demonstrated in the medical records here." (internal quotations omitted)); id., Ex. 10 (Statement on www.baltimore.cbslocal.com) at 1 ("This is not a situation where we have a gold digger or

---

[4]  At the hearing, the parties represented that counsel who made these statements on behalf of the parties are not lead counsel in this case.

4

publicity seeker. This is an educated, very credible young woman."); id., Ex. 11 (Statement on www.usatoday.com) at 1.

The statement of plaintiff's counsel prompted the defendant's counsel to respond publicly. See, e.g., Def.'s Mem., Ex. 5 (Statement in USA Today Sports) at 1 ("Simon's lawyer[] called the claims in the complaint 'totally baseless.'"); id., Ex. 6 (Statement on www.Fox19.com) ("Simon's lawyer, broke his silence . . . and sa[id] that the claims are baseless and he plans to defend and fight for Simon."); id., Ex. 7 (Statement on www.cbsports.com) at 2 ("The allegations are totally baseless[.] . . . Mr. Simon will defend this matter fully and will be totally exonerated." (internal quotations omitted)); id., Ex. 9 (Statement on www.abc2news.com) at 2 (similar); id., Ex. 10 (Statement on www.baltimore.cbslocal.com) at 1; id., Ex. 11 (Statement on www.usatoday.com) at 1. In response to the public commentary from the plaintiff's counsel, the defendant has filed the motion, which is the subject of this opinion. See Def.'s Mem. at 1.

## II. ANALYSIS

Federal Rule of Civil Procedure 10(a) requires that a complaint state all of the names of the parties. "Disclosure of the parties' identities furthers the public interest in knowing the facts surrounding judicial proceedings." Nat'l Ass'n of Waterfront Emp'rs v. Chao, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). However, courts in this district allow plaintiffs to proceed under a pseudonym in certain cases involving matters of a sensitive and highly personal nature. See id.; see also Doe v. De Amigos, LLC, No. 11-cv-1755, slip op. at 2 (D.D.C. Apr. 30, 2012); Yaman v. U.S. Dep't of State, 786 F. Supp. 2d 148, 153 (D.D.C. 2011); Doe v. Von Eschenbach, No. 06-2131, 2007 WL 1848013, at *2 (D.D.C. June 27, 2007). "[I]t is within the discretion of the district court to grant the 'rare dispensation' of anonymity . . . ." United States v. Microsoft Corp., 56 F.3d 1448, 1464 (D.C. Cir. 1995) (quoting James v. Jacobson, 6 F.3d 233, 238 (4th

Cir. 1993)). In exercising this discretion, "the [C]ourt has 'a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted.'" Id. (quoting James, 6 F.3d at 238). "As part of this inquiry, the [C]ourt should take into account the risk of unfairness to the opposing party, as well the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" Id. (quoting Doe v. Stegall, 653 F.2d 180, 186 (5th Cir. 1981)) (internal citation omitted); see also Yaman, 786 F. Supp. 2d at 152 (explaining that notwithstanding "'this country's strong tradition of access to judicial proceedings' there are situations in which a 'party's interest in privacy or confidentiality . . . outweighs this strong presumption in favor of public access'" (quoting Johnson v. Greater Se. Cmty. Hosp. Corp., 951 F.2d 1268, 1277 (D.C. Cir. 1991)); Nat'l Ass'n of Waterfront Emp'rs, 587 F. Supp. 2d at 99; Von Eschenbach, 2007 WL 1848013, at *1.

Although the District of Columbia Circuit has not adopted a test for this inquiry, members of this Court have adopted a five-factor test "in balancing the competing interests involved." Nat'l Ass'n of Waterfront Emp'rs, 587 F. Supp. 2d at 99; Yaman, 786 F. Supp. 2d at 152-53; Von Eschenbach, 2007 WL 1848013, at *2; De Amigos, No. 11-cv-1755, slip op. at 2. These factors are:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;
> (4) whether the action is against a governmental or private party; and
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Nat'l Ass'n of Waterfront Emp'rs, 587 F. Supp. 2d at 99 (internal footnotes omitted); Yaman, 786 F. Supp. 2d at 152-53; Von Eschenbach, 2007 WL 1848013, at *2; De Amigos, No. 11-cv-

1755, slip op. at 2; see also Qualls v. Rumsfeld, 228 F.R.D. 8, 11 (D.D.C. 2005). Agreeing that these factors strike the right balance, the Court will address each in turn in assessing whether to grant the defendant's motion.[5]

### A. Whether the Use of a Pseudonym Will Preserve Privacy in a Matter of a Sensitive and Highly Personal Nature

Courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects. See De Amigos, No. 11-cv-1755, slip op. at 2 (citing cases); see also Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 872 (7th Cir. 1997) ("[F]ictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses."); E.E.O.C. v. Spoa, LLC, No. CCB-13-1615, 2013 WL 5634337, at *3, *4 (D. Md. Oct. 15, 2013) (finding that "sexual assault" is a "highly sensitive and personal matter"); Roe v. St. Louis Univ., No. 08-cv-1474-JCH, 2009 WL 910738, at *5 (E.D. Mo. Apr. 2, 2009) (allowing use of pseudonym because rape is a "personal matter of the utmost intimacy").

Here, even the defendant concedes that "courts have routinely recognized that sexual assault claims involve the disclosure of intimate details of sexual conduct." Def.'s Reply at 10. The plaintiff's privacy interests go beyond avoiding embarrassment and criticism.[6] According to the plaintiff, her alleged altercation with the defendant was not only physical, but also sexual.

---

[5] The defendant has cited a different set of factors for this Court to consider in deciding the defendant's motion. Def.'s Mem. at 6. The Court declines to adopt this test and will apply the five factors outlined by other courts in this district.

[6] Contrary to the defendant's assertion, neither Doe v. Shakur, 164 F.R.D. 359, 360-62 (S.D.N.Y. 1996) nor Rose v. Beaumont Indep. Sch. Dist., 240 F.R.D. 264, 265-67 (E.D. Tex. 2007) are helpful to his position. See Def.'s Mem. at 8-9. Both Shakur, 164 F.R.D. at 362, and Rose, 240 F.R.D. at 267, found that disclosure of the plaintiff's identity would only result in embarrassment or humiliation. The allegations in this case demonstrate that disclosure is not merely to avoid humiliation, but to protect the plaintiff's confidentiality and dignity as well. And as the Court will soon explain, concealing the plaintiff's identity is also necessary to prevent additional psychological harm to the plaintiff.

Compl. ¶ 12 (describing sexual encounter in hotel room).  The plaintiff's allegations include graphic details of the alleged incident, including multiple references to the plaintiff's genitalia and her hospital examination resulting from the alleged assault and battery.  Id. ¶¶ 12, 15, 20, 25, 31.  Because of the alleged sexual acts of the defendant and consequences of his purported actions, this case is one of a "sensitive and highly personal nature" for the plaintiff.  De Amigos, No. 11-cv-1755, slip op. at 3, 6.  This factor, therefore, weighs in favor of anonymity.

The defendant argues that this factor should not weigh in favor of the plaintiff because it was the plaintiff "who chose to include . . . graphic and specific descriptions [of the alleged sexual encounter in the complaint], rather than only pleading the allegations necessary to support the elements of her claims."  Def.'s Reply at 10.  Although the Court is sympathetic to the defendant's argument, as the plaintiff should "have foreseen" the public scrutiny that accompanies a case such as the one she filed,[7] especially considering the defendant's notoriety as a major league baseball player, the Court nonetheless recognizes that there is a "'strong [public] interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'"  De Amigos, No. 11-cv-1755, slip op. at 3 (quoting Doe No. 2 v. Kolko, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006)).

### B. Whether There is a Risk of Retaliatory Physical or Mental Harm

A showing of either a risk of retaliatory physical harm or a risk of mental harm weighs in favor of granting a plaintiff anonymity in a proceeding involving allegations of sexual assault.  See De Amigos, No. 11-cv-1755, slip op. at 3-4 ("Although there is no indication that [the

---

[7] To be sure, the plaintiff could have filed the complaint and concealed the identity of the defendant by identifying him as "John Doe."  Instead, in the plaintiff's complaint, she not only names the defendant, but also describes the defendant as a "professional baseball pitcher for the Cincinnati Reds," Compl. ¶ 6, and it is unclear how the defendant's profession is remotely relevant or necessary to her claim of assault, battery, and intentional infliction of emotional distress.

8

plaintiff's] identification poses a risk of retaliatory harm, such publicity could exacerbate the psychological harm that she has already experienced[.]"). A plaintiff need not show both a risk of retaliatory physical harm and mental harm—either is sufficient. See id.

Here, the Court finds that the public disclosure of the plaintiff's true identity is very likely to result in psychological trauma.[8] For example, in reading the defendant's motion alone, the plaintiff has seemingly "suffered from severe anxiety and stress." Pl.'s Mem., Ex. B (Pl.'s Aff.) ¶ 15 ("Since I reviewed the [defendant's] [m]otion, I have suffered from severe anxiety and stress based on my fear that intimate details about my sexual history and medical history will be revealed . . . ."). Were the Court to force the plaintiff to reveal her identity, the Court would risk undermining the psychological treatment the plaintiff has already undergone since the alleged incident and potentially retard the progress the plaintiff has made. See id. ¶ 9 ("I have experienced severe anxiety and depression as a result of the assault and my depression has been so bad at various points, I have contemplated suicide."); id. ¶ 13 ("I have recently made significant progress in my treatment from the assault and have been able to work at a full-time job."); id. ¶ 17 ("I am not sure I can move forward with my case if I am forced to publicly identify myself. No matter what I decide, <u>I know that facing public identification will set me back in recovery</u>[.]" (emphasis added)). Contrary to the defendant's assertion, Def.'s Mem. at 8-9; Def.'s Reply at 11, the plaintiff has shown a possibility of psychological harm from having her identity disclosed.

---

[8] In addition to psychological trauma, the plaintiff argues that because she learned that supporters of the defendant have "posted hateful comments on the Internet" about her with respect to her allegations, Pl.'s Mem., Ex. B (Pl.'s Aff.) ¶ 11, that she is now "afraid that [the] [d]efendant's supporters will come to [her] home and/or place of work to harass [her] and/or do [her] harm, id. ¶ 16. Despite this fear, the Court agrees with the defendant that no showing of a risk of retaliatory physical harm has been made. Def.'s Mem. at 9-10; Def.'s Reply at 14. This is not to say, however, that there is no possibility that fans of the Cincinnati Reds or the defendant may not seek to intimidate or demean the plaintiff if her identity becomes public. Nonetheless, the Court is not prepared to rest its decision on this argument based on the current record.

Further, compelling the plaintiff to identify her name on every court filing would make the plaintiff's name indefinitely available to the public.[9] Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case. See E.E.O.C., 2013 WL 5634337, at *3 ("It is not simply that [the plaintiff] may face embarrassment from this widespread disclosure . . . but rather [the plaintiff] may face psychological harm from having this sensitive experience made permanently available to anyone with Internet access."). Although the Court appreciates the public benefits of the Internet, it has the unfortunate drawback of providing an avenue for harassing people as well. See Pl.'s Mem., Ex. B (Pl.'s Aff.) ¶ 11 (being called derogatory names on the Internet). Out of grave concern that the Court could exacerbate any psychological issues the plaintiff is currently experiencing, the Court finds that this factor weighs in favor of anonymity.[10] See De Amigos, No. 11-cv-1755, slip op. at 3-4

---

[9] The plaintiff states that she is "so afraid of the consequence of being publicly identified, that [she is] not sure [she] can move forward with [her] case if [she is] forced to publicly identify [her]self." Pl.'s Mem., Ex. B (Pl.'s Aff.) ¶ 17. This Court agrees that <u>unnecessarily</u> compelling victims of alleged sexual assault to reveal their identities in a case could set forth precedent that has the unintended consequence of discouraging similarly situated victims in the future from reporting sexual assault crimes. See De Amigos, No. 11-cv-1755, slip op. at 3 (quoting Kolko, 242 F.R.D. at 195-96).

[10] This concern is confirmed by a licensed clinical social worker, with over ten years of experience in social work, who has evaluated the plaintiff—albeit for only a short period of time. See Pl.'s Mem., Ex. D. (Senick Aff.) ¶¶ 2, 3 (listing social worker's credentials and period of treatment); id. ¶ 8. ("[The plaintiff] has been in constant treatment since the assault and she has made progress in recovering from the physical and emotional injuries she sustained."); id. ¶ 13 ("Based upon my knowledge, training and experience, and my ongoing treatment of [the plaintiff], it is my opinion that the public disclosure of [the plaintiff]'s name and address would result in serious additional injury to her by <u>aggravating</u> her underlying diagnosis of [Post Traumatic Stress Disorder] and anxiety and depression." (emphasis added)).

The defendant directs the Court to certain statements in the social worker's affidavit that the defendant suggests should "greatly reduce [her] credibility." Def.'s Reply at 12 (identifying inconsistencies between the Senwick Affidavit and the plaintiff's allegations). The defendant insists that the circumstances here are similar to those in Doe v. Del Rio, 241 F.R.D. 154, 161-62 (S.D.N.Y. 2006), where a social worker's opinion was "discounted somewhat" when it appeared to "have been hastily prepared." Although there are some parallels, at least one <u>significant</u> difference between the affidavit submitted in Del Rio and the one submitted here by the plaintiff's social worker is that the social worker in Del Rio, did not establish any link between "<u>public disclosure of [the] plaintiff's name</u> and the described psychological risk to [the plaintiff]." Id. at 161 (emphasis in original); see also Pl.'s Mem., Ex. D. (Senick Aff.) ¶ 13 ("Based upon my knowledge, training and experience, and my ongoing treatment of [the

(continued . . .)

("[P]ublicity could exacerbate the psychological harm that [the plaintiff] has already experienced . . . ."); E.E.O.C., 2013 WL 5634337, at *3, *4 (allowing use of pseudonyms because disclosures would result in "needless risk of mental harm").

### C.  Whether Privacy Interests Need Protection of Pseudonym in Light of Age

Where victims are not minors, courts are generally less inclined to let the alleged victim proceed in litigation under a pseudonym.  See Yaman, 786 F. Supp. 2d at 153 (citing Von Eschenbach, 2007 WL 1848013, at *2); see also E.E.O.C., 2013 WL 5634337, at *3, *4 (concluding this factor weighs against anonymity when the alleged victims were "above" or "over" the age of majority at the time of the alleged sexual assault); De Amigos, No. 11-cv-1755, slip op. at 4 (recognizing that children are more vulnerable than adults and so children need more protection of their privacy interests).  Here, the plaintiff was not a minor at the time of the incident, see Compl. ¶ 7 (noting that "[a]t the time of [the alleged sexual assault and battery, the plaintiff] was a 27-year old resident of the District of Columbia"), so this factor weighs against allowing the plaintiff to proceed anonymously.

### D.  Whether the Action is Against a Governmental or a Private Party

In assessing whether pseudonymous litigation is appropriate, courts must also consider whether an accused defendant is a governmental entity or a private party.  This consideration is "'significant because governmental bodies do not share the concerns about 'reputation' that private individuals have when they are publicly charged with wrongdoing.'"  De Amigos, No. 11-cv-1755, slip op. at 4 (quoting Doe v. Shakur, 164 F.R.D. 359, 361 n.1 (S.D.N.Y. 1996)); see

---

( . . . continued)
plaintiff], it is my opinion that the public disclosure of [the plaintiff]'s name and address would result in serious additional injury to her by aggravating her underlying diagnosis of [Post Traumatic Stress Disorder] and anxiety and depression.").  Finally, Del Rio did not conclude that the social worker's affidavit should be discounted entirely—only "somewhat".  Id. at 161 (emphasis added).  Here, even without relying on the affidavit from the plaintiff's social worker, the Court finds that this factor favors anonymity.

also Yaman, 786 F. Supp. 2d at 153 (finding action brought against private party weighs against anonymity (citing Von Eschenbach, 2007 WL 1848013, at *2)). This factor weighs against allowing the plaintiff to use a pseudonym because the defendant is a private litigant, who undoubtedly has concerns about his reputation.

### E. Whether Permitting the Use of a Pseudonym is Unfair to the Defendant

Courts generally find little to no risk of unfairness to an accused defendant in sexual assault cases where discovery does not appear to be inhibited by the plaintiff's desire to proceed anonymously. De Amigos, No. 11-cv-1755, slip op. at 5 (finding any unfairness in conducting third-party discovery "minimal" to the defendant where the plaintiff "already disclosed her identity" to the defendant); see also E.E.O.C., 2013 WL 5634337, at *3, *4 (finding no prejudice where the defendant knew the plaintiff's true identity, and thus was "fully capable of investigating and responding to [the plaintiff's] allegations"); EW v. New York Blood Ctr., 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (allowing pseudonym where the "defendant has not identified any prejudice to its ability to conduct discovery or try the matter if [the] plaintiff were to proceed under a pseudonym").

This factor weighs in favor of anonymity as it would not be unfair to the defendant if the plaintiff proceeded under a pseudonym for pretrial purposes. The defendant "was provided with [the] [p]laintiff's name and address when he was served with the [c]omplaint." Pl.'s Mem. at 11. "Moreover, [the] [p]laintiff has not sought to impose any limitation on [the] [d]efendant's ability to conduct whatever discovery he deems necessary (given the appropriate protective orders governing the use and dissemination of identifying information)—[the] [p]laintiff seeks only to protect against public disclosure of her name and address." Id. at 12. The defendant does not contest this, see Def.'s Reply at 15 (conceding that plaintiff "thus far has imposed no limits on

his use of [her name and address]"), and thus the defendant does not appear to be unfairly harmed by proceeding until the trial commences without having the plaintiff's name publicly disclosed on the complaint, other filings submitted to the Court by the parties, and the court docket.

The defendant insists that the plaintiff's anonymity going forward will prejudice his discovery efforts because the plaintiff "[has] unfairly shield[ed] herself from witnesses who might come forward with valuable evidence about [the] [p]laintiff's allegations or her credibility generally."[11] Def.'s Mem. at 11; see also Def.'s Reply at 15. But this is nothing more than conjecture at best.[12] Indeed, given what the defendant has classified as "[the] [p]laintiff's [m]edia [c]ampaign," Def.'s Reply at 6-7, it is difficult for the Court to see how disclosure of the plaintiff's identity would bring out unidentified third-party witnesses that are currently lying in wait.[13] Without more concrete evidence that such third parties exist, the Court will not jeopardize the mental recovery the plaintiff has thus far achieved. The defendant's position is made even more tenuous by his own investigative efforts. Without the plaintiff's identity publicly disclosed, the defendant has already identify potential third-party witnesses using private investigators. Pl.'s Mem. at 12 ("[The] [d]efendant's investigators have been making full use of [the] [p]laintiff's name—openly identifying her in connection with this case to at least two

---

[11] The Court is uncertain of the defendant's litigation strategy in this case. But the Court advises the defendant that the Federal Rules of Evidence generally prohibit "evidence offered to prove that a victim engaged in other sexual behavior" as well as "evidence offered to prove a victim's sexual predisposition" in litigation involving sexual misconduct. Fed. R. Evid. 412(a)(1)-(2).

[12] Further, presumably the only third-party witnesses who know the plaintiff and potentially have discoverable information would be the "roommate" and "friends" that accompanied the plaintiff to the nightclub. Compl. ¶¶ 8, 14. And the defendant has made no allegation that the plaintiff is refusing to disclose the identities of these potential witnesses.

[13] In any event, to the extent that an unidentified third-party may have discoverable information to bring to the attention of the parties, that third party is likely to come forward because of defendant's stature as a professional baseball player.

potential witnesses without first confirming the identity of the potential witnesses."); id., Ex. B (Pl.'s Aff.) ¶ 18 ("Since the filing of the lawsuit, I have heard from two separate individuals who were approached by private investigators apparently working for [the] [d]efendant.").

The defendant argues that "this factor overwhelming favors [him] because [the] [p]laintiff has voluntarily injected her own statements as well as those of her attorneys to various media outlets" thereby forcing the defendant to defend himself publicly while the plaintiff hides behind "'a cloak of anonymity.'" Def.'s Reply at 15 (quoting Shakur, 164 F.R.D. at 361); Def.'s Mem. at 10. The defendant's contention does not necessarily fall on deaf ears. The Court is deeply concerned and troubled by the public statement made by the plaintiff—presumably with the plaintiff's consent—to the media after the plaintiff filed the complaint. It appears that the plaintiff, her attorney, and others operating on her behalf, are attempting to try her case in the media or gain a tactical advantage through their public statements. See, e.g., Def.'s Mem., Ex. 9 (Statement on www.abc2news.com) at 2 ("What [the plaintiff] thought was going to be a romantic evening turned into a very violent and brutal attack[.] . . . There was forensic evidence that demonstrated injuries that are just inconsistent with the notion of consent[.] . . . You do not consent to the type of injuries that are demonstrated in the medical records here." (internal quotations omitted)); id., Ex. 10 (Statement on www.baltimore.cbslocal.com) at 1 ("This is not a situation where we have a gold digger or publicity seeker. This is an educated, very credible young woman."). Upon the filing of the complaint, the plaintiff and any counsel representing the plaintiff or otherwise acting on her behalf should have remained silent about the case. Although the Court appreciates zealous advocacy, counsel for the plaintiff and other attorneys acting on her behalf should have known better than to publicize the plaintiff's case.

Nevertheless, the Court is hard pressed for several reasons to find that allowing the plaintiff to proceed under a pseudonym would be so unfair to the defendant such that her identity should be made public at this juncture of the litigation. First, despite the public statements from the plaintiff's counsel and others, her true identity remains hidden from the public as none of their statements have revealed her true name.[14] So the plaintiff's interest in maintaining her anonymity remains a valid concern. Second, counsel for the defendant has publicly responded to these statements. Thus, whatever prejudice may have resulted from the public disclosures by the plaintiff's counsel and others has been offset by the statements by the defendant's counsel. See Doe v. Alexian Bros. Med. Ctr., No. 96-C-2042, 1996 WL 210074, at *1 (N.D. Ill. Apr. 25, 1996) (finding that pseudonymous plaintiff's "press disclosures would [not] influence the outcome of a trial, affect the [d]efendant's rights, or prejudice this case in any way"); cf. New York Blood Ctr., 213 F.R.D. at 112 ("[A]ny additional prejudice to the defendant's reputation or ability to operate merely by the pursuit of the action under a pseudonym appears minimal" despite negative publicity regarding the defendant.). To the extent any residual prejudice lingers from the public remarks of the plaintiff's counsel, it is minimal. See De Amigos, No. 11-cv-1755, slip op. at 5.

---

[14] The plaintiff states that "[a]side from a very few close friends and family members, [she has] told no one about the assault. I have only shared the intimate details concerning the sexual assault with law enforcement, my therapists and my attorneys." Pl.'s Mem., Ex. B (Pl.'s Aff.) ¶ 10. The extent of her disclosures does not reel in the public at large, and these disclosures—particularly those to her attorneys and therapists—were necessary to help her cope and move on from the alleged incident. See Kolko, 242 F.R.D. at 198 (allowing plaintiff to proceed anonymously "where knowledge of [the] plaintiff's identity [was not] so widespread that [the plaintiff's] privacy concerns are unjustified").

Further, the defendant's reliance on Shakur is misplaced. There the "plaintiff . . . conceded that the press ha[d] known [the plaintiff's] name for some time." Shakur, 164 F.R.D. at 362. And the plaintiff made it "clear that the press ha[d] been aware of both her residence and her place of employment." Id. Were such an extensive amount of information about the plaintiff in this case already publicly available, the Court would be inclined to find that this factor weighs against anonymity.

If, however, a trial is ultimately needed to resolve this dispute, then the defendant's ability to receive a fair trial will likely be compromised if the Court allows the plaintiff to continue using a pseudonym, as the jurors may construe the Court's permission for the plaintiff to conceal her true identity as a subliminal comment on the harm the alleged encounter with the defendant has caused the plaintiff. See E.E.O.C., 2013 WL 5634337, at *3 (recognizing that "grant of anonymity would implicitly influence the jury").[15] Therefore, if this case proceeds to trial, the plaintiff will not be allowed to use a pseudonym. See id. at *3, *4 (allowing litigants to "remain[] anonymous in the pleadings, motions, docket entries, and all written materials filed in th[e] case; however, [ordering anonymous litigants] to appear under [their] legal name[s] in open court"); see also Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1069 (9th Cir. 2000) ("We recognize that the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses.").[16]

### III. CONCLUSION

Considering the sensitive and highly personal nature of this case, the risk of psychological harm to the plaintiff if the plaintiff's name were made public, and the minimal, if any, unfairness that the plaintiff's anonymity would cause the defendant, the defendant's Motion

---

[15] It is not difficult to appreciate that jurors may infer that the Court has an opinion about the harm the plaintiff has allegedly suffered by its decision to permit the plaintiff to conceal her true identity. The Court cannot afford the plaintiff that potential advantage at the expense of the defendant, who like the plaintiff is also entitled to a fair trial.

[16] The Court emphasizes that denying the defendant's motion is necessarily a preliminary determination, requiring the Court to make the decision based on the plaintiff's allegations and submissions to the Court. This ruling should not be read to suggest that the Court may not reverse its position on anonymity should circumstances change, warranting a different result. In that regard, counsel and the parties themselves should appreciate that the Court will not tolerate attempts to gain an advantage through the use of the media, including social media. Therefore, should the parties, their counsel, or others acting on their behalf, cause further unnecessary dissemination of public comment about this case, the Court's position on the plaintiff's anonymity, both pretrial and at trial, may change.

To Preclude [The] Plaintiff From Using A Pseudonym is **GRANTED IN PART** and **DENIED IN PART**.[17]

---

[17] The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.