UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br><br> v. <br><br> ALFREDO SIMON CABRERA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 14-1005 (RBW) <br> ) <br> ) <br> ) <br> ) <br> ) |

ORDER

In accordance with the Court's oral rulings at the teleconference,[1] held on this same date, it is hereby

**ORDERED** that the plaintiff's oral motion to vacate the Court's orders from the August 5, 2015 hearing is **DENIED**. It is further

**ORDERED** that the plaintiff's oral motion to stay the case pending briefing on the issue of whether the Court should recuse itself in this case is **DENIED**. It is further

**ORDERED** that the plaintiff shall file a motion, if any, for the Court to recuse itself from this matter on or before August 28, 2015.[2] It is further

**ORDERED** that the defendant shall file an opposition, if any, to the plaintiff's motion on or before September 11, 2015. It is further

---

[1] The Court scheduled the teleconference in light of certain information brought to its attention by one of its law clerks and also independently by defense counsel through a letter to the Court and the plaintiff's counsel. See Exhibit ("Ex.") A (August 11, 2015 Letter From J. Fetterolf to the Court).

[2] To aid the parties in their briefing on the issue of recusal, the Court has attached declarations from two law clerks to this Order. See Ex. B (Declaration of Hugham Chan); Ex. C (Declaration of Marina Fernandez).

**ORDERED** that the plaintiff shall file a reply to the defendant's opposition, if any, on or before September 18, 2015.

**SO ORDERED** this 18th day of August, 2015.

REGGIE B. WALTON<br>
United States District Judge

# EXHIBIT A



1800 M STREET, NW    SUITE 1000
WASHINGTON, DC 20036-5802
202.778.1800    202.822.8106 fax    www.zuckerman.com

JON R. FETTEROLF
Partner
(202) 778-1880
jfetterolf@zuckerman.com

August 11, 2015

**Via Electronic Mail**

Honorable Reggie B. Walton
United States District Judge
United States District Court for
 The District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

    Re: *Jane Doe v. Alfredo Simon Cabrera*, 1:14-cv-1005

Dear Judge Walton:

    I write to bring to the Court's attention recent communications between a member of the Court's chambers and one of the attorneys for the Defendant. Although I believe that the communications were in jest (as they were explicitly labeled as such) and therefore should not be a matter of concern, I also think it appropriate to provide the Court with the following information in advance of the telephonic hearing scheduled for August 18, 2015 at 9 a.m.

    On Thursday, August 6, 2015, one of the Court's law clerks sent a series of text messages to Benjamin Voce-Gardner, an associate in our firm's New York office, who has appeared in this case. The law clerk's first message, sent at approximately 3 p.m. stated "You're going to owe me a beer . . . fyi."[1] The second message, sent around 4:30 p.m., stated "Yes, as of 3:34 today you owe me a beer (or wine!)."[2] The final text message that afternoon stated "Dude, it's a joke. Let's catch up soon for real though." Mr. Voce-Gardner did not respond to any of these texts. Nor did he answer a phone call from the law clerk placed to him just after the final text. Instead, he brought these matters to my attention after he received the first of these text messages.

    As you are aware, the Court's law clerk is the daughter of a long-time partner in our firm's Tampa office. Because of that, she has developed friendships with a number of attorneys

---

[1] At approximately 4:30 p.m., the law clerk sent a similarly worded message to her father.
[2] At 3:34 p.m. the Court entered into the ECF system its written order granting the Defendant's motion to disclose grand jury testimony. The Court, of course, orally granted that motion the day before at the August 5, 2015, hearing.

WASHINGTON DC    NEW YORK    TAMPA    BALTIMORE


**ZUCKERMAN SPAEDER LLP**

Honorable Reggie B. Walton
August 11, 2015
Page 2

at our firm. When she joined the Court's chambers, we understood that she would be screened from any matters involving our firm. I, and others at our firm, specifically understood that such screening included this case.

Over the years, our firm has provided representation to family members and relatives of our lawyers and staff. In late 2014, when the Court's law clerk had a legal issue regarding an unexpected recall to military service, lawyers at the firm provided assistance to her. Our associate Mr. Voce-Gardner is a former member of the armed forces who served in the Judge Advocate General's Corps. He assisted in work for the Court's law clerk along with one other attorney at the firm. The firm's representation of the law clerk in that matter began in January 2015 and concluded in February 2015.

Because of their common military backgrounds, Mr. Voce-Gardner and the Court's law clerk became friends and texted each other from time to time. On June 29 of this year, the Court's law clerk texted Mr. Voce-Gardner: "Are you in dc and neglected to tell me." Mr. Voce-Gardner responded "Nope! Why? I'm coming down for the day tomorrow but I'm only on the ground for about 6 hours." The law clerk responded: "Bummer. Just felt [sic] with an over the phone objection in one of your cases, thought you might be here." The response was "Alas no! How much longer before you start at DOJ?" The law clerk then texted "Late Sept or ocr [sic], leaving here sept 4!" The exchange continued but covered only personal and unrelated topics.

While the Court did conduct a telephone hearing on June 29 to address a dispute arising in a deposition in this case that day, Mr. Voce-Gardner was not present at the deposition and was not part of that telephonic hearing. He read the law clerk's June 29 text quickly and responded only to the portion of it concerning a possible trip to Washington, D.C. He did not realize at the time that the law clerk could have been referring to an event in the Defendant's case, and because of that did not bring the June 29 text message to my attention. He believed, as I and the other Zuckerman lawyers involved in this case do, that the Court's law clerk was recused from all matters involving our firm, including this matter. With regard to the deposition matter that the Court handled in a phone proceeding, I note that the dispute involved an objection asserted by a third party, not by the plaintiff. Also, while I recall that a woman answered the telephone call made to chambers from the deposition room, she indicated that the law clerk who handles this case was unavailable. She passed the call to Your Honor, who conducted the proceeding and denied the objection at the end of the telephone call.

In advance of sending this letter I spoke with Steve Kelly, counsel to Plaintiff, and reviewed with him the substance of the facts set forth above, and noted that I planned to submit this letter to the Court. I will participate in the telephonic hearing on August 18 and am available to answer any further questions.


**ZUCKERMAN** SPAEDER LLP

Honorable Reggie B. Walton
August 11, 2015
Page 3

                              Sincerely,

                              Jon Fetterolf/ms

                              Jon Fetterolf

cc: Steven J. Kelly, Esquire

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALFREDO SIMON CABRERA, )<br>)<br>Defendant. )<br>) | Civil Action No. 14-1005 (RBW) |

### DECLARATION OF HUGHAM CHAN

1. My name is Hugham Chan. I am thirty-one years old and have personal knowledge of the facts contained herein.

2. I am one of three law clerks for the Honorable Reggie B. Walton of the United States District Court for the District of Columbia. I started clerking for Judge Walton in August 2014. Before starting my clerkship, I was an associate at Kirkland & Ellis LLP.

3. Since the start of my clerkship, I have been the only law clerk that has substantively assisted Judge Walton with the handling of civil action number 14-1005, Doe v. Cabrera (the "case"). When I first reviewed this case, I identified no actual or potential conflicts of interest that would either inhibit my ability to assist Judge Walton in his handling of this case or create an appearance of impropriety.

4. More specifically, in advising Judge Walton as to how he should rule on the parties' motions in this case, I have not received any substantive assistance from either of my co-clerks.

5. To the best of my knowledge, Judge Walton has not sought out any substantive assistance from either of my co-clerks with regards to any aspects of this case.

6. I swear under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Dated: August 17, 2015

Hugham Chan, Esq.

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br> v. <br><br> ALFREDO SIMON CABRERA, <br><br> Defendants | Civil Action No. 14-1005 (RBW) |

## DECLARATION OF MARINA FERNANDEZ

I, Marina Fernandez, do herby affirm

1. I am of legal age, have personal knowledge of all of the following facts and am competent to testify to the same. I make this declaration in support of my claim that I have had no substantive involvement in any case involving Zuckerman Spaeder during the course of my clerkship.
2. I began clerking for the Honorable Reggie B. Walton on November 18, 2013. At the onset of my clerkship, Judge Walton instructed me that I was conflicted from participating in any cases being litigated by the law firm of Zuckerman Spaeder due to my father's employment as a partner at that firm.
3. In January of 2015, I became friends with an associate at Zuckerman Spaeder, Ben Voce-Gardner, when he assisted me with a personal legal matter.[1] Based on a shared military background, we became friendly and maintained contact beyond his period of assistance. We primarily discussed issues pertaining to the naval reserves, my husband's upcoming deployment, and shared professional goals in the legal profession.
4. I have a social relationship with limited other members of Zuckerman Spaeder. However, each time I see these few people personally, I pay for my own share of the meal that we are participating in so as to avoid the appearance of impropriety. This includes the time I have spent with Mr. Voce-Gardner. I paid for all known expenses during the course of his representation. The only exception to this is when I am with my father, in which case he generally pays for my participation in his capacity as my father.[2]

---

[1] The period of representation lasted from January 2015 through February 2015 with some follow-up discussion in May 2015.

[2] Notably, I have not been financially dependent on my father since July 1998, when I joined the military. He has, however, provided me with several generous gifts over the past seventeen years. The only large gift that I can recall receiving during the course of my clerkship has been paying for my 2014 wedding. He offered to pay for the wedding in late February 2014.

1

5. Since beginning my clerkship in November 2013, to the best of my knowledge, I have not participated in any Zuckerman Spaeder sponsored events.
6. Once the Clerk's Office assigned the case of Doe v. Cabrera to the Honorable Reggie B. Walton, it was immediately realized that the defendant was represented by Zuckerman Spaeder. At that time, although the case was not assigned to my portion of the docket, and though I did not know any of the attorneys assigned to the case, Judge Walton stated that I was to have no substantive involvement in the case.
7. On occasion, as a result of my duties in chambers,[3] I have answered the phone when one or both attorneys involved in the Doe v. Cabrera case was on the line. Upon receiving those calls, I either directed the call to the law clerk handling the matter or took a message. At no time, to the best of my knowledge, did I inquire into the purpose or substance of any calls to relay as part of the message.
8. On one occasion both the plaintiff's and defendant's attorneys called regarding a deposition. I notified them that the law clerk handling the matter was not available. The parties quickly outlined the relevant issue upon which they were seeking Judge Walton's immediate assistance.[4] To the best of my recollection, the issue presented involved a third party objection, and was unopposed by the plaintiff's counsel. I relayed the information to Judge Walton, reminded him that because this was a Zuckerman Spaeder case, I could not opine, and asked the third law clerk to assist in addressing any questions raised by Judge Walton.
9. After having answered this call, I texted Mr. Voce-Gardner to inquire into whether he was in town, having considered that he was possibly participating in the deposition.
10. As my clerkship is ending, I have been attending most of Judge Walton's hearings. On August 5, 2015, I attended a number of hearings, one of which was a motions hearing for Doe v. Cabrera.
11. Prior to attending the hearing, I was unaware of what legal issues were being argued. The clerk assigned to the case prepared the bench memo.[5]
12. During the hearing, I observed Judge Walton issue various discovery orders regarding expert designations and additional depositions. I also observed Judge Walton ruled from the bench that certain testimony was to be released to the defendant by the end of the day.[6] Based

---

[3] Judge Walton does not employ a judicial assistant or secretary so, as a result, all of the law clerks are responsible for answering the phone.

[4] To the best of my recollection, upon answering the phone, the parties immediately launched into an explanation of why Judge Walton's involvement was needed, and prior to me having the opportunity to inform them that the law clerk handling the matter was not available. However, as this is common with most attorneys that call chambers seeking assistance, I did not think to interrupt the parties during their explanation.

[5] The week of the hearing at issue, August 3–7, 2015, I was responsible for the preparation of one complex criminal motions hearing involving issues of first impression, four sentencings, coordinating the completion of five Judgement and Commitment Orders, and the completion of a twenty-five page opinion, on top of my routine duties within chambers. Additionally, I have a list of four substantial opinions that must be completed prior to my September 4, 2015 departure. There is simply no possible scenario in which, given this workload, I would have been able to assist in the preparation for Doe v. Cabrera.

[6] Based on my recollection of the hearing, one of the parties raised the issue of disclosing testimony sua sponte and the Judge, in his discretion, decided to entertain argument.

solely on the arguments raised during the hearing, it was my understanding that Judge Walton adopted an order issued by a District of Columbia Superior Court judge.

13. At the completion of the hearing, based solely on Judge Walton's oral order that the documents be disclosed by the end of the day, I reminded my co-clerk to issue a paper order memorializing the oral ruling. This suggestion was made because Judge Walton would be unavailable for most of the follow day, Friday, August 7, 2015, and all of the following week and thus unable to review the verbiage of the order. Because of Judge Walton's upcoming unavailability, chambers staff was attempting to ensure all orders were reviewed and issued prior to this period.

14. The following day, August 6, 2015, I inquired into the status of all pending orders requiring Judge Walton's approval prior to issuance. This is my standard practice prior to a weekend or period of extended unavailability. I recalled that the Doe v. Cabrera order was among those cases. At that time I texted Mr. Voce-Gardner that he was going to owe me a beer. I incorrectly assumed that he would know that this text was made in jest based on the fact that: (1) I had informed him several times during the course of our interactions I did not work on any Zuckerman cases; and (2) Mr. Voce-Gardner is acutely aware that I am presently pregnant and thus, do not drink. In reality, I had information to relay to him pertaining to naval orders being dramatically changed without the service member being notified. I followed up the text after I noticed that a number of orders had been issued, that he definitely owed me a beer.[7]

15. After realizing how the texts appeared, I sent a follow up that I was kidding and expressing my desire to catch up. I also attempted to call Mr. Voce-Gardner to again reiterate that I did not have anything to do with any Zuckerman Spaeder cases. He did not pick up the phone.

16. After that, I called Judge Walton and notified him of the text message exchange and followed up the phone call with an email outlining the events. I included a "screen shot" of the text messages. It is my understanding that he promptly scheduled a hearing so that the above information could be disclosed and made part of the record.

17. I have never provided Judge Walton with any substantive input regarding Doe v. Cabrera nor has he solicited my input on this case.

18. I have never provided Judge Walton with any substantive input regarding any case in which Zuckerman Spaeder provided legal representation.

*/s/ Marina Fernandez*

Marina C. Fernandez
Law Clerk to the Hon. R. B. Walton
August 17, 2015

---

[7] All ECF postings that are filed on the docket are emailed to a singular chambers account, Walton_chambers@dcd.uscourts.gov, and all law clerks are required to monitor that inbox throughout the day.

3