# EXHIBIT B

## PRELIMINARY EXPERT AFFIDAVIT OF KEITH SWISHER

STATE OF ARIZONA    )
                       ) ss.
COUNTY OF MARICOPA  )

Keith Swisher, after first being duly sworn, deposes and states as follows:

1.  I am a licensed attorney in the State and District of Arizona and the Ninth Circuit (since 2004), a law professor (since 2008), and former associate dean at Arizona Summit Law School/Phoenix School of Law (from 2011 to 2015).

### CREDENTIALS

2.  My career to date has been dedicated to the study and advancement of legal and judicial ethics. These efforts are detailed in my attached curriculum vitae and generally summarized below:

3.  In practice, following a year as a judicial clerk on the United States Court of Appeals for the Ninth Circuit, I focused on ethics and professional liability matters, including defending lawyers and judges in disciplinary proceedings, representing applicants in bar admissions, and representing lawyers in legal malpractice cases, in addition to commercial litigation, criminal defense, and appeals. I continue to serve as an ethics consultant and expert witness, addressing conflict of interest and disqualification issues (among others), and serve on the Federal Criminal Justice Act Appellate Panel, representing indigent defendants on appeal.

4.  In professional appointments, from 2008 to 2011, I served on the Editorial Board of the ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT; since 2007, I have been a member of the Association of Professional Responsibility Lawyers; since 2010, I have served on the State Bar of Arizona Ethics Committee (more formally known as the Committee on the Rules of Professional Conduct), on which I assist drafting and critiquing statewide ethics opinions, answer telephonic inquiries from

1

1   lawyers with ethical dilemmas, and revise the ARIZONA LEGAL ETHICS HANDBOOK;

2   and since 2014, I have been a fee arbitrator and member of the State Bar's Fee

3   Arbitration Committee.

4       5.   In research and writing, my published scholarship and ongoing research

5   have focused on legal and judicial ethics, including conflicts of interest, lawyer

6   disqualification, judicial disqualification, and the history of Arizona legal ethics.  I have

7   listed my previously published works on the attached CV.  I also founded and continue

8   to edit the first judicial ethics blog, The Judicial Ethics Forum, and the first lawyer and

9   law firm disqualification blog, DQed.

10       6.   In teaching, I taught legal ethics at the Arizona State University College

11   of Law in 2008 and 2009 (with Mark I. Harrison); and since 2009, I have regularly

12   taught legal ethics at Arizona Summit Law School/Phoenix School of Law, in addition

13   to jurisprudence and torts.

14       7.   In continuing legal education, conferences, symposia, and press

15   interviews, I regularly speak on issues in legal and judicial ethics.

16       8.   In recognition of my efforts in the fields of legal and judicial ethics, I was

17   the 2011 recipient of the ABA Rosner & Rosner Young Lawyer Professionalism

18   Award.

19                                     SCOPE OF RETENTION

20       9.   I have been asked by Plaintiff's counsel, SILVERMAN, THOMPSON,

21   SLUTKIN & WHITE LLC, to opine on the judicial ethics and recusal rules applicable to

22   the circumstances recounted below, including the communications and screening of the

23   Court's senior law clerk.

24       10.   I am being compensated for my services in this matter at an hourly rate,

25   plus any expenses.  I have no stake in the outcome of this matter.

26                           OPINIONS, BASES, AND ASSUMPTIONS

27       11.   In formulating my opinions in this matter, I relied on my knowledge and

28

                       2

1   experience in the fields of professional ethics and disqualification, along with the

2   following information: Complaint; Defendant's Answer; Transcript of Motions Hearing

3   on August 5, 2015; Transcript of Telephonic Conference on August 18, 2015;

4   Plaintiff's Motion to Disqualify; Telephonic Conversations with Plaintiff's Counsel;

5   Defendant's Motion to Conduct Mental Health Examination of Plaintiff; Plaintiff's

6   Memorandum in Opposition to Defendant's Motion to Conduct Mental Health

7   Examination of Plaintiff; Order Granting Defendant's Motion to Conduct Mental

8   Health Examination (Aug. 5, 2015); Defendant's Renewed Motion for Disclosure of

9   Jane Doe's Grand Jury Testimony; Plaintiff's Opposition to Defendant's Renewed

10  Motion for Disclosure of Jane Doe's Grand Jury Testimony; Reply in Support of

11  Defendant's Renewed Motion for Disclosure of Jane Doe's Grand Jury Testimony;

12  Order Granting Defendant's Renewed Motion for Disclosure of Jane Doe's Grand Jury

13  Testimony (Aug. 6, 2015); and Order Denying Oral Motions to Stay Proceedings and

14  Vacate Orders (Aug. 18, 2015) and accompanying Exhibits A-C.[1]

15      12.     In reaching my opinions, I relied on and applied the following facts:[2]

16      (a)     That the Court's senior law clerk is the daughter of a "long-time partner"
17              of Defendant's law firm;

18      (b)     That as a consequence of this relationship, the law clerk was supposed to
19              be screened from any case involving the firm, including the matter at
                hand;

---

[1]   The specified items were reviewed and relied on only to the extent that they contained information pertinent to the issues on which I was asked to express an opinion.

[2]   Although it is not my function to resolve factual disputes, it is appropriate for expert witnesses to rely on facts supported or to be supported in the record. Accordingly, to the extent my opinions are based on facts, it is my understanding that those facts are or will be supported by facts that will form part of the record in this case. In addition, this factual summary is not intended to be an exhaustive list of all facts relevant to the ethical or legal issues.

3

(c)    That an attorney with the Defendant's law firm, who has appeared in this matter, represented the law clerk, pro bono, while this matter was pending;[3]

(d)    That the law clerk, the Court, and the law firm did not inform the Plaintiff of the father-daughter relationship or the provision of free legal services to the Court's law clerk;

(e)    That the law clerk nevertheless handled the intake and referral to the judge of a telephonic, deposition-related dispute in this matter;

(f)    That after this telephone call, the law clerk privately texted her attorney (who was also representing the Defendant in this matter) the following: "Are you in dc and neglected to tell me[?]"  The attorney responded "no" and asked about the basis for the law clerk's assumption, to which the law clerk replied "[j]ust felt [*sic*] with an over the phone objection in one of your cases, thought you might be here;"

(g)    That no one informed the Plaintiff about this communication (until this recusal issue arose);

(h)    That on August 5, 2015, the law clerk attended the motions hearing in this matter, sat next to her fellow law clerks in the courtroom, and heard the Court issue several oral orders;

(i)    That shortly after the hearing, the law clerk "reminded" the assigned law clerk to memorialize in written orders the judge's oral orders, which were generally favorable to her attorney's law firm and its client;

(j)    That the following day, the law clerk again reminded the assigned law clerk about the written orders and inquired about their status;

(k)    That the law clerk then personally texted her attorney, "You're going to owe me a beer . . . fyi."

(l)    That the law clerk also texted her father (the senior partner whose role in this case is unclear) that he too would soon owe the law clerk a drink (or other favor).[4]

---

[3]    According to the law clerk, "[i]n January of 2015, I became friends with an associate at Zuckerman Spaeder, . . . when he assisted me with a personal legal matter." [Order Denying Stay, Ex. C at 1.] "The period of representation lasted from January 2015 through February 2015 with some follow-up discussion in May 2015." [*Id.* n.1.]

[4]    This language is inferred from the law firm's letter to the Court, calling the text message to her father "similarly worded" to the text message to her attorney. Regrettably, the law clerk's later declaration does not address her text message to her father or indicate how her father responded.

4

(m) That at 3:34 p.m. that day, the Court electronically entered its order granting the Defendant's Renewed Motion for Disclosure of Plaintiff's Grand Jury Testimony;

(n) That this order granted the Defendant's motion and contained a footnote that provided potential relief to the Defendant significantly beyond that which the Court had orally ordered the day before;[5]

(o) That the law clerk then texted her attorney (who was also Defendant's attorney), "Yes, as of 3:34 today you owe me a beer (or wine!)."

(p) That after the attorney did not answer her text messages or a later phone call, the law clerk texted her attorney the following: "Dude, it's a joke. Let's catch up soon for real though."

(q) That the law clerk later disclosed some or all of her text messages to the Court, which in turn scheduled an emergency hearing to address this conduct;

(r) That at the hearing, the Court acknowledged that the law clerk's communications "should have not been made because they did conceivably give the impression that somehow she had some role to play in the ultimate decisions I made regarding the motions that were ruled upon week before last," but according to the Court, the Court "clearly was not influenced in any way by [the law clerk], because I relied upon the advice given to me by the clerk assigned to the case and my own independent assessment of the case. . . ." [Aug. 18, 2015 Tr. at 9.];

(s) That the Court then denied the Plaintiff's oral motions to stay the matter pending the resolution of disqualification proceedings and to vacate the August 5, 2015 Orders;

(t) That at the Court's request, the law clerk and the assigned law clerk later drafted and signed declarations relating to this conduct;

(u) That the law clerk's declaration acknowledges the conduct described above but denies providing "any substantive input regarding" this matter to the Court;

(v) That the assigned law clerk's declaration states that "in advising Judge Walton as to how he should rule on the parties' motions in this case, I

---

[5]   In particular, the written order added the following footnote: "And should the defendant choose to reopen the plaintiff's deposition and explore topics concerning data retrieved from her cellular phone, see August 5, 2015 Order at 2 & nn.3-4, ECF No. 71, the defendant may also explore any topics regarding her grand jury testimony." Perhaps in the future the Court will grant a yet-to-be-filed defense motion to reopen the Plaintiff's deposition after the close of discovery and permit questioning on the grand jury testimony, but the Court did not do so at the August 5, 2015 hearing.

have not received any substantive assistance from either of my coclerks," and "[t]o the best of my knowledge, Judge Walton has not sought out any substantive assistance from either of my co-clerks with regards to any aspects of this case;"

(w)   That the Court's third law clerk has not provided a declaration relating to the conduct at issue;

(x)   And that the Plaintiff has not been provided copies of the law clerk's text messages to the opposing law firm, even though the messages have been shown to the Court.[6]

13.   The following legal and ethical principles are applicable:[7]

(a)   Expert opinion and testimony are generally admissible regarding the meaning and application of ethical and recusal standards.

(b)   As in most cases, the analysis of issues involving ethics and disqualification takes place in a larger context in which other legal principles must also be considered and given proper weight.

(c)   The Code of Conduct for United States Judges, the ABA Model Code of Judicial Conduct, and the United States Code all require recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (2000); CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 3C (2009); MODEL CODE OF JUDICIAL CONDUCT R. 2.11(A) (2007); MODEL CODE OF JUDICIAL CONDUCT Canon 3E(1) (2003) (same). The Federal and Model Judicial Codes similarly require judges to avoid the appearance of impropriety.[8]

---

[6]   As noted in the law clerk's declaration, "I called Judge Walton and notified him of the text message exchange and followed up the phone call with an email outlining the events. I included a 'screen shot' of the text messages." [Order Denying Stay, Ex. C at 3.] The referenced outline, screenshot, and complete copies of the text messages have not been disclosed to the Plaintiff.

[7]   This preliminary list is not meant to be exhaustive of the applicable ethical and legal principles.

[8]   The Federal Judicial Code defines the appearance of impropriety as follows: "An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired." CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 2 cmt. (2009).

(d)   Consistent with other circuits, the D.C. Circuit has significantly elaborated on this objective test for disqualification:

> The standard for disqualification under 455(a) is an objective one. The question is whether a reasonable and informed observer would question the judge's impartiality. 'The very purpose of 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.' As such, violations of the Code of Conduct may give rise to a violation of 455(a) if doubt is cast on the integrity of the judicial process.

*United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001) (quoting in part *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)) (internal citations omitted).  Moreover, the Circuit has clarified three particular aspects of this disqualification test: "(1) that one determines a violation completely without regard to whether there exist adequate independent grounds for the judge's rulings, (2) that the appearance-of-partiality test is an objective one (whether an informed observer would reasonably question the judge's impartiality), and (3) that application of the test is wholly independent of whether the judge intends to act with bias or prejudice." *In re Barry*, 946 F.2d 913, 914 (D.C. Cir. 1991).

(e)   Neither actual improprieties nor the judge's state of mind are the proper focus of this test: "For purposes of Sec. 455(a) disqualification, it does not matter whether the district court judge actually harbors any bias against a party or the party's counsel. This is so because Sec. 455(a) concerns not only fairness to individual litigants, but, equally important, it concerns the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted. To achieve its highest function, justice must satisfy the appearance of justice." *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993) (internal citations and quotation marks omitted).  Consistent with this understanding, "[s]cienter is not an element of a violation of § 455(a)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1987). Rather, "[t]he judge's lack of knowledge of a disqualifying circumstance may bear on the question of remedy, but it does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons." *Id.*

(f)   Accordingly, disqualification can follow even when the Court has committed no actual misconduct, and the conclusions below do not assume (and should not be construed to imply) actual misconduct on the

7

Court's part. *See, e.g., In re Kensington Intern. Ltd.*, 368 F.3d 289, 294 (3d Cir. 2004) (noting that even though the judge "exhibited all of the judicial qualities, ethical conduct, and characteristics emblematic of the most experienced, competent, and distinguished Article III jurists, . . . the test for disqualification under § 455(a) is not *actual* bias; it is the *perception* of bias") (emphasis in original).

(g)   Finally, and importantly, "[i]t has been stated on numerous occasions that when a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988).

(h)   The application of these recusal standards to the specific conduct and circumstances at issue should begin with an appreciation of the important role of law clerks:

> Law clerks are not merely the judge's errand runners. They are sounding boards for tentative opinions and legal researchers who seek the authorities that affect decision. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be.

*Parker v. Connors Steel Co.*, 855 F.2d 1510, 1525 (11th Cir. 1988) (quoting *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983)). The federal judicial ethics advisory committee has echoed and elaborated on this conclusion:

> Among judicial employees, law clerks are in a unique position since their work may have direct input into a judicial decision. Even if this is not true in all judicial chambers, the legal community perceives that this is the case based upon the confidential and close nature of the relationship between clerk and judge. The significance of the relationship between judge and law clerk is reflected in certain provisions of the Code of Conduct for Judicial Employees (Employees' Code) that are directly relevant to the inquiry.

Committee on Codes of Conduct, Adv. Op. 51. Although the role of law clerks varies to some extent from chambers to chambers, the law clerk whose conduct is in issue has acknowledged the important role that law clerks play within the Court's chambers: "The week of the hearing at issue, August 3-7, 2015, I was responsible for the preparation of one

complex criminal motions hearing involving issues of first impression, four sentencings, coordinating the completion of five Judgement and Commitment Orders, and the completion of a twenty-five page opinion, on top of my routine duties within chambers. Additionally, I have a list of four substantial opinions that must be completed prior to my September 4, 2015 departure. . . ." [Ex. C at 2 n.5.] The Court's other two law clerks presumably play equally important roles.

(i)   As the Court correctly acknowledged, the law clerk at issue had a disqualifying conflict and should have been screened from this matter. *See generally* CODE OF CONDUCT FOR JUDICIAL EMPLOYEES Canon 3F(2)(a)(iv) ("A staff attorney or law clerk should not perform any official duties in any matter with respect to which such staff attorney or law clerk knows that . . . a person related . . . within the third degree of relationship [to the law clerk] . . . is acting as a lawyer in the proceeding [or] has an interest that could be substantially affected by the outcome of the proceeding. . . ."); *see also id.* § 310.30 ("As used in this code, the third degree of relationship is calculated . . . to include the following relatives: parent. . . ."). Moreover, the likely appearance of partiality was significant: (1) the law clerk's father was a "long-time partner" in the law firm; and (2) the attorney provided free legal services to the law clerk while this matter was pending, and this gift was not disclosed to the Plaintiff.[9]   Because "the close familial relationship between [the] law clerk and a senior partner in the firm representing [the opposing side] might lead an objective observer, especially a lay observer, to believe that [one side] will receive favorable treatment from the district judge," the Court was required to screen the law clerk. *See Parker*, 855 F.2d at 1524 (footnote omitted).   That the law clerk was also receiving free and undisclosed legal services from an attorney in this case strengthens this conclusion. *Cf., e.g., Packard v. Darveau*, No. 4:11CV3199, Recusal Order (D. Neb. Dec. 6, 2011) (quoting in parenthetical Comm. on Codes of Conduct, Compendium of Selected Opinions § 3.6-2 (July 2011)) ("where an attorney-client relationship exists between a judge and a lawyer whose law firm appears in the case, the judge should ordinarily recuse absent remittal"); CODE OF CONDUCT FOR JUDICIAL EMPLOYEES Canon 4C(2) ("A judicial employee should not solicit or accept a gift

---

[9]   Of course, the law clerk's subsequent conduct further highlighted the need for disqualification and thorough screening: The law clerk sent at least one improper, ex parte text message to her father, a senior partner in the firm's Tampa office.  The father's additional connections (if any) to this case are unclear, but a deposition did take place in Tampa, where the law clerk's father offices. The law clerk also engaged in at least two ex parte exchanges with her attorney, who is with the same firm and who has appeared in this matter.

9

from anyone seeking official action from or doing business with the court or other entity served by the judicial employee, or from anyone whose interests may be substantially affected by the performance or nonperformance of official duties. . . .").

(j)     Although the law clerk's screen was mandatory in these circumstances, the screen was ineffective.  The Court at the outset correctly commanded a broad screen: "if any cases were assigned to me in which Zuckerman Spaeder was counsel in the case, that she would have nothing to do with those cases.  And in reference to this particular case, when it became apparent that Zuckerman Spaeder was representing the Defendant, it was specifically indicated that consistent with the policy that we had put in place when she was hired, that she would have no contact with the case." [Aug. 18, 2015 Tr. at 3.]  Unfortunately, this "no contact" requirement was not strictly enforced or followed.[10]

(k)     In particular, a screen that applies only to "substantive" contact is generally insufficient.  *Cf. First Interstate Bank v. Murphy, Weir & Butler*, 210 F.3d 983, 989 (9th Cir. 2000) ("Here, the Judge did not seek waivers, but rather told the clerk not to do substantive work on the SPA litigation. Regrettably, this did not go far enough to forestall recusal."); *see also id.* at 985 (noting that the screen "was not impermeable as it should have been, for the law clerk continued to have some contact with the case").  Instead, for a screen to be effective, the law clerk should not communicate about the matter and should not perform any work on the matter, and all members of chambers should be told of the screen and of course abide by it.  *See, e.g.*, Comm. on Codes of Conduct, Adv. Op. 51 ("The dangers, real and perceived, of the exploitation of the relationship to the law firm's financial or other advantage call for a per se rule of recusal when the firm employs the law clerk's spouse . . . and from this it follows that the recused clerk *should avoid any discussion of the case with the judge, law clerks, or others*.") (emphasis added); Comm. on Codes of Conduct, Adv. Op. 74 ("The law clerk . . . should have no involvement whatsoever in pending matters handled by the prospective employer."); Comm. on Codes of Conduct, Adv. Op. 81 (noting that the judge "should isolate the law clerk from cases" in which an actual or apparent conflict is present); *cf.* MODEL RULES OF PROF'L CONDUCT 1.0(k) & cmt. 9 (noting that screening requires "isolation" of the

---

[10]   By noting that this initially proper "no contact" screen ultimately failed, the point is not to cast blame on the Court or the law clerks.  For disqualification purposes, the relevant analysis is appearance-based.  For example, one could assume that neither the law clerks nor the Court did anything wrong in the implementation of the screen, but the conduct's appearance may nevertheless warrant disqualification.

10

disqualified lawyer and requires in particular that the "personally disqualified lawyer . . . acknowledge the obligation not to communicate with any of the other lawyers in the firm with respect to the matter" and that the "other lawyers in the firm who are working on the matter . . . be informed that the screening is in place and that they may not communicate with the personally disqualified lawyer with respect to the matter"). Thus, although presumably well-intended, the screen in this case was ethically insufficient. Moreover, the Plaintiff was never told of the screen (which unfortunately turned out to be porous in any event), increasing the appearance of partiality, impropriety, and unfairness.[11]

(l)   The law clerk's communications about this matter constituted improper ex parte contacts with the Defendant's law firm. Canon 3A(4) commands that a "judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 3A(4) (2009). The Court also has a supervisory duty to prevent a law clerk from engaging in such communications: "A judge should make reasonable efforts to ensure that law clerks and other court personnel comply with this provision." *Id.* cmt. Similarly, "[a] judge should not allow family, social, political, financial, or *other relationships to influence judicial conduct or judgment*" and "should neither lend the prestige of the judicial office to advance the private interests of the judge or others nor convey or *permit others to convey the impression that they are in a special position to influence the judge.*" CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 2B (2009) (emphasis added).[12] Indeed, irrespective of the law clerk's personal and

---

[11]   *See generally In re Kensington Intern. Ltd.*, 368 F.3d 289, 313-14 (3d Cir. 2004) (noting in certain contexts that the "burden is to be placed on the judge to disclose possible grounds for disqualification"); *Amer. Textile Mfg. v. The Limited, Inc.*, 190 F.3d 729, 742 (6th Cir. 1999) (quoting in part *Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995)) (noting that judges may "have an ethical duty to 'disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification'").

[12]   Substantially similar rules also govern law clerks directly. *See, e.g.*, CODE OF CONDUCT FOR JUDICIAL EMPLOYEES Canon 2; *see also id.* Canon 3C ("A judicial employee should never influence or attempt to influence the assignment of cases, or perform any discretionary or ministerial function of the court in a manner that improperly favors any litigant or attorney, nor should a judicial employee imply that he or she is in a position to do so.").

11

professional relationships and her necessary-but-insufficient screen, the text messages pertaining to this case would have still constituted improper ex parte communications.[13]

(m)   In sum, the following factors all counsel toward recusal: the close-but-undisclosed personal and professional relationships to the law firm, the free legal services during the pendency of this case, the permeable screen, and the improper ex parte communications explicitly suggesting special treatment toward one side.  That the law clerk presumably did not actually influence the Court is not dispositive to an appearance-based test.  *See, e.g.*, *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983) (citing *Miller Industries v. Caterpillar Tractor Co.*, 516 F. Supp. 84, 89 (S.D. Ala. 1980)) ("Whether or not the law clerk actually affected the magistrate's decision, her continuing participation with the magistrate in a case in which her future employers were counsel gave rise to an appearance of partiality. This required the magistrate's disqualification unless the judge isolated the law clerk from all knowledge of and participation in the case immediately after employment interviews began.").  Although similar conduct and circumstances fortunately have occurred only rarely in the courts, this "rarity" can aggravate the problematic appearances in the eyes of the reasonable observer.  *Cf. In re Boston's Children First*, 244 F.3d 164, 170 (1st Cir. 2001) (citing *In re Allied Signal Inc.*, 891 F.2d 967, 971 (1st Cir. 1989)) (noting that the rarity of the circumstances and the ease with which those circumstances may be avoided are factors bearing on the appearance of partiality).  To extent that this situation does not fall squarely on-point with previous precedent, moreover, "any doubts" as to the necessity of disqualification should be resolved "in favor of disqualification."  *Parker*, 855 F.2d at 1524; *see also Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995) ("If the question of whether Sec. 455(a) requires disqualification is a close one, the balance tips in favor of recusal.").

---

[13]   As the Court's August 5, 2015 list of pre-trial directives similarly required, "[c]hambers staff cannot provide legal advice of any kind, and ex parte communications on matters other than scheduling matters are prohibited."  Even scheduling matters should generally be directed to the "Deputy Clerk of the Court," and "[i]f it becomes absolutely necessary for counsel to contact Chambers, it should be done jointly pursuant to a telephone conference."  The Court further noted that it "will hold counsel responsible for following the directives set forth in this Order. Failure to conform to this Order's directives may result in the imposition of sanctions pursuant to Fed. R. Civ. P. 16(f)."

14.     Applying my knowledge, experience, and the pertinent facts to the foregoing principles, I have reached the following opinions:

(a)     That the law clerk should have been adequately screened and that she should have had no contact with the Court, Parties, other law clerks, or her attorney concerning this matter;

(b)     That the law clerk was nevertheless able to, and did, improperly communicate with her attorney and her father, intake telephonic disputes, and communicate non-"substantively" with the other clerks and possibly the Court about this matter;

(c)     That the law clerk's relationships with the law firm (namely, that her father was a senior partner of the firm and that an attorney in this matter was contemporaneously providing free legal services to the law clerk) and resulting screen should have been timely disclosed to the Plaintiff;

(d)     That the law clerk's text messages to her father and to her attorney constituted prohibited ex parte communications and created the impression, if not the reality, that she was providing an advantage to the firm and its client;

(e)     That copies of the law clerk's text messages concerning this matter should be disclosed to the Plaintiff (and to the Defendant to the extent the Defendant does not already have copies);

(f)     And that the combination of the circumstances above cause the Court's participation to be "reasonably questioned" and likely create the "appearance of impropriety," as those terms are used in recusal law and the judicial ethics codes.

15.     The foregoing opinions are based upon my knowledge and experience and are limited to and qualified by the scope of retention and information I have received to date. I reserve the right to modify the opinions expressed in this Affidavit and to offer additional opinions (a) if additional facts are brought to my attention that warrant such modifications, (b) if justified by questioning, and (c) if asked to provide rebuttal testimony.

16.     I declare under penalty of perjury that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

EXECUTED this 28th day of August, 2015.

Keith Swisher

# KEITH SWISHER

## EDUCATION

**HARVARD LAW SCHOOL**                                                          Cambridge, MA

*Master of Laws (LL.M.)*, 2007

Thesis:        The Judicial Ethics of Criminal Law Adjudication

Honors:       "A" G.P.A.; Editor, Harvard Civil Rights-Civil Liberties Law Review

**ARIZONA STATE UNIVERSITY COLLEGE OF LAW**                       Tempe, AZ

*Juris Doctor, summa cum laude*, 2004

Rank:         1/169

Honors:       Comment, Note & Legislative Review Editor, Arizona State Law Journal;
              Armstrong Award (Class Valedictorian); Chief Judge Mary Schroeder
              Award (Federal Bar Association); Pedrick Scholar

Activities:    Advocacy Program Against Domestic Violence, Homeless Legal
              Assistance Project, The Justice Project, *pro bono*

**ARIZONA STATE UNIVERSITY**                                            Tempe, AZ

*Bachelor of Science in Political Science, summa cum laude*, 2001

Honors:       Junior Fellow for Political Science Department

## PUBLICATIONS

- PROBLEMS IN PROFESSIONAL RESPONSIBILITY FOR A CHANGING PROFESSION (Sixth
  ed. forthcoming 2016) (with Andrew Kaufman, David Wilkins & Eli Wald).

- JUDICIAL ETHICS (Ashgate Publishing, Keith Swisher ed. forthcoming 2015).

- *Unauthorized Practice of Law, Multijurisdictional Practice of Law, Disciplinary Authority,
  and Choice of Law (Chapters)*, in ANNOTATED MODEL RULES OF PROFESSIONAL
  CONDUCT (8th ed. forthcoming 2015) (in conjunction with the ABA Center for
  Professional Responsibility).

- *The Practice and Theory of Lawyer Disqualification*, 27 GEORGETOWN J. LEGAL ETHICS
  71 (2014), *cited in United States v. Perry*, 30 F. Supp. 3d 514 (E.D. Va. 2014).

- *Disqualifying Defense Counsel: The Curse of the Sixth Amendment*, 4 ST. MARY'S J. LEGAL
  MALPRACTICE & ETHICS 374 (2014).

- *The Short History of Arizona Legal Ethics*, 45 ARIZ. ST. L.J. 813 (2013).

- *Recusal, Government Ethics, and Superannuated Constitutional Theory*, 72 MARYLAND L.
  REV. 219 (2012).

EMAIL: KSWISHER@POST.HARVARD.EDU
SSRN AUTHOR PAGE: HTTP://SSRN.COM/AUTHOR=858354
BLOGS: JUDICIALETHICSFORUM.COM AND DQED.COM

- *Prosecutorial Conflicts of Interest in Post-Conviction Practice*, 41 HOFSTRA L. REV. 181 (2012) (invited).

- *Organization as Client, in* ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT (7th ed. 2011) (in conjunction with the ABA Center for Professional Responsibility).

- *Legal Ethics and Campaign Contributions: The Professional Responsibility to Pay for Justice*, 24 GEORGETOWN J. LEGAL ETHICS 225 (2011).

- *Disciplinary Authority and Choice of Law in Online Advertising: Disclaimers or Double Deontology*, 21 PROF. LAW. 8 (ABA, 2011).

- *Pro-Prosecution Judges: "Tough on Crime," Soft on Strategy, Ripe for Disqualification*, 52 ARIZ. L. REV. 317 (2010), *cited in Wisconsin v. Allen*, 778 N.W.2d 863 (Wis. 2010).

- *The Judicial Ethics of Criminal Law Adjudication*, 41 ARIZ. ST. L.J. 755 (2009).

- *When Judges Should Be Seen, Not Heard: Extrajudicial Comments Concerning Pending Cases and the Controversial Self-Defense Exception in the New Code of Judicial Conduct*, 64 N.Y.U. ANN. SURV. AM. L. 559 (2009) (with Mark I. Harrison), *cited in White v. NFL*, 585 F.3d 1129 (8th Cir. 2009).

- *The Modern Movement of Vindicating Violations of Criminal Defendants' Rights Through Judicial Discipline*, 14 WASH. & LEE J. CIVIL RTS. & SOC. JUST. 255 (2009).

- *The Troubling Rise of the Legal Profession's "Good" Moral Character*, 82 ST. JOHN'S L. REV. 1037 (2008).

- *The Moral Judge*, 56 DRAKE L. REV. 637 (2008) (article for symposium issue cosponsored by the American Judicature Society).

- *The Unethical Judicial Ethics of Instrumentalism and Detachment in American Legal Thought*, 43 WILLAMETTE L. REV. 577 (2007), *reprinted in* BENCH AND BAR ETHICS (P.L. Jayanthi Reddy ed., Icfai Univ. Press, 2007).

- *On the Validity and Vitality of Arizona's Judicial Merit Selection System: Past, Present, and Future*, 34 FORDHAM URB. L.J. 239 (2007) (with Mark I. Harrison, Sara S. Greene & Meghan H. Grabel).

- Note, *The Limits of Rule 408 After Hernandez*, 35 ARIZ. ST. L.J. 1437 (2003).

## TEACHING & RESEARCH INTERESTS

- Legal & Judicial Ethics
- Criminal Law, Criminal Procedure & Sentencing
- Evidence
- Jurisprudence, Moral & Political Philosophy
- Torts

## EXPERIENCE

**SWISHER P.C.**                                                      Scottsdale, AZ
*Ethics Counsel and Expert*, 2012-Present
- Advise lawyers, firms, and judges on legal and judicial ethics and related issues.
- Serve as consulting and testifying expert in disqualification, malpractice, ineffective assistance of counsel, and disciplinary matters.

**CRIMINAL JUSTICE ACT APPELLATE PANEL**                 Phoenix, AZ
*Panel Attorney*, 2009-Present
- Represent indigent criminal defendants before the United States Court of Appeals for the Ninth Circuit.
- Argued and won en banc reversal of a young and intellectually disabled client's conviction in *United States v. Preston*, 751 F.3d 1008 (9th Cir. 2014) (en banc).

**ARIZONA SUMMIT LAW SCHOOL**                            Phoenix, AZ
**PHOENIX SCHOOL OF LAW**
*Associate Dean of Academic Affairs*, 2014-2015
*Associate Dean of Faculty Scholarship*, 2013-2014
*Associate Dean of Faculty Development*, 2011-2013
*Associate Professor of Law*, 2011-2015
*Assistant Professor of Law*, 2009-2011
- Teach Legal Ethics/Professional Responsibility, Jurisprudence, and Torts
- Served on Honor Appeals Court
- Served on Admissions Committee; Chaired, Subcommittee on Character and Fitness
- Served on Academic Standards and Policy Committee, Appointments Committee, Creative Works Committee, Innovation Committee, and Faculty Development Committee
- Served on InfiLaw Consortium Faculty Evaluation Committee and InfiLaw Consortium Records Management Committee
- Served as Faculty Co-Advisor of the *Phoenix Law Review*
- Received highest "collegiality"/360 rating in faculty peer assessment (2012-2013)
- 2011-2012 Recipient of the InfiLaw National Policy Board Award
- Received 2011 Teacher of the Year Award, Second Place (with Brigham Fordam)

EMAIL: KSWISHER@POST.HARVARD.EDU
SSRN AUTHOR PAGE: HTTP://SSRN.COM/AUTHOR=858354
BLOGS: JUDICIALETHICSFORUM.COM AND DQED.COM

- Received Faculty Scholarship Recognition for 2010 article (*Pro-Prosecution Judges*)
- Completed Faculty Leadership Training (Naples, Fla.)

**ARIZONA STATE UNIVERSITY COLLEGE OF LAW**                    Tempe, AZ
*Adjunct Professor of Law*, 2008-2009
- Taught *Legal Ethics* (Spring 2008; Spring 2009) (with Mark I. Harrison).
- Guest-lectured in *Civil Procedure* (Fall 2008).

**OSBORN MALEDON, PA**                    Phoenix, AZ
*Associate*, 2005-2006, 2007-2009; *Summer Associate*, 2003
- Practiced criminal and commercial litigation, appeals, and legal ethics/professional liability.
- Served as advisor to the minority writing internship program.

**HARVARD LAW SCHOOL, PROFESSOR ANDREW KAUFMAN**                    Cambridge, MA
*Research Assistant*, 2006-2007
- Assisted drafting Fifth Edition of ANDREW L. KAUFMAN & DAVID B. WILKINS, PROBLEMS IN PROFESSIONAL RESPONSIBILITY FOR A CHANGING PROFESSION.

**HONORABLE WILLIAM C. CANBY, JR., UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**
*Judicial Clerkship*, 2004-2005
- Assisted drafting ten published opinions, the majority of which concerned criminal law or procedure, among other duties.

**FEDERAL PUBLIC DEFENDER'S OFFICE, CAPITAL HABEAS UNIT**   District of Arizona
*Law Clerk*, 2004
- Researched for and assisted drafting briefs in *Schriro v. Summerlin*, 542 U.S. 348 (2004), and pleadings for several other capital defendants.

**UNITED STATES ATTORNEY'S OFFICE, CRIMINAL DIVISION**                    District of Arizona
*Law Clerk (Externship)*, 2003

**PERKINS COIE BROWN & BAIN**                    Phoenix, AZ
[Formerly Brown & Bain]
*Summer Associate*, 2003
- Offered partnership-track associate attorney position.

MINOR PUBLICATIONS, PRESENTATIONS & INTERVIEWS

- *Defendants Guilty of Being Innocent; Prosecutors Guilty of Being Human*, ARIZ. ATT'Y, May 2013 (written prosecutorial ethics debate with the Maricopa County Attorney William Montgomery, who is the head elected prosecutor for Phoenix).

- *Changing Ethics in Arizona,* ATTORNEY AT LAW, Dec. 2012.

- *Foreword: Arizona's Constitution at the Centennial*, 3 PHOENIX L. REV. 1 (2010) (with Managing Editor Anthony Tsontakis).

- *Common Traps in Making the Record for Appeal*, A.B.A. PP&D [PRETRIAL PRACTICE & DISCOVERY], Summer 2006 (with Thomas L. Hudson).

- *Criminal Justice Seminar: The Justice Project Spreads into the Law School Curriculum*, THE DEFENDER, Aug. 2004.

- Presentation: 10 Ways to Get Your Law Firm Disqualified -- and 10 Ways to Avoid it, Maricopa County Bar Ass'n, June 30, 2015.

- Presentation: Fee Disputes Following the Sale of a Law Practice, State Bar of Arizona Fee Arbitration Committee, Annual Bar Convention, May 26, 2015.

- Presentation: Social Media and Confidentiality, State Bar of Arizona Committee on the Rules of Professional Conduct, Annual Bar Convention, May 24, 2015.

- Presentation: Forming and Ending the Attorney-Client Relationship and Its Attendant Duties, A Roadmap Through the Elements of Legal Malpractice Claims, State Bar of Arizona, May 29, 2015.

- Presentation: Judicial Ethics and Solicitation, American Constitution Society, Arizona Advocacy Network, and Justice at Stake, Fair Courts: Arizona's Merit Selection System, Pinal County, April 18, 2015.

- Presentation: Conflicts of Interest: The Bar's Second-Class Ethical Rules?, ASU Legal Scholars Workshop, March 14, 2015.

- Presentation: State Bar of Arizona, Mandatory Professionalism Course for Newly Admitted Lawyers, Responsibilities to the Profession and Legal System, Feb. 10, 2015 (with Comm. Myra Harris).

- Presentation: The Ethics Between Predecessor and Successor Counsel in Capital Cases, The Fight for Life: Annual Death Penalty Seminar, Offices of the Maricopa County Public Defender, Legal Advocate, Legal Defender, and Federal Public Defender, Dec. 12, 2014.

- Presentation: Courts, Campaigns, and Corruption: Judicial Recusal Five Years After *Caperton*, N.Y.U., A.B.A., and Brennan Center for Justice, Nov. 14, 2014 (moderator: Adam Liptak, New York Times).

- Presentation: The Ethics of Waiving Ineffective Assistance of Counsel and

Prosecutorial Misconduct in Plea Agreements, Criminal Justice Act Panel Annual Training, Federal Public Defender's Office, ASU Downtown, Oct. 18, 2014.

- Presentation: Ethical Rules Update: Ethics 20/20 Amendments, State Bar of Arizona, Sept. 18, 2014.

- Presentation: Adult Learning Theory, CLE Institute, State Bar of Arizona, Sept. 15, 2014.

- Presentation: Real World Ethics for Paralegals, Maricopa County Association of Paralegals, Sept. 13, 2014.

- Presentation and Paper Selected: Lawyer Disqualification and the Sixth Amendment, Fifteenth Harvard/Stanford/Yale Junior Faculty Forum, Stanford Law School, June 27-28, 2014 (out of 400-plus submissions, 18 papers were selected through blind peer review).

- Presentation: History of Attorney-Client Fee Agreements, State Bar of Arizona, Annual Convention, June 13, 2014.

- Presentation: Lateral Screening, State Bar of Arizona, Annual Convention, June 12, 2014.

- Presentation: State Bar of Arizona, The Ethics Challenge, May 9, 2014 (co-panelist).

- Presentation: State Bar of Arizona, Mandatory Professionalism Course for Newly Admitted Lawyers, Responsibilities to Clients and Others, May 6, 2014 (with Mark I. Harrison).

- Presentation: Ethics in the Courtroom in Criminal Cases, State Bar of Arizona, April 17, 2014 (co-panelist).

- Presentation: Ethical Snippets OnDemand: Confidentiality and Conflicts, State Bar of Arizona, April 4, 2014.

- Presentation: The Sixth Amendment and Lawyer Disqualification, St. Mary's University School of Law, Feb. 28, 2014.

- Presentation: Arizona's New Post-Conviction Disclosure Obligations: Seeking Ministers of Justice and Defenders Against Tyranny, Office of the Federal Public Defender, Jan. 10, 2014.

- Presentation: Post-Conviction Disclosure: Changes to ER 3.8 and New ER 3.10, State Bar of Arizona, December 18, 2013.

- Presentation: Hybrid Fee Agreements, Fees and Fee Arbitration, State Bar of Arizona, Annual Convention, June 21, 2013.

- Presentation: Mandatory Professionalism Course for New Lawyers, Maricopa County Bar Association, Phoenix School of Law, June 14, 2013.

- Presentation: The Practice and Theory of Lawyer Disqualification, Scholarship Roundtable, ABA Annual Conference on Professional Responsibility, San Antonio,

Texas, May 31, 2013.

- Presentation: The Practice and Theory of Lawyer Disqualification, Phoenix School of Law, Nov. 13, 2012.

- Presentation: The History of Arizona Legal Ethics, State Bar of Arizona, Annual Convention, June 21, 2012.

- Presentation: The Ethics Gameshow, State Bar of Arizona, Annual Convention, June 21, 2012.

- Training: Conducting Empirical Legal Scholarship Workshop, University of Southern California, May 23-25, 2012.

- Presentation: Avoiding the Unavoidable Bar Complaint, State Bar of Arizona, Solo and Small Firm Section (May 4, 2012).

- Presentation: An Ethics Discussion of the Krone Exoneration, Exonerated Not Executed Conference, Phoenix School of Law (April 27, 2012) (with co-panelists).

- Presentation: Proposed Amendments to Prosecutors' Ethical Rules, Prosecutorial Oversight Tour, Phoenix School of Law (April 26, 2012) (with co-panelists).

- Presentation: Prosecutors as Problems or Solutions in Post-Conviction Cases, Lawyers as Peacemakers and Healers Conference: New Directions in the Practice of Law, Phoenix School of Law (April 14, 2012).

- Presentation: Opening Remarks, Lawyers as Peacemakers and Healers Conference: New Directions in the Practice of Law, Phoenix School of Law (April 13, 2012).

- Presentation: The Scholarly Publishing Process, Phoenix School of Law (Nov. 22, 2011).

- Presentation: State Bar of Arizona, Professionalism Course, Attorney-Client Relationships in Litigation (Nov. 8, 2011).

- Presentation: Government Ethics, Recusal Law, and Geriatric Constitutional Theory, St. Mary's University School of Law (Oct. 3, 2011).

- Presentation: Criminal Justice Act Panel Annual Training, Trouble I've Seen (Oct. 1, 2011) (with Heather Williams).

- Presentation: ABA Center for Professional Responsibility and Council for the Section on State and Local Government Law, Ethical Considerations for Municipal Attorneys: Reconciling the Rules of Professional Conduct with Government Ethics Laws (Jan. 18, 2012) (update, with co-presenters).

- Presentation: ABA Council for the Section on State and Local Government Law, Ethical Considerations for Municipal Attorneys: Reconciling the Rules of Professional Conduct with Government Ethics Laws (Sept. 22, 2011) (with co-presenters).

- Presentation: Keith Swisher, Criminal Justice Act Panel and Federal Public

Defender's Office for the District of Arizona, One Toke Over the Ethical Line: Prop 203, Medical Marijuana, Federal Law and the Ethical Responsibility of Lawyers (May 6, 2011) (with Scott Campbell).

- Presentation: Keith Swisher, Phoenix School of Law, Annual Alumni Day, How to Avoid a Bar Complaint (April 1, 2011).

- Presentation: Keith Swisher, State Bar of Arizona, Professionalism Course, Attorney-Client Relationships in Litigation (Jan. 13, 2011).

- Presentation: Keith Swisher, "Reelection of Judges and the Denial of Due Process" (with Monroe H. Freedman), International Legal Ethics Conference IV, Stanford Law School (July 17, 2010); and Panel Chair: "Judicial Ethics—Contemporary Challenges."

- Presentation: Keith Swisher, ABA Law Student Division, Professional Responsibility (15th Cir., Feb. 27, 2010) (with co-presenters).

- Presentation: Keith Swisher, Phoenix School of Law, Pro-Prosecution Judges (works-in-progress session, Feb. 10, 2010).

- Presentation: Keith Swisher & Mark I. Harrison, Judicial Ethics and Disqualification After *Caperton*, National Webcast/CLE for West: Thomson Reuters (Sept. 17, 2009; and Dec. 30, 2009).

- Presentation: Keith Swisher, Criminal Justice Act Panel and Federal Public Defender's Office for the District of Arizona, The Judicial Ethics of Criminal Law Adjudication: Disciplining Judges for Getting It Wrong (Nov. 13, 2008).

- Presentation: Keith Swisher & H. Sally Yen, Harvard Law School Graduate Program, Legal Ethics in the United States and Taiwan: Controversial Topics (May 15, 2007).

- Short Presentation: Keith Swisher, Harvard Law School Course, Topics in the History of American Legal Education: The Rise of the Legal Profession's Good Moral Character (April 24, 2007).

- Signing Amicus: Maples v. Thomas, No. 10-63, Brief of Legal Ethics Professors and Practitioners and the Ethics Bureau at Yale as Amici Curiae in Support of Petitioners (May 25, 2011), *cited in Maples v. Thomas*, 565 U.S. __, 132 S. Ct. 912 (2012).

- Signing Amicus: Hood v. Texas, No. 09-8610, Brief of 30 Leading Ethicists as Amicus Curiae in Support of the Petitioner (Feb. 18, 2010).

- Signing Amicus: Holland v. Florida, No. 09-5327, Brief of Legal Ethics Professors and Practitioners and the Stein Center for Law and Ethics as Amicus Curiae in Support of Petitioner (Dec. 30, 2009), *cited in Holland v. Florida*, 560 U.S. __, 130 S. Ct. 2549 (2010); the Court's seven-member majority opinion (Breyer, J.) relied on the Brief in concluding that a capital defendant's habeas corpus petition should not be time-barred in light of his attorney's unethical conduct, and the two-member dissent (Scalia, J.) criticized the Court's reliance on the Brief.

EMAIL: KSWISHER@POST.HARVARD.EDU
SSRN AUTHOR PAGE: HTTP://SSRN.COM/AUTHOR=858354
BLOGS: JUDICIALETHICSFORUM.COM AND DQED.COM

- Signor: Ethics Experts' Declaration, In re Inquiry Concerning a Judge (Justice Sharon Keller) No. 96, Texas State Comm'n on Judicial Conduct (April 20, 2009).

- Interview: David L. Hudson Jr., *Pro Bono Writes: Ethics Panel Backs Judges' Letters Asking Lawyers to Consider Community Service*, ABA JOURNAL, Aug. 2015.

- Interview: *Mind the Gap: Ethics Experts Say a New ABA Annotation Will Help Courts and Lawyers Navigate the Attorney Sanction Process*, ABA JOURNAL, June 2015.

- Interview: Gina Passarella & P.J. D'Annunzio, *A Push by Some for Looser State Rules Over Referral Fees*, THE LEGAL INTELLIGENCER, March 24, 2015.

- Interview: Mathew Mosk & Brian Ross, *"Circus" Continues: Judge Goes After Lawyer Who Challenged Her Over Controversial Jet Deal*, ABC NEWS, Feb. 11, 2015.

- Interview: David L. Hudson, Jr., *Stop Sign: Prosecutors Who Allow Debt Collectors to Use Official Letterhead Sound an Ethics Alarm*, ABA JOURNAL, Jan. 2015.

- Interview: *A Long Fall: In a Futile Effort to Practice Law Again, F. Lee Bailey Loses His Last Big Case*, ABA JOURNAL, Dec. 2014.

- Press: *Court Overturns Mentally Disabled Man's Conviction*, ASSOCIATED PRESS, May 12, 2014.

- Interview: Carrie Johnson, *By Putting Interrogations on Tape, FBI Opens Window into Questioning*, ALL THINGS CONSIDERED (NPR July 21, 2014).

- Interview: Tim Hull, *Abuse Conviction Against Low-IQ Teen Thrown Out*, COURTHOUSE NEWS, May 12, 2014.

- Interview: Jonathan Handel, *Aereo: One Supreme Court Case, Three Recusals, One "Unrecusal," Much Uncertainty*, THE HOLLYWOOD REPORTER, April 22, 2014.

- Interview: John Wisely & L.L. Brasier, *Novi Judge Denies Conflict over Ties to Testing Firms*, DETROIT FREE PRESS, Dec. 30, 2013.

- Interview: *Horizon: Exculpatory Evidence* (Eight, Arizona PBS television broadcast Nov. 19, 2013).

- Interview: Lindsey Collom, *Voyles: Firings My Idea*, ARIZ. REPUBLIC, Jan. 16, 2013.

- Interview: Michael Kiefer, *Brewer Fills Arizona Courts with Republican Judges*, ARIZ. REPUBLIC, Sept. 28, 2012.

- Interview: *12 News: Pearce Investigation: Judicial Watchdog Probes November Recall* (NBC-KPNX television broadcast July 13, 2012).

- Interview: Mark Drajem, *Texas Judge's Campaign Says that He's Taken on the EPA*,

BLOOMBERG & BUSINESSWEEK, May 23, 2012.

- Interview: Patrick Marley, *Prosser Seeks Recusal that Would End Case*, MILWAUKEE J. SENTINEL, April 23, 2012.

- Interview: Katherine Lymn, *The University of Minnesota and the Supreme Court: Too Close for Comfort?*, MINNESOTA DAILY, April 10, 2012.

- Interview: Amanda Bronstad, *Federal Judge Files Complaint over His Own E-Mail Message*, NAT'L L.J., March 1, 2012.

- Interview: Patrick Marley, *Group Files Formal Request for Gableman Ethics Investigation*, MILWAUKEE J. SENTINEL, Dec. 20, 2011.

- Interview: Patrick Marley, *Law Firm Gave Advice on Elections Law It Is Suing Over*, MILWAUKEE J. SENTINEL, Nov. 28, 2011.

- Interview: Yvonne Wingett Sanchez & Michael Kiefer, *Many Watching High-Profile Andrew Thomas Case*, ARIZ. REPUBLIC, Oct. 16, 2011.

- Interview: Patrick Marley, *Prosser's Campaign Got Ample Funding: Lawyer Who Worked on Justice's Behalf Has Case Pending Before Court*, MILWAUKEE J. SENTINEL, Aug. 13, 2011; and *A Recusal Required*, JS ONLINE, Aug. 17, 2011 (consulting expert).

- Interview: Gabe Friedman, *Judge's Delay on Habeas Ruling Could Be Misconduct*, LOS ANGELES DAILY J., Aug. 1, 2011.

- Interview: Michael Kiefer, *Arizona Inmate Attempts to Halt His Wednesday Execution*, ARIZ. REPUBLIC, May 22, 2011.

- Interview: *Horizon: Thomas Allegations* (Eight, Arizona PBS television broadcast Dec. 13, 2010).

- Interview: *12 News Today: Big Story: Andrew Thomas Case* (NBC-KPNX television broadcast Dec. 7, 2010).

- Interview: *CBS 5 News: Tower Case Raises Questions for Law Expert* (CBS-KPHO television broadcast Aug. 12, 2010).

- Interview: *12 News: Big Story: County Conflict* (NBC-KPNX television broadcast Aug. 12, 2010).

EMAIL: KSWISHER@POST.HARVARD.EDU
SSRN AUTHOR PAGE: HTTP://SSRN.COM/AUTHOR=858354
BLOGS: JUDICIALETHICSFORUM.COM AND DQED.COM

## PROFESSIONAL APPOINTMENTS, AWARDS & COMMITTEES

- 2011 Recipient of the ABA Rosner & Rosner Young Lawyer Professionalism Award
- 2011-2012 Recipient of the InfiLaw National Policy Board Award
- *ABA/BNA Lawyers' Manual on Professional Conduct*, Editorial Board Member, 2008-2011 ("Since its inception in the early 1980's, the multi-volume *ABA/BNA Lawyers' Manual on Professional Conduct* has established itself as the pre-eminent reference work in the field of legal ethics and serves as the ABA's flagship publication in this important area.")
- O'Connor Advisory Committee (Honorary Chair: Retired Justice Sandra Day O'Connor; and Chair: Retired Chief Justice Ruth McGregor) of the Quality Judges Initiative, IAALS at the University of Denver, Committee Member, 2013-Present
- Criminal Justice Act Panel Member, 2009-Present (represent indigent criminal defendants before the United States Court of Appeals for the Ninth Circuit)
- Arizona Committee on the Rules of Professional Conduct ("Ethics Committee"), 2010-Present (draft statewide ethics opinions and chapters of the ARIZONA LEGAL ETHICS HANDBOOK and answer telephonic inquiries from individual attorneys involved in ethical dilemmas)
- Association of Professional Responsibility Lawyers, 2007-Present
- State Bar Fee Arbitration Committee Member and Arbitrator, 2014-Present
- *Arizona Attorney* [Official State Bar Journal], Editorial Board Member, 2005-2014
- State Bar Professionalism Committee, 2007-2013
- National Institute for Teaching Ethics and Professionalism, 2009 Fellow, Atlanta, Georgia (Spring 2009)

EMAIL: KSWISHER@POST.HARVARD.EDU
SSRN AUTHOR PAGE: HTTP://SSRN.COM/AUTHOR=858354
BLOGS: JUDICIALETHICSFORUM.COM AND DQED.COM