UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Jane Doe,<br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>Alfredo Simon Cabrera,<br><br>　　　　　Defendant. | §<br>§<br>§<br>§<br>§　Case No. 1:14-cv-01005 (RBW)<br>§<br>§<br>§<br>§ |

## JOINT MOTION TO QUASH AND FOR A PROTECTIVE ORDER

Defendant Alfredo Simon Cabrera ("Simon") and interested nonparty Benjamin Voce-Gardner ("Voce-Gardner") jointly file this motion seeking relief from disruptive, burdensome, and irrelevant discovery sought by Plaintiff Jane Doe ("Plaintiff"). Pursuant to Local Civil Rule 7(m), Simon's counsel has conferred with Plaintiff's counsel. Plaintiff's counsel opposes this Joint Motion.

### INTRODUCTION

The discovery at issue here relates to Plaintiff's Motion to Disqualify the Court in the instant action (ECF No. 77). Defendant opposes that Motion separately,[1] but it bears emphasis here that Plaintiff's questioning of this Court's ability to preside over this case fairly and impartially is baseless. It is, moreover, a sideshow and detour designed to further delay the Court from moving expeditiously to trial on the ultimate issues in the case.

Plaintiff has served on Voce-Gardner—an associate at Zuckerman Spaeder LLP ("Zuckerman") who has appeared in this case on behalf of Simon—a sweeping document subpoena (attached as Exhibit A). The subpoena seeks discovery of *all* "communication[s], mean[ing] any writing or any oral conversation," *see* Voce-Gardner Subpoena at A-2, A-3,

---

[1] *See* Def.'s Mem. in Opp'n to Pl.'s Mot. to Disqualify the Court, Sept. 11, 2015.

between Voce-Gardner and: (a) Simon's legal team in this case; (b) certain members and former members of Zuckerman including sitting Judge Amit Mehta; and (c) this Court's law clerk Marina Fernandez ("Fernandez"), which either "relate to" or "concern" this case, this Court, or Fernandez. *Id.* at A-5. Plaintiff also served a second and even more sweeping subpoena on Fernandez (attached as Exhibit B), seeking similar discovery and more, including "[a]ll communications"—again, both written and oral—to, from and/or with Judge Walton and/or the Co-Clerks relating to and/or concerning" this case. *See* Fernandez Subpoena at A-5, A-6. Simon herein seeks a protective order with respect to both subpoenas under Rule 26(c)(1) of the Federal Rules of Civil Procedure; Voce-Gardner seeks to quash his subpoena under Rule 45(b)(2)(B) and a protective order under Rule 26(c)(1).

This Court should exercise its broad discretion to grant the relief sought, both with regard to the existing subpoenas and to bar future requests for related discovery. As further discussed *infra*, this Court has already conducted its own investigation into the subject matter of the subpoenas, which concern *in-chambers* events and the effect of those events on this Court's *own* decision-making processes. This Court plainly does not require additional discovery to determine what happened in its own chambers—which is the touchstone factual issue relevant to the motion to disqualify. The Court has conducted its own inquiry and reached its own conclusions. That should be the end of the matter. There is simply no authority for engaging in a discovery fishing expedition seeking grounds to impeach the Court's own internal inquiry in a disqualification matter, or its resulting findings and conclusions. This Court should accordingly exercise its authority to bar further unnecessary discovery and thereby keep the underlying litigation moving forward.

**BACKGROUND**

The factual background of this dispute is familiar to the Court from a letter from Simon's lead attorney in this case, Jon Fetterolf of Zuckerman, on August 11, 2015, *see* ECF No. 75, Ex. A, and from the Court's telephonic hearing held on August 18, 2015 (transcript excerpts attached as Exhibit C). In addition, Defendant's Memorandum in Opposition to Plaintiff's Motion to Disqualify the Court will address the facts in greater detail. Accordingly, here we set forth only the core facts most directly relevant to this Joint Motion to Quash and for a Protective Order.

The critical fact, again, is that this Court has already conducted a thorough investigation of the subject matter of the subpoenas, and has made findings based on that investigation. The Court's inquiry included "instruct[ing] both my law clerk who is assigned to work on this case and the law clerk who made the unfortunate statements to [Voce-Gardner]" that gave rise to this discovery dispute "to prepare declarations which will be made a part of the record." Hr'g Tr. 2:19-22, Aug. 18, 2015. The Court found that those declarations indicated that "the clerk who's assigned to th[is] case . . . did not in any way consult with Ms. Fernandez," and that "she had no input whatsoever in reference to the advice he provided me" on how "I should address the case." *Id.* at 3:15-18. Moreover, the Court reported that it has "obviously had no conversations with [Fernandez] about the case, and ha[s] had no conversations with her about the case during the entire time the case has been assigned to me." *Id.* at 3:19-21.

At the Hearing, the Court also made additional statements relevant here:

- "I am absolutely confident, especially based upon the declaration that's been prepared and sworn to by the clerk who is assigned to the case, that he had no contact with Ms. Fernandez about the case itself."

- "I'm convinced that [the clerk assigned to the case] was not in any way influenced by Ms. Fernandez. And I clearly was not influenced in any way by Ms. Fernandez, because I relied upon the advice given to me by the clerk assigned to the case and my own independent assessment of the case."

3

- "I feel confident that my rulings [in this case] were based solely upon an independent assessment of the facts and the law."

- "[Ms. Fernandez's] relationship with Zuckerman Spaeder or anybody associated with that firm has had no impact whatsoever on any rulings that I've made in reference to this case and any perceptions that I have in reference to the case, because I've had no conversations with her about the case."

- "There's nothing that the clerk assigned to the case did that would be a predicate for an appearance of impropriety or a conflict.  It's a clerk who has nothing to do with the case, *and that's been verified by me and verified by the clerk assigned to the case.*"

*Id.* at 9-10, 12, 15 (emphasis added).

Although this Court has thus already determined whether Fernandez influenced the Court's decisions in this case—and emphatically found that she did not—Plaintiff now seeks sweeping discovery to second-guess the Court's inquiry and findings concerning the Court's own internal functions and deliberations.  As set forth *infra*, however, such discovery is neither necessary nor appropriate, and cannot shed additional light either on the Court's actual reasons for making decisions as it did, or on any alleged "appearance" of impropriety.

## APPLICABLE RULES AND STANDARDS

Movants seek relief under Rules 26(c)(1) and 45(d)(2)(B) of the Federal Rules of Civil Procedure.  Specifically, Simon invokes Rule 26(c)(1), which permits a "party or any person from whom discovery is sought" to "move for a protective order in the court where the action is pending."  Voce-Gardner here seeks protection under Rule 26(c)(1) and also under Rule 45(d)(3).  Voce-Gardner has also separately filed a letter stating his objections to the subpoenas and indicating that he will not be producing any documents in response, which is attached as Exhibit D.  Ms. Fernandez has similarly filed her own letter under Rule 45(d)(2)(B), which is attached as Exhibit E.[2]  As a result, until and unless Plaintiff files a motion to compel under Rule

---

[2] Attached as Exhibit F is an email from Ms. Fernandez's counsel clarifying a point in the letter attached as Exhibit E.

4

45 (d)(2)(B)(i), there is no live discovery dispute here, but Simon and Voce-Gardner nonetheless file this motion out of an abundance of caution to preserve their rights under Rule 26(c)(1).

Under Rule 26, the Court "*must* limit . . . discovery . . . if it determines," *inter alia*, that:

> [T]he burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added); *see also Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 379 (D.D.C. 2011) (quashing document and deposition subpoena directed to opposing counsel on the ground that "[t]he Court must limit discovery" when "the burden or expense of the discovery outweighs its benefit"). Rule 45 similarly provides that the Court "*must* quash or modify a subpoena" that "subjects a person to an undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added), or "requires disclosure of privileged or protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Both Rule 26 and Rule 45 thus include consideration of whether the burden of the discovery requested outweighs the benefits (*i.e.*, is "undue")—and that standard is clearly met here.

Moreover, it is well established that while there is nothing "to prevent the party seeking recusal from trying to engage in discovery incident to a recusal motion," the decision whether to "allow[] . . . such discovery is within the sound discretion of the court." *In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997); *see also Cheeves v. S. Clays, Inc.*, 797 F. Supp. 1570, 1580 (M.D. Ga. 1992).

5

**ARGUMENT**

I. **THIS COURT SHOULD ISSUE A PROTECTIVE ORDER AND QUASH THE SUBPOENAS.**

   A. **The Discovery Sought by Plaintiff is Not Relevant.**

Under Rule 26(b)(1), a party is entitled to discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Although this rule has been interpreted broadly to extend beyond its literal terms (which include only issues arising from the pleadings), *see, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978), discovery remains constrained by the requirement of relevance. *Coleman v. District of Columbia*, 275 F.R.D. 33, 37 (D.D.C. 2011) ("[T]his court has recently affirmed the proposition that 'the relevance standard is not so liberal as to allow a party to roam in shadow zones of relevancy.'"). Even construing Rule 26(b)(1) broadly, this is the type of case in which the discovery sought by Plaintiffs is not relevant at all.

As Plaintiff's counsel indicated at the August 18 hearing, the discovery sought here does not even arguably go to any underlying issue in the case, but only to Plaintiff's motion to disqualify this Court. Hr'g Tr. 12:22-23, Aug. 18, 2015. With respect to that issue, the Court has already found that it was "not influenced in any way by Ms. Fernandez" and that its "rulings . . . were made based upon solely an assessment of the facts and law;" accordingly, "there is no *actual* basis for me to recuse myself." *Id.* at 9:22-10:10 (emphasis added). Obviously, none of the third-party discovery requests here could affect this Court's own view of whether its rulings were, in fact, influenced by Fernandez. *See, e.g.*, *Terrazas v. Slagle*, 142 F.R.D. 136, 139 (W.D. Tex. 1992) ("[T]he testimony of the law clerks . . . can shed no light on the reasoned bases of the judges in formulation of their orders."); *see also United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (affirming district court denial of a hearing on a recusal motion because "[t]he

6

district judge in this case . . . knew as a matter of fact whether or not the government had submitted *ex parte* material to him" and he had "attested that it had not."). The discovery is thus irrelevant to the question of disqualification based on *actual* impropriety.

Of course, Plaintiff also alleges an *appearance* of impropriety, and seeks discovery here presumably because she questions the Court's own fact-finding. *See, e.g.*, Mot. at 19-20. But as Plaintiff acknowledges, the objective standard applicable under 28 U.S.C. § 455(a) "focuses *on what is revealed to the parties and the public*," Mot. at 20 (quoting *Hall v. Small Bus. Admin.*, 695 F.2d 175, 178 (5th Cir. 1983)) (emphasis added), because the "*public* confidence in our judicial system" is "as important" as "avoiding impropriety itself." *Id*. at 19 (quoting *United States v. Jordan*, 49 F.3d 152, 155-56 (5th Cir. 1995)) (emphasis added). Simply because internal and private communications may exist in addition to the facts already made public does not mean that discovery is appropriate. Otherwise, no decision as to whether an appearance of impropriety exists could ever be made until all intra-chambers and otherwise protected communications had been revealed. Under the Plaintiff's view of when discovery must be conducted, the courts could not adjudicate any issue relating to a law clerk until the various litigants had been able to rummage freely through chambers communications and attorney-client privileged materials. The question is whether the material facts have been discovered and made public and the answer to that question, based on the Court's own searching investigation, thorough ruling and findings, is an emphatic yes.

> **B.      At a Minimum, the Burdens of the Discovery Sought Outweigh Any Conceivable Benefits.**

Even if the subpoenaed documents were *relevant*, they fall far short of the fundamental limitation on discovery articulated above, i.e., whether the burden of the discovery sought outweighs its benefits.   *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); *see also* Fed. R. Civ. P.

7

45(d)(3)(A)(iv) (containing similar "undue burden" standard for quashing subpoenas). Significantly, in analyzing whether discovery satisfies this weighing test, the courts—including this Court—have emphasized that nonparty status makes it easier to demonstrate excessive burden. *See, e.g.*, *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005); *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987) (affirming district court's restriction of discovery where nonparty status "weigh[ed] against disclosure"); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (nonparty status a significant factor in determining whether discovery is unduly burdensome); *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 09-50630, 2009 WL 2351769, at *1 (E.D. Mich. July 29, 2009).

Moreover, in this case, the particular nonparties from whom Plaintiff seeks discovery greatly amplify burden concerns. Specifically Plaintiff seeks discovery from *a Zuckerman attorney who appeared on behalf of Defendant* (i.e., opposing counsel) and from this Court's *law clerk*—two categories of nonparties from whom discovery is virtually never appropriate. As set forth *infra*, in these unusual circumstances, the burdens of the requested discovery clearly outweigh any potential benefits.

    **1.**    **The Discovery Sought from this Court's Law Clerk Would Violate the Sanctity of Communications Between Judges and their Clerks.**

It is, of course, well-established that "discovery of judicial officers" is an "extreme step" that is rarely permitted. *Cobell v. Norton*, 237 F. Supp. 2d 71, 100 (D.D.C. 2003). Moreover, this principle applies not only to judges but to quasi-judicial officers, *see, e.g.*, *United States v. Ianniello*, 740 F. Supp. 171, 187 (S.D.N.Y. 1990), *rev'd on other grounds sub nom United States v. Salerno*, 937 F.2d 797 (2d Cir. 1991), and to law clerks as well.

In *Terrazas v. Slagle*, 142 F.R.D. 136 (W.D. Tex. 1992), for example, defendants argued that they needed to depose the law clerks of judges assigned to a case involving a disputed

election. Defendants claimed that the depositions were necessary to "see if there was any improper third-party contact and, if so, whether the orders of the Court [were] so 'tainted' by that contact that they must be reversed." *Id.* at 138. The *Terrazas* court noted both the "sanctity of communications between the judges and their law clerks" and the existence of a "limited judicial privilege" protecting those communications," *id.* at 139, and granted a motion to quash.

In short, the courts have properly recognized that discovery of in-chambers communications between judges and their clerks is not permitted because it would compromise the functioning of the judicial system. This case presents no reason to depart from that rule.

### 2. The Discovery Sought from Voce-Gardner Would Open a Pandora's Box of Problems.

Plaintiff's motion to disqualify correctly sets forth that Voce-Gardner appeared on behalf of Simon in this case.[3] Plaintiff thus knowingly seeks extensive discovery—*see infra* pp. 15-17 for further discussion of the overbreadth of the subpoenas—from opposing counsel.

This Court has recently addressed the dangers of permitting discovery from opposing counsel. In the *Coleman* case, for example, the Court reviewed a Magistrate Judge's decision to issue a protective order precluding the deposition of in-house counsel assigned to the case. The Court wrote that "[w]hen a party seeks to depose opposing counsel, the normally permissive discovery rules become substantially less so." 284 F.R.D. at 18. The Court set forth numerous problems attendant on such discovery, including that it "undermine[s] attorney-client communications, present[s] unique opportunities for harassment, disrupt[s] opposing counsel's preparation, [it] may lead to opposing counsel's disqualification, and may spawn collateral litigation on issues of privilege, scope, and relevancy." *Id.* These same concerns apply equally to the extremely broad document discovery Plaintiff seeks here.

---

[3] *See, e.g.*, Mot. at 5.

9

As noted *supra*, Plaintiff is well aware that Voce-Gardner *represented* Fernandez in a proceeding regarding her military status, having been informed of that fact by Zuckerman on August 11. Seeking "[a]ll communications" between Voce-Gardner and Fernandez, Voce-Gardner Subpoena at 5, thus directly implicates her attorney-client privilege. In *Sterne Kessler*, this Court explained that "[u]ndermining attorney-client communications due to the risk that counsel may be compelled to testify at a deposition in a pending or future 'scorched earth' litigation is certainly not helpful to effective legal practice." 276 F.R.D. at 381. And, of course, Fernandez's attorney-client privilege is not the only one at issue here—for example, the subpoena also seeks an array of communications between Voce-Gardner and others "relating to and/or concerning" this Court, thereby implicating Simon's privilege as well. Voce-Gardner Subpoena at 5. The subpoena thus violates the "essential . . . degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," *Hickman v. Taylor*, 329 U.S. 495, 513 (1947), that both clients and their attorneys expect, and that the courts historically have guarded zealously. *See also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327-28 (8th Cir. 1986) (stating that deposition of opposing counsel is "a negative development in the area of litigation . . . that should be employed only in limited circumstances"); *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987).

This case also raises the specter of the "unique opportunities for harassment" noted by *Coleman*. As discussed *supra*, this Court has already found that it was not in any way influenced by Fernandez's contacts with Voce-Gardner or anyone else at Zuckerman. Dragging him into extensive discovery here "appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Shelton*, 805 F.2d at 1327-28.

The discovery sought here also "carr[ies] the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy, that only end up imposing additional pre-trial delays and costs on both parties and burdens on the courts to resolve work-product and privilege objections." *Sterne Kessler*, 276 F.R.D. at 382. This is particularly true given the dramatic overbreadth of the subpoenas challenged here, discussed directly below.

In sum, as this Court found in *Sterne Kessler*, permitting extensive discovery from opposing counsel—"even if . . . limited to relevant and non-privileged information," 276 F.R.D. at 380, which is not the case here—would "disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Id.* at 380-81; *see also M&R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992) (suggesting that discovery from opposing counsel risks "creat[ing] a side-show and divert[ing] attention from the merits of the case"). This Court should not permit such disruption.

### 3. The Overbreadth of the Subpoenas Here Underscores the Dangers of Discovery on Motions to Disqualify.

Although discovery of any sort is—as discussed *supra*—inappropriate here, the particular subpoenas at issue here are also so overbroad as to further highlight the dangers of discovery on a motion to disqualify. A Court should, of course, quash a subpoena seeking documents if it "does not limit the [documents] requested to those containing subject matter relevant to the underlying action." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). Further, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the disclosure or discovery of the material at issue. Fed. R. Civ. P. 26(c)(1). Likewise, Rule 45(c)(3) requires the Court to quash a subpoena that "subjects a person to an undue

11

burden." Fed. R. Civ. P. 45(c)(3).  And a "subpoena imposes an undue burden on a party when [it] is overbroad." *In re Subpoena Duces Tecum*, 550 F. Supp. 2d at 612.

Even putting aside the more fundamental point that the discovery sought here is not relevant at all, there can be no serious question that the subpoenas are also grossly overbroad. There is little purpose to a point-by-point analysis of each overbroad element of the subpoenas, but a couple of obvious examples are illustrative.

Fernandez's subpoena requests her communications, including "writing or any oral conversation" (such as "personal conversations, telephone conversations," and so on) with Zuckerman lawyers and former lawyers (including a sitting judge), Voce-Gardner, Simon's legal team, her father, her co-clerks, and this Court relating to a wide variety of subjects, including this case, the individuals listed directly above, and the Court.  As discussed *supra*, *none* of these documents bear on either actual impropriety or the appearance thereof—but if *any* did, it would be at best a tiny percentage.  Clearly Voce-Gardner's and Fernandez's private communications "from 2014 to the present" do not bear on either this Court's actual reasons for its decisions or on any purported public appearance of impropriety.  Similarly, while Voce-Gardner's subpoena requests all communications to, from, or with Simon's legal team concerning this Court, such communications do not bear on either the Court's decision making or an appearance of impropriety.

The subpoenas are also unnecessarily personally intrusive.  Unless Plaintiff contemplates even *more* sweeping discovery than already requested, there is no conceivable need for disclosure of all of Voce-Gardner's and Fernandez's "cell phones . . . and all cell service providers" since June of 2014, or their email service providers, or all of their personal phone calls and text messages from April 5 through April 10.  *See* Schedule A to Exs. A & B.  This

Court should not condone such harassing tactics. Finally, Voce-Gardner's subpoena violates Rule 45(c)(2) as it specifies a place of compliance (the District of Columbia) which is more than 100 miles from where Voce-Gardner "resides, is employed or regularly transacts business in person"—in New York City. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii) (requiring the quashing or modification of a subpoena where such subpoena requires "a person to comply beyond the geographical limits specified in Rule 45(c)").

### 4. The Discovery Sought by Plaintiff Would also Place an Undue Burden on Defendant.

As discussed *supra*, the kinds of discovery sought by Plaintiff "carry the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy" that "impos[e] additional pre-trial delays and costs on both parties and burdens on the courts to resolve work-product and privilege objections." *Sterne Kessler*, 276 F.R.D. at 382. As such, this discovery imposes a substantial burden on Simon who, as his counsel explained at the August 18 hearing, seeks a "resolution via trial" as soon as possible "so that he can have a full and fair opportunity to get a job in the off season." Hr'g Tr. 14:16-17, Aug. 18, 2015. Particularly given the irrelevance of the discovery to any issue in this case, the burden of further delay on Defendant would be plainly undue.

### CONCLUSION

The discovery sought by Plaintiff is neither relevant nor appropriate, and places an undue burden on the nonparty witnesses subpoenaed, on the functioning of the judicial system, and on Simon. This Court should issue a protective order and quash the subpoenas.

Dated September 11, 2015

/s/ *Jon R. Fetterolf*
Jon R. Fetterolf (D.C. Bar No. 479225)
Rachel F. Cotton (D.C. Bar No. 997132)
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 100
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
Email: jfetterolf@zuckerman.com
Email: rcotton@zuckerman.com

*Attorneys for Defendant Alfredo Simon Cabrera*

/s/ *Thomas B. Mason*
Thomas B. Mason (D.C. Bar No. 413345)
Timothy J. Simeone (D.C. Bar No. 453700)
Harris, Wiltshire & Grannis LLP
1919 M Street, N.W., Suite 800
Washington, DC 20036
Tel: (202) 730-1300
Fax: (202) 730-1301
Email: tmason@hwglaw.com
Email: tsimeone@hwglaw.com

*Attorneys for Nonparty Benjamin Voce-Gardner*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system on this 11th day of September, 2015, and electronically served via the CM/ECF system on the following:

>Andrew G. Slutkin
>Steven J. Kelly
>Christopher Mincher
>SILVERMAN, THOMPSON, SLUTKIN & WHITE, LLC
>201 North Charles Street, 26th Floor
>Baltimore, MD 21201
>aslutkin@mdattorney.com
>skelly@mdattorney.com
>cmincher@mdattorney.com

>>/s/ *Rachel F. Cotton*
>>Rachel F. Cotton