IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**Jane Doe**,

      Plaintiff;

v.

**Alfredo Simon Cabrera**,

      Defendant.

Case No. 1:14-cv-01005 (RBW)

## Memorandum in Opposition to Joint Motion to Quash
## Subpoena to Benjamin Voce-Gardner and for a Protective Order

Plaintiff Jane Doe files this Opposition to the Motion to Quash Subpoena and for a Protective Order (the "Motion to Quash") jointly filed by Defendant Alfredo Simon Cabrera and his attorney, Benjamin Voce-Gardner (together, the "Movants"), and in support states as follows:

### INTRODUCTION

This is far from a run-of-the-mill discovery dispute. The discovery requests at issue were directed at a law clerk for a sitting judge on this Court and to one of the three lawyers for the Defendant in this case. While Movants aggressively brand such requests as inappropriate and unwarranted, the Motion to Quash, Sept. 11, 2015, ECF No. 79, conveniently omits key facts that suggest opposing counsel provided the Court's clerk with valuable free legal services in exchange for favors benefitting Defendant.

The key facts justifying the uncommon discovery requests at issue are not in dispute. Movants do not dispute the fact that one of Defendant's three lawyers represented the Court's clerk for free during the pendency of this case. Nor do they dispute that the Court's clerk, who is the daughter of a senior partner in Defendant's law firm, engaged in *ex parte* communications

with the lawyer she shared with Defendant, specifically indicating she had influenced orders to benefit the Defendant and his lawyers.

Notwithstanding these troubling facts, Movants boldly claim that Plaintiff is entitled to *no* investigation regarding the clerk/law firm interactions—insisting that Plaintiff should not even be permitted to see the exact text messages between the clerk and members of Defendant's legal team and law firm, even though those messages constitute *ex parte* communications about this case. As discussed below, Plaintiff issued discovery requests that are narrowly tailored to explore the full extent of the inappropriate *ex parte* communications between the clerk and Defendant's lawyers and to determine the degree to which those communications may have resulted in prejudice to her case. Plaintiff is fully cognizant of the sensitivity of these requests and she is more than willing to agree to reasonable measures to preserve any applicable privileges and to ensure confidentiality of any materials reviewed in discovery. Accordingly, and for the reasons discussed below, Plaintiff respectfully requests that the Court deny the Motion to Quash.

## **BACKGROUND**[1]

On June 12, 2014, this case was assigned to U.S. District Court Judge Reggie B. Walton, whose law clerk at the time, Marina Fernandez, is the daughter of Jack Fernandez, a long-time equity partner at Defendant's counsel, Zuckerman Spaeder LLP ("Zuckerman Spaeder"). Rather than heeding the type of distance from the clerk that, to avoid any appearance of impropriety, would be expected during the pendency of its case, Zuckerman Spaeder instead sought to build upon that connection. In January 2015, while this case was ongoing, Zuckerman Spaeder offered,

---

[1] A full recounting of the limited facts and circumstances known so far to Plaintiff is included in the Motion to Disqualify and Memorandum in Support Thereof, Aug. 28, 2015, ECF No. 77, at 3-10.

and Ms. Fernandez accepted, *free* legal services not only from the firm, but from the *actual attorney* who had appeared on behalf of the Defendant in this matter.

Zuckerman Spaeder provided these free services even though Ms. Fernandez's receipt of them violated federal law and numerous ethical codes. Through this prohibited representation, Ms. Fernandez, unsurprisingly, "became friends" with that attorney, Benjamin Voce-Gardner. *See* Order, Aug. 18, 2015, Ex. C (the "Fernandez Declaration") at 1. The close personal and professional relationship between Ms. Fernandez and Mr. Voce-Gardner resulted in at least two disclosed *ex parte* text-message exchanges about this case.

In one, Ms. Fernandez relayed that she had dealt with a discovery matter in the case. In the other, Ms. Fernandez, after attending an Aug. 5, 2015, motions hearing in this case, twice told Mr. Voce-Gardner that he would "owe" her for the favorable substance of a court order resulting from that hearing. She also sent related and apparently similar messages to her father. The order that Ms. Fernandez referred to granted the Defendant a benefit that, at the motions hearing, Defendant expressly said he was not seeking, Plaintiff was not given a chance to present argument about, and about which Judge Walton said he would reserve judgment.

At some undisclosed point afterward, Ms. Fernandez informed the Court of the latter text-message exchange, Fernandez Decl. at 3, though it remains unclear whether, through *ex parte* communications with Zuckerman Spaeder (including by partner Jack Fernandez) or some other person, she was prompted to make the Court so aware. On August 10, 2015, the Court scheduled an emergency hearing and, on August 11 – five days after it became aware of the improper *ex parte* communications from Ms. Fernandez – Zuckerman Spaeder, anticipating the subject of the hearing, sent a letter (the "Letter") to the Court informing it of the communications and making selective, incomplete disclosures (unsupported by any affidavit) about the

circumstances of the firm's extensive history of interactions with Ms. Fernandez. The Letter and related phone calls between Plaintiff's and Defendant's counsel that day was the first that Plaintiff was made aware of any relationship or interactions between Ms. Fernandez and Zuckerman Spaeder.

The Court conducted the emergency hearing on August 18, 2015. In that hearing, the Court informed the parties of two declarations that had been completed by law clerks, though those documents were not provided prior to the hearing. Plaintiff made three oral motions – a motion to vacate the August 5, 2015, rulings; a motion to disqualify the judge; and a motion to stay the proceedings until a decision was reached on disqualification – all of which were denied.

The Court invited Plaintiff to file a written motion to disqualify and subsequently set a briefing schedule. Plaintiff indicated that she would be issuing related discovery requests, and the Court stated that it "can't stop you from doing that." Tr. of Emergency Telephone Conference before the Hon. Reggie B. Walton (the "Emergency Hearing"), Aug. 18, 2015, at 11-12. After stating its beliefs about the actual impact of Ms. Fernandez's misconduct, the Court also posted, on PACER, the record regarding the texting and inappropriate contact, which constitutes:

- The Letter;

- A carefully worded declaration of Ms. Fernandez partially explaining the circumstances of some, but not all, of her known contacts with the case and Defendant's counsel; and

- A brief declaration of Ms. Fernandez's co-clerk stating that he has "not received any substantive assistance" from his co-clerks and that neither of his co-clerks "substantively assisted" the Court in the matter, statements that are inconsistent with

Ms. Fernandez's testimony that, at least in one instance, a third law clerk did substantive work on a discovery issue.

*See* Order, Aug. 18, 2015, ECF No. 75.

This "record" has not eliminated Plaintiff's legitimate concerns about the relationship that the law firm cultivated with the clerk and whether the firm sought or received any favorable treatment or other benefits as a result of that relationship. In accordance with the Court's schedule, Plaintiff filed a motion to disqualify before any investigation into the facts could be undertaken. Refusing to make anything more than limited and partial disclosures, which raise more questions than they answer, Defendant strategically seized upon the paltry "existing record," opposing the Motion to Disqualify on the basis of Plaintiff's "speculation" and "conjecture" about the prejudice she fears she may have suffered. *See* Opp'n to Mot. to Disqualify, Sept. 11, 2015, ECF No. 80, at 1 & 16.

If Zuckerman Spaeder and Ms. Fernandez made full and complete disclosures about their relationship and communications, and those disclosures demonstrated that (even though the firm's personal and professional relationship with Ms. Fernandez during this case created numerous ethical problems in itself) no actual improprieties occurred, any appearance of such impropriety would, likewise, be greatly diminished. Instead, Zuckerman Spaeder has stridently refused to answer basic questions about that relationship and related communications, and labeled the dispute a "sideshow and detour[.]" Mot. to Quash at 1. Because, during this case, Zuckerman Spaeder encouraged and developed a close, and improper, personal and professional relationship between the law clerk and the Defendant's actual attorney, *it* is responsible for this "sideshow," not Plaintiff.

On Aug. 28, 2015, Plaintiff issued subpoenas to produce documents, information, or objects to Ms. Fernandez and Mr. Voce-Gardner, seeking evidence of communications between the clerk and Zuckerman Spaeder attorneys and internal communications among Zuckerman Spaeder attorneys regarding Ms. Fernandez and the judge in this case. *See* Mot. to Quash, Ex. A. The Movants filed this motion, while counsel for Ms. Fernandez simply sent a letter objecting to the requests on the basis that they were "overbroad and burdensome", "not relevant" to disqualification, would capture communications between Ms. Fernandez and sitting judges of this Court, and sought "production of attorney-client privileged communications between Ms. Fernandez and attorneys at Zuckerman who represented her earlier this year, including the Honorable Amir [*sic*] P. Mehta, while he was in private practice at Zuckerman, in connection with a private matter[.]"[2] *Id.* at Ex. E. Ms. Fernandez therefore refused to comply with the subpoena. As only the Motion to Quash has been transferred to a new judge for decision, *see* Order, Sept. 14, 2015, ECF No. 83, the discovery requests to Ms. Fernandez are not currently at issue.[3]

---

[2] On Sept. 11, 2015, counsel for Ms. Fernandez sent an email to Plaintiff's counsel retracting his statement that Judge Mehta – who was Defendant's attorney until December 2014 – had been a part of Zuckerman Spaeder's private *pro bono* legal representation of Ms. Fernandez, which (based on the firm's factual assertions) appears to have begun a few weeks after Judge Mehta's departure from the firm. Ms. Fernandez's counsel subsequently stated that Judge Mehta never represented Ms. Fernandez and that she had no communications with him.

[3] Ms. Fernandez has obtained her own counsel and has refused to comply with Plaintiff's subpoenas. Plaintiff reserves the right to file a motion to compel Ms. Fernandez's compliance with the subpoena as a forthcoming separate filing, at which point Ms. Fernandez will have an opportunity to present argument on the propriety of that subpoena. Any concerns that the Court may have about discovery to Ms. Fernandez should not, as the Movants wish them to, affect its analysis of the narrower question of whether discovery is warranted from Mr. Voce-Gardner, who is not a member of judicial chambers. That the Motion to Quash presents thorough legal arguments on Ms. Fernandez's behalf, even when she has obtained separate counsel, further

**ARGUMENT**

The Motion to Quash should be denied because the requests propounded by Plaintiff are reasonably calculated to lead to the discovery of admissible evidence that is relevant to the issues underlying her disqualification motion, and the current record is insufficient for adequate appellate review. Further, the bulk of Movants' arguments can be addressed by limiting the requests and/or through *in camera* review by the Court. Complete denial of discovery would only enhance, not lessen, the appearance of impropriety that already exists in this matter.

I.  **Plaintiff has Established that the Requests are Warranted and Necessary to Enable Appellate Review**

Movants concede that there is nothing "to prevent the party seeking recusal from trying to engage in discovery incident to a recusal motion[.]" Mot. to Quash at 5 (citing *In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997); *Cheeves v. S. Clays, Inc.*, 797 F. Supp. 1570, 1580 (M.D. Ga. 1992)). Discovery in aid of a motion for judicial disqualification is appropriate when "the party seeking discovery is able to demonstrate in good faith, pursuant to Rule 26, a substantial basis that the discovery being sought 'appears reasonably calculated to lead to the discovery of admissible evidence' in support of a pending or contemplated motion for disqualification, and that such information is 'not obtainable from some other source that is more convenient.'" *See Cobell v. Norton*, 237 F. Supp. 2d 71, 101 n. 26 (D.D.C. 2003) (quoting 797 F. Supp. 1580 n. 7). Despite the Movants' suggestions to the contrary, in this Court, discovery related to disqualification is largely similar to any other type of discovery.

This Court has permitted discovery of attorneys in general disqualification matters to the extent necessary to create "an adequate record for appellate review." *U.S. v. Phillip Morris Inc.*,

---

establishes the strong personal and professional bonds between Zuckerman Spaeder, Mr. Voce-Gardner, and Ms. Fernandez, their (presumably) former client.

312 F. Supp. 2d 27, 34-35 (D.D.C. 2004) (internal citations removed); *cf. Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 213 (D.D.C. 2013) (reserving judgment on disqualification until after discovery). This is consistent with, in cases specifically involving disqualification on the basis of a law clerk conflict of interest, federal appellate courts' faulting a moving party for not, at the district court level, "explor[ing] facts further or contest[ing]" assertions made by a law clerk and judge that are pertinent to the dispute. *See Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1313 (10th Cir. 2015). Other appellate courts in similar circumstances have remanded disqualification questions where "the pertinent facts are not well developed," "the critical facts remain clouded," and "many of the crucial allegations [remain] unresolved." *See Vaska v. State*, 955 P.2d 943, 946 (Alaska 1998). Such cases suggest that, in matters involving disqualification because of conflicts of interest of or misconduct by law clerks, the movant should be given a fair opportunity in discovery to "explore," and even "contest," factual assertions made by the law clerks, and develop all the pertinent facts.[4]

Further, this Circuit and other appellate courts have recognized the importance of sufficient appellate review in disqualification matters. This Circuit has acknowledged that it is "difficult to detect all of the ways that bias can influence a proceeding," *In re al-Nashiri*, 791 F.3d 71, 79 (D.C. Cir. 2015), and appellate review that is merely "fortified by assumptions" is

---

[4] Plaintiff does not contend, as the Movants' straw-man argument suggests she does, that "no decision as to whether an appearance of impropriety exists could ever be made until all intra-chambers and otherwise protected communication had been revealed," or that the courts cannot "adjudicate any issue relating to a law clerk until the various litigants had been able to rummage freely through chambers communications and attorney-client privileged materials." Mot. to Quash at 7. The question is whether the evidence sought is relevant to a potential impropriety and prejudice to a party; certainly, facts that are revealed in discovery may strengthen an appearance of impropriety and indicate a need for disqualification (or, alternatively, weaken the appearance of impropriety and eliminate a need for disqualification), but a possible appearance of impropriety is not the basis for the discovery itself.

therefore "precarious," *Cobell v. Norton*, 334 F.3d 1128, 1139 (D.C. Cir. 2003) (citing *Berger v. United States*, 255 U.S. 22, 36 (1921)) (discussing need for writ of mandamus in disqualification matters). Indeed, in disqualification matters, the Court of Appeals need not accept any facts found by the district court that are insufficient for "meaningful appellate review." *United States v. Microsoft*, 253 F.3d 34, 118 (D.C. Cir. 2001) (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)).

In arguing that the current record is fully sufficient to resolve the Motion to Disqualify, Movants inaccurately frame the analysis to be undertaken. As stated by the Movants, relief is unavailable to the Plaintiff unless she can directly prove that the Court cannot "preside over this case fairly and impartially" and that "Fernandez influenced the Court's decisions in the case." Mot. to Quash at 1 & 4. To the Movants, the "touchstone factual issue" is "what happened in [the Court's] own chambers" and "whether [the Court's] rulings were, in fact, influenced by Fernandez[.]" *Id.* at 2 & 6. The firm therefore contends that discovery is unnecessary because it "cannot shed additional light either on the Court's <u>actual reasons</u> for making decisions as it did." *Id.* at 4 (emphasis added). These statements are fully contrary to the applicable law.

As thoroughly set forth in the briefing on the Motion to Disqualify and an affidavit of an expert in judicial ethics, neither actual bias or influence nor the actual reasons for judicial decisions must be proven before disqualification is warranted. *See* Mot. to Disqualify at 19-21 & Ex. B (citing *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993) ("For purposes of § 455(a) disqualification, it does not matter whether the district court judge actually harbors any bias against a party or the party's counsel."); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1525 (11th Cir. 1988) (inherent in § 455(a) is the "principle that our system of 'justice must satisfy the appearance of justice'" and its purpose "is to promote confidence in the judiciary by

avoiding even the appearance of impropriety"); *Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703, 714 (9th Cir. 1990) ("Section 455(a) governs circumstances that appear to create a conflict of interest, even where none really exists."); *United States v. Jordan*, 49 F.3d 152, 155-156 (5th Cir. 1995) ("Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself.")). This is plainly established in this Circuit's guidelines for weighing disqualification: "(1) that one determines a violation <u>completely without regard to whether there exist adequate independent grounds for the judge's rulings</u>[5], (2) that the appearance-of-partiality test is an objective one (whether an informed observer would reasonably question the judge's impartiality), and (3) that application of the test <u>is wholly independent of whether the judge intends to act with bias or prejudice</u>." *In re Barry*, 946 F.2d 913, 914 (D.C. Cir. 1991) (emphasis added). Indeed, the Movants' argument that the Court has somehow already made findings dispositive of the matter makes little sense given that, in that same hearing, Judge Walton conceded that, because of Ms. Fernandez's *ex parte* text messages with Mr. Voce-Gardner and her father, "someone could get the impression that somehow she had something to do" with rulings in the case, and then agreed to accept a written motion on the issue. Emergency Hearing at 3-4 & 17.

The Movants declare, with an "emphatic yes," that all "material facts have been discovered" regarding its relationship and interactions with the Court's law clerk while this case was pending before the law clerk's judge. Mot. to Quash at 7. Yet both Zuckerman Spaeder and

---

[5] Thus, the Movants' repeated references to Judge Walton's comment during an emergency hearing on the matter that "I feel confident that my rulings were based solely upon an independent assessment of the facts and the law" are completely immaterial. *See* Mot. to Quash at 4 & 6.

Ms. Fernandez have refused to address large, important questions about their relationship and interactions. A sampling of those deficiencies demonstrates why discovery is needed:

- Plaintiff was not provided with any of text messages between Ms. Fernandez, her father, and Mr. Voce-Gardner. Instead, Plaintiff has been forced to rely on Zuckerman Spaeder's representations of what the text messages between Ms. Fernandez and Mr. Voce-Gardner say. But Zuckerman Spaeder has not even provided the substance of the text messages between Ms. Fernandez and her father, representing only that they were "similarly worded" to those sent to Mr. Voce-Gardner. See Letter at 1. In fact, Ms. Fernandez's declaration omits any mention of these communications with her father. In the Motion to Disqualify, Plaintiff questioned why these text messages were not disclosed, how Mr. Fernandez responded to his daughter's messages, and whether Ms. Fernandez and her father had subsequent discussions relating to this case. In opposition to the motion, Zuckerman Spaeder further refused to address the matter, merely repeating that she sent "similarly worded" messages. Opp'n to Mot. to Disqualify at 3 n. 2. At minimum, Plaintiff is entitled to know the full and complete content of these and all improper ex parte communications between Ms. Fernandez and all Zuckerman Spaeder attorneys.

- In an informal telephone call, Defendant's counsel informed Plaintiff's counsel that his colleague on the case, Mr. Voce-Gardner, had provided pro bono legal representation to Ms. Fernandez while this case was pending. See Mot. to Disqualify at 5 n. 1. Such representation constitutes an acceptance of gifts that implicate 5 U.S.C. § 7353 (government employee may not accept "anything of value" from person seeking official action from employing entity) and numerous ethical codes applicable to Ms. Fernandez, including the Code of Ethics for Judicial Employees, the Federal Judicial Center's guidelines for law clerks, the Judiciary Conference Regulations on Gifts, and the Maryland Lawyers' Rules of Professional Conduct. Id. at 12-13. Aside from this private representation, however, neither Zuckerman Spaeder nor Ms. Fernandez has ever stated on the record whether or not the legal representation it provided her was free. Instead, Ms. Fernandez offered a vague explanation seemingly designed to, without stating so, appear that she had in fact paid for the services:

  > [E]ach time I see [Zuckerman Spaeder attorneys] personally, I pay for my own share of the meal that we are participating in so as to avoid the appearance of impropriety. This includes the time I have spent with Mr. Voce-Gardner. I paid for all known expenses during the course of his representation.

  Fernandez Decl. at 1. This statement, while referring to meals and "expenses," says nothing about whether she paid for her legal fees while being represented by the attorney who was in a case before her judge. Intentionally ambiguous statements such as this, and Zuckerman Spaeder's refusal to clarify such underlying facts, do not bolster Plaintiff's confidence that either are making full and complete disclosures about their relationship and interactions.

- The declarations of Ms. Fernandez and her co-clerk appear to concede that, despite Judge Walton's instruction that, "consistent with the policy that we had put in place when she was hired, that she would have no contact with the case," Emergency Hr'g at 3 (emphasis added), she nonetheless had some contact with this case. The clerks' declarations do not state that she had no involvement with the case; instead, they say she had "no substantive involvement." See, e.g., Fernandez Decl. at 1 (emphasis added). No one has yet explained to Plaintiff what activities of Ms. Fernandez were not thought to qualify as "substantive involvement." Plaintiff is entitled to know the full and complete extent of Ms. Fernandez's work on this case and make her own determinations as to whether that work was "substantive" or not.

- At one point during this case, Ms. Fernandez sent a text message to Mr. Voce-Gardner stating that she had "[j]ust felt with an over the phone objection in one of your cases[.]" See Order, Ex. A (the "Letter"), at 2. The two then engaged in undisclosed communications that Zuckerman Spaeder has said were "personal and unrelated." Id. Plaintiff assumes that the text was meant to read that she had "dealt" with an objection; considering that Ms. Fernandez has said that she had no "substantive involvement" in this case, Plaintiff desires to know how, exactly, Ms. Fernandez "dealt" with this dispute. Further, Plaintiff should not be required to rely on Zuckerman Spaeder's unilateral determination as what constitutes "personal and unrelated" communications, particularly given the proximity of those communications to discussion of events in this case.

- Ms. Fernandez states in her declaration that she "reminded" her co-clerk to issue an order in this case and later "inquired into the status of" that order, see Fernandez Decl. at 3 – the exact order that she told Mr. Voce-Gardner and her father that they would "owe" her for, an order that materially differed from Judge Walton's representations at a hearing the day prior. Given the circumstances, Plaintiff desires to know precisely what these reminders and inquiries entailed.

- Zuckerman Spaeder, a law firm with 85 attorneys, including 47 in Washington (where Ms. Fernandez is located), selected the Defendant's *actual attorney* – who is based in New York – to provide *pro bono* legal services to Ms. Fernandez while his case was pending before her judge. The questionable appearance of such an unusual arrangement is obvious. Plaintiff is entitled to know whether this decision on behalf of Zuckerman Spaeder was, in whole or in part, motivated by any desire to create a favorable perception of Mr. Voce-Gardner and the firm within the judge's chambers and therefore influence, even subtly or indirectly, the direction of the case.

- In the Letter, Zuckerman Spaeder stated that, at the time this case was assigned to Judge Walton, the firm "specifically understood" that Ms. Fernandez would be screened from this case. *See* Letter at 2. Given that neither Zuckerman Spaeder nor the Court ever informed Plaintiff that a law clerk of the judge was the daughter of a partner at the firm, Plaintiff has questioned how, exactly, Zuckerman Spaeder obtained this "specific" understanding and whether it resulted from *ex parte* communications, either with Ms.

Fernandez, the Court, or others. *See* Mot. to Disqualify at 4. Zuckerman Spaeder has remained silent on this issue.

- In the Motion to Disqualify, Plaintiff questioned whether Jack Fernandez, Ms. Fernandez's father and a partner at Zuckerman Spaeder, had an equitable stake in the firm and therefore a direct financial interest in this case. Mot. to Disqualify at 1. Though this point goes to the heart of Ms. Fernandez's conflict of interest, Zuckerman Spaeder has only described Mr. Fernandez as a "long-time partner." *See* Letter at 1.

The search for clarification on these matters is not a "fishing expedition," Mot. to Quash at 2 (internal citation removed) – Plaintiff is entitled to answers to her basic questions about what improper conduct Zuckerman Spaeder and the law clerk may have engaged in and assess whether such conduct may have prejudiced her case. If there is evidence of actual bias or influence, Plaintiff obviously wants to know what that evidence is. But the more proper inquiry is whether the evidence obtained in discovery minimizes or adds to the reasonable concerns that an objective layperson would have about the law clerk's conduct and any potential prejudice in this case. If discovery provides rational explanations and clear facts that would cause an objective layperson to have decreased apprehension about possible impropriety, the case for disqualification is weaker. On the other hand, if evidence from these discovery requests adds to the doubts that an objective layperson might have about impropriety in this case (even if the evidence falls short of proving any direct bias or influence, which is very difficult to do) it is fully relevant to the disqualification motion currently pending before the Court.

The need for additional discovery is underscored by Judge Walton's comments regarding the lack of evidence of impropriety and the lack of prejudice to Plaintiff. At the Emergency Hearing, Judge Walton relied exclusively upon his clerks' declarations. The gaping holes in Ms. Fernandez's declarations are discussed above.

In addition, Ms. Fernandez's co-clerk's declaration that he has "been the only law clerk that has substantively assisted Judge Walton with the handling" of this case and that he has "not received substantive assistance from either of my co-clerks" similarly raises more questions than it answers. *See* Order, Aug. 18, 2015, ECF No. 75, Ex. B. Movants argue this declaration indicates the co-clerk "did not in any way consult with Ms. Fernandez," she "had no input whatsoever in reference to the advice" he provided to the Court, "he had no contact with Ms. Fernandez about the case itself," and he "was not influenced in any way by Ms. Fernandez." Mot. to Quash at 3. As discussed above, the term "substantive assistance" has never been defined in any fashion. Moreover, case-law demonstrates that merely instructing a law clerk not to give "substantive" assistance is insufficient to cure an appearance of impropriety arising from a law clerk's conflict of interest. *See* Mot. to Disqualify & Mem. In Support Thereof, Aug. 28, 2015, ECF No. 77, at 14-17 & 23-27.

The record demonstrates that Zuckerman Spaeder, Mr. Voce-Gardner, and Jack Fernandez had a close, ongoing personal and professional relationship with Ms. Fernandez that included, with some unknown frequency, communications about this case. Plaintiff wants to know – either from her own or this Court's review – the full extent of such communications, the degree to which they were improper, and the extent to which they indicate that Plaintiff may have suffered some resulting prejudice. These facts are material to this dispute, fully discoverable under the controlling law of this jurisdiction, and necessary for any meaningful appellate review of the disqualification issue. The instant motion should therefore be denied.

## II.   Discovery from Defendant's Counsel is Permissible and Appropriate

The Movants argue Plaintiff's discovery requests "open a Pandora's Box of problems[.]" Mot. to Quash at 9. The basis for some of this remonstrance is conspicuously thin (for example,

Mr. Voce-Gardner's nonparty status, which, the Movants argue, makes discovery an "excessive burden" to him, even though he been an attorney for a party since its removal to federal court, see *id.* at 8-9, and none of the cases cited by the Movants involve discovery to a party's counsel) or wholly irrelevant (extensive argument regarding discovery issued to Ms. Fernandez, which is not a subject of this motion). While the Motion to Quash raises uncomfortable issues for the Court to address, those issues do not make the underlying facts sought any less relevant to the dispute or Plaintiff's need for them any less critical. Moreover, any difficulties, as discussed *infra*, can be addressed using basic judicial discovery tools.

Considering that the Court can in its discretion devise methods of protecting privileged or confidential materials, Plaintiff is entitled to discovery from Mr. Voce-Gardner in these circumstances. The Movants' reliance on *Coleman v. District of Columbia*, 284 F.R.D. 16 (D.D.C. 2012), does not support their position. In *Coleman*, the party propounding discovery sought, among things, information on the opposing counsel's "legal justifications" for its positions. 284 F.R.D. at 19. For other information sought, the court in *Coleman* faulted a party for propounding discovery on an attorney when it could have uncovered the information by serving discovery on non-attorneys. *Id.*

Indeed, for information that could <u>not</u> be obtained from non-attorneys, the Court actually **permitted** discovery to be issued to the attorney. 284 F.R.D. at 20 (allowing "plaintiff to submit … interrogatories to Attorney Chichester concerning her communications with Dr. Smith-Jeffries and Dr. Jackson"). If anything, *Coleman* <u>supports</u> discovery of attorneys when other parties do not provide necessary information – which, given Ms. Fernandez's refusal to comply with a subpoena (and the Movants' contentions that such discovery is unavailable

anyway), is exactly what has happened here. There is no legal bar on obtaining discovery from Mr. Voce-Gardner merely because of his status as Defendant's counsel.[6]

### III.   This Court May Limit the Requests or Order *In Camera* Review

Movants also protest that communications sought between Zuckerman Spaeder and Ms. Fernandez are subject to an attorney-client privilege. Zuckerman Spaeder's imprudent decision to have an attorney provide *pro bono* legal services to a clerk of a judge before which he had an active, ongoing case has therefore created a troublesome set of circumstances – an attorney, by taking on free representation of a law clerk (despite the ethical and legal prohibitions of the clerk accepting such representation), could shield improper *ex parte* communications with claims of attorney-client privilege. Whether or not this Court believes that has occurred here, the unusual and undesirable scenario should not be taken lightly or set the wrong example for other litigators before this Court. Plaintiff does not deny the strength of the attorney-client privilege or minimize this Court's role in protecting it, but also does not approve of the self-serving manner in which the privilege is deployed here.

First, not all of Plaintiff's discovery requests implicate privilege. A communication falls under the attorney-client privilege only if it "relates to a fact of which the attorney was informed by his client … for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding[.]" *Neuder v. Battelle Pac. Nw. Nat. Lab.*, 194 F.R.D. 289,

---

[6] Defendant also cites to *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327-28 (8th Cir. 1986), which states that "the increasing practice of taking opposing counsel's deposition" (increasing in 1986, at least) is a "negative development in the area of litigation, and one that should be employed only in limited circumstances." This statement expressly refers to the practice of taking opposing counsel's deposition "to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy." *Id.* Neither *Shelton* nor *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987), have any relevance to a disqualification dispute or the types of discovery sought here.

292 (D.D.C. 2000); *accord Evans v. Atwood,* 177 F.R.D. 1, 3 (D.D.C. 1997); *see also Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 1, 3 (D.D.C. 2004). Privileged communications from a client are therefore those that "relat[e] to a legal matter for which the client has sought legal advice." *See Western Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 6 (D.D.C. 1991) (citing *Mead Data Cent. Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977)); *see also Banks*, 222 F.R.D. at 3 (privilege "shields what the client tells an attorney in confidence for the purpose of securing legal advice or legal services"). Similarly, communications of an attorney are only privileged if they "would reveal confidential client communications." *Western Trails*, 139 F.R.D. at 8 (citing *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984); *Mead Data Central,* 566 F.2d at 254)).

Request No. 2 is specifically limited to "[a]ll non-privileged documents." *See* Mot. to Quash, Ex. A at 5. Requests Nos. 7 and 8 ask for identification of cell phones, cell phone providers, and email addresses. These do not fall under the privilege.

Other requests potentially implicate a mix of privileged and non-privileged materials. Request No. 1 seeks Mr. Voce-Gardner's communications with Ms. Fernandez during the pendency of this case. Obviously, communications from Ms. Fernandez to Mr. Voce-Gardner about this case are not subject to the attorney-client privilege, because those communications would not have been made by Ms. Fernandez for the purposes of receiving legal advice. Similarly, as sought in Requests Nos. 3 through 6, Mr. Voce-Gardner's communications with other Zuckerman Spaeder attorneys concerning Ms. Fernandez and Judge Walton[7] would not be

---

[7] To bolster their objection that the discovery is overbroad, the Movants characterize Plaintiff's discovery requests for communications concerning Judge Walton as seeking all communications about the "Court." *See* Mot. to Quash at 10. Plaintiff is interested only in communications among

privileged unless the communications, for some unlikely reason, relayed confidential information that either Ms. Fernandez or the Defendant gave for the purpose of obtaining legal advice.

Requests for communications and documents among Defendants' counsel about their personal and improper professional relationship with an actually biased law clerk, as well as any impact that relationship may have had on the handling of this case, is "'reasonably calculated to lead to the discovery of admissible evidence' in support of a pending or contemplated motion for disqualification," and – particularly given the refusal of Ms. Fernandez to comply with discovery requests – that "information is 'not obtainable from some other source that is more convenient.'" *Cobell*, 237 F. Supp. 2d at 101 n. 26 (internal citations removed). The discovery is therefore proper, even if, as Defendant protests, *see* Mot. to Quash at 11-13, irrelevant information is also caught in the subpoena's nets.[8] To the extent that privileged materials also fall under the requests, they can be handled in the same manner as typical discovery responses are – detailed privilege logs (as detailed in the Requests themselves), and, if necessary, *in camera* review.

Though Plaintiff finds suspect Zuckerman Spaeder's and Mr. Voce-Gardner's *pro bono* representation of the law clerk while this case was pending before her judge, Plaintiff has no desire to review communications and documents that solely pertain to the subject matter of that representation. Plaintiff does not wish to learn the details of Mr. Voce-Gardner's personal communications with his friends, family, and acquaintances (unless those communications shed light on his personal and professional relationship with Ms. Fernandez). Nor does Plaintiff

---

counsel about the <u>judge</u>, not the Court itself, and only for the purpose of knowing whether Defendant's counsel sought to influence the judge or his chambers.

[8] Plaintiff is amendable to reasonable further limitations on the discovery issued, should this Court believe them appropriate.

expect to receive *carte blanche* authority to peruse the entirety of Defendant's communications with counsel about this case.

In light of the Movants' resistance to disclosure so far on this issue, however, Plaintiff does not have full trust in the Movants' judgment as to what is required to be disclosed and what is not. At minimum, a detailed privilege log should be required, as set forth in paragraph 18(e) of the subpoena. *See* Mot. to Quash, Ex. A at 3-4. Given the possibility that, because of Ms. Fernandez's status as Zuckerman Spaeder's client during these proceedings, *ex parte* communications could be shrouded as attorney-client communications, a common judicial discovery tool – *in camera* review – is more appropriate here.

It is a "practice … well established in the federal courts" to require "parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection[.]" *United States v. Zolin*, 491 U.S. 554, 568 (1989). Indeed, this Court has used *in camera* submissions of documents from attorneys in disqualification matters before. *See Phillip Morris*, 312 F.Supp.2d at 34-35 ("declarations, documents, and *in camera* submissions" were sufficient for adequate appellate review). *In camera* inspection of evidence to investigate possible improper attorney conduct is permissible provided the proponent presents a *prima facie* factual foundation for such misconduct. *Coleman v. American Broad. Cos.*, *Inc.*, 106 F.R.D. 201, 203 (D.D.C. 1985). The record already developed in the case demonstrates a more than sufficient factual foundation for suspecting that misconduct may have occurred. Therefore, if the Court is concerned about possible disclosure of privileged materials, Plaintiff will accept *in camera* review of those materials and disclosure of non-privileged documents and communications.[9]

---

[9] Disclosure of non-privileged materials is necessary to avoid "problems for appellate review." *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 249-251 (D.C. Cir. 1977).

Lastly, Defendant appeals to this Court's potential concerns about prejudicial litigation conduct, suggesting Plaintiff is engaging in "scorched earth litigation,"[10] "harassment," "an adversarial trial tactic that ... prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process," and creating "a substantial burden" on the Defendant. Mot. to Quash at 10-13. None of the cases that the Movants cite in support have anything to do with discovery to investigate potential impropriety or disqualification.[11]

Moreover, in marching this parade of horribles before the Court, the Movants remain silent about their role in creating this unfortunate situation. *Plaintiff* did not ignore ethical codes and federal law in assigning an attorney to provide free legal services to a law clerk that the attorney had a case before – the Movants did. It was not Plaintiff who built an undisclosed personal and professional relationship with that clerk, a relationship that led to questionable communications and an appearance of impropriety. If Movants are worried about prejudicing

---

[10] Given the unreasonably aggressive manner in which Defendant has engaged in this litigation – to include taking nearly 20 depositions (including the Plaintiff's mother, roommates, a roommate's boyfriend, and former coworkers, and a two-day deposition of Plaintiff that Defendant has now reopened for additional questioning) in a case where liability is largely a matter of his word against the Plaintiff's – Plaintiff finds Defendant's suggestion that *she* is engaging in "scorched earth" litigation to be ironic.

[11] *Shelton* was referring to the practice of deposing opposing counsel so as "to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy," not for the purpose of investigating possible misconduct. *See supra* n. 8. The case has no applicability to discovery for disqualification purposes. Although Mr. Voce-Gardner's personal counsel has asserted that, pursuant to *Shelton*, an Eighth Circuit case, "[a]ny discovery from opposing counsel in a litigation is objectionable and requires justification before it should be permitted," *Shelton* does not stand for such a broad right of noncompliance. *See* Mot. to Quash, Ex. D at 2. Nor does the case contain "standards" that must be met before a subpoena is issued. *Id.*

their client with thorny collateral issues in this litigation, it is respectfully suggested that they examine the improvident choices that led to this problem in the first place.

## **CONCLUSION**

The discovery Plaintiff seeks is reasonably calculated to lead to the discovery of admissible evidence about whether any improprieties occurred in the handling of this matter and whether she has suffered any resulting prejudice. Discovery is also needed to create an adequate record for appellate review. Any such burden on those served with discovery, which is minimal at best, is a result of the actions and decisions of the Movants themselves and can be cured with normal discovery remedies. This Court should therefore deny the motion to quash and for a protective order, declare that the discovery sought is permissible, and, if it believes appropriate, set reasonable limitations on discovery or arrange for *in camera* review of potentially privileged materials.[12]

Dated:  September 28, 2015                    Respectfully submitted,

/s/Steven J. Kelly_____
Steven J. Kelly (DC Bar No. 1021534)
Andrew G. Slutkin (DC Bar No. 433818)
Christopher Mincher (admitted *pro hac vice*)
SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Tel:  (410) 385-2225
Fax: (410) 547-2432
skelly@mdattorney.com

---

[12] The Movants object to the subpoena on the additional grounds that Mr. Voce-Gardner lives in New York and the documents requested were to be produced at Plaintiff's counsel's office in Washington, a distance that violates Fed. R. Civ. P. 45(c)(2). Plaintiff notes that Mr. Voce-Gardner's law firm is in Washington, this case is in Washington, and he has traveled to Washington repeatedly for this case. Nonetheless, Plaintiff will, should the Court decide that discovery is permissible, reissue a subpoena setting a new date for production of documents at Plaintiff's counsel's New York office.

aslutkin@mdattorney.com
cmincher@mdattorney.com

*Attorneys for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true and correct copies of the foregoing MEMORANDUM IN OPPOSITION TO MOTION TO QUASH AND PROPOSED ORDER were electronically filed with the Clerk of the Court by using the CM/ECF system, which will furnish electronic copies to all counsel.

Dated at Baltimore, Maryland, this 28th day of September 2015.

/s/ Steven J. Kelly_____

Steven   J.   Kelly   (DC   Bar   No.   1021534)

IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**Jane Doe**,

      Plaintiff;

v.

**Alfredo Simon Cabrera**,

      Defendant.

Case No. CV 14-1005 RJW

## <u>ORDER</u>

UPON CONSIDERATION of Defendant's Motion to Quash, and any opposition thereto, and upon good cause shown, it is on this _____ day of _____, 2015, by the U.S. District Court for the District of Columbia,

ORDERED that Defendant's Motion to Quash is DENIED.

_____

The Hon. Ellen S. Huvelle