**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1005 (RBW) |
| | ) | |
| ALFREDO SIMON CABRERA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

This civil matter is currently before the Court on the plaintiff's Motion to Disqualify &

Memorandum in Support Thereof ("Mot."), which seeks to have this Court recuse itself from

further presiding over this matter and vacate several of its recent discovery rulings, id. at 28-29;

see also August 18, 2015 Transcript of Emergency Teleconference ("Aug. 18, 2015 Tr.") at 6:13-

23, ECF No. 76; August 18, 2015 Order ("Aug. 18, 2015 Order") at 1, ECF No. 75.  The motion

is primarily based on comments made by one of the Court's law clerks ("Law Clerk I"), who

insinuated in jest to members of defense counsel's law firm, including an attorney who has made

an appearance in this matter on behalf of the defendant, that she influenced the Court's

decisionmaking process with respect to certain discovery rulings in this case.  To be sure, the

Court does not condone these comments even though they were made in jest.  There was no

factual basis for them, and they should not have been made.  For the reasons that follow,[1]

however, the ill-advised conduct by the law clerk provides no basis for the Court to recuse itself.

---

[1]  In addition to the motion, the Court also considered the following submissions in rendering its decision: (1) the Defendant's Memorandum in Opposition to [the] Plaintiff's Motion to Disqualify the Court ("Opp'n"); and (2) the Plaintiff's Reply in Further Support of Her Motion to Disqualify ("Reply").

## I.   BACKGROUND

### A.  The Court's Law Clerks

Law Clerk I began serving as a law clerk for the Court in November 2013.[2]  Aug. 18,

2015 Order, Exhibit ("Ex.") C (Declaration of Marina Fernandez ("Decl. I")) ¶ 2.  From "the

onset of [her] clerkship," the Court "instructed" her that she "was conflicted from participating in

any cases being litigated by the law firm of Zuckerman Spaeder [LLP]" ("Zuckerman Spaeder")

because her father was a partner at the firm.  Id.  In accordance with that instruction, the Court

told Law Clerk I "to have no substantive involvement" with this case when it was randomly

assigned to this Court, id. ¶ 5, as Zuckerman Spaeder had been retained by the defendant for his

defense.  The Court tasked Law Clerk II to assist on the case,[3] see Aug. 18, 2015 Order, Ex. B

(Declaration of Hugham Chan ("Decl. II")) ¶ 2, and Law Clerk I has "never" provided the Court

"with any substantive input" regarding this case, Aug. 18, 2015 Order, Ex. C (Decl. I) ¶¶ 17-18.

During Law Clerk I's tenure in the Court's chambers, she acquired the services of

Zuckerman Spaeder to represent her in a "personal legal matter."  Id. ¶ 3.  The firm's

representation of her "lasted from January 2015 through February 2015 with some follow-up

discussion in May 2015."[4]  Id. ¶ 3 n.1.  Associate Ben Voce-Gardner ("the associate") was part

of Law Clerk I's legal team in her personal matter.  See id. ¶ 3; see also Aug. 18, 2015 Order,

Ex. A (August 11, 2015 Letter from Fetterolf ("Aug. 11, 2015 Ltr.")) at 2.  Through the

---

[2]  Law Clerk I's last day in chambers was September 4, 2015.

[3]  After the Court was assigned this case, there was turnover in the "Law Clerk II" position.  For purposes of
resolving this motion, that turnover is irrelevant because no clerks in this position have ever had any conflicts of
interest that prevented them from providing independent legal assistance to the Court in this case.

[4]  According to the plaintiff, the legal representation could be considered a "substantial gift" from Zuckerman
Spaeder to Law Clerk I because it was pro bono.  See Reply at 2.  For purposes of this motion, the Court assumes
that this is true.

associate's representation of Law Clerk I on her personal matter, the two became friends and periodically sent text messages to each other, even after the legal relationship concluded.  <u>See</u> Aug. 18, 2015 Order, Ex. C (Decl. I) ¶ 3; Aug. 18, 2015 Order, Ex. A (Aug. 11, 2015 Ltr.) at 2. That associate has also appeared on behalf of the defendant in this case.  <u>E.g.</u>, Appearance of Counsel, ECF No. 9.  The Court, however, was never aware that this associate provided legal services for Law Clerk I, until the events that gave rise to this motion occurred.

### B.   The Court's Discovery-Related Rulings And Law Clerk I's Communications With Members Of Defense Counsel's Firm

#### 1.   Telephonic Hearing

On June 29, 2015, the parties "contacted" the Court, seeking to "resolve a dispute that had arisen during a deposition" of a third party.  Mot. at 5.  Law Clerk I "answered the phone and stated that [Law Clerk II] was not available."  <u>Id.</u>; <u>see also</u> Aug. 18, 2015 Order, Ex. C (Decl. I) ¶ 7.  The parties outlined the discovery dispute to Law Clerk I, and she relayed that information to the Court, while reminding the Court that she was screened from involvement in the case and could not assist the Court any further.  <u>See</u> Aug. 18, 2015 Order, Ex. C (Decl. I) ¶ 8. The discovery dispute concerned a third-party deponent, who objected to the presence of a defense expert during her deposition.[5]  <u>See id.</u>; <u>see also</u> Opp'n Ex. B (Deposition Transcript of Jennifer Anne Graebe, R.N. ("Graebe Dep. Tr.")) at 6:5-7:1.  When Law Clerk II became available, which was almost immediately after the dispute was presented to the Court, the Court only sought his substantive assistance in handling the dispute.  The Court subsequently determined that there was no basis for the objection, and in light of the fact that neither party

---

[5] This was not a "complicated discovery issue."  Reply at 12.

objected to the presence of the defendant's expert at the deposition,[6] the Court permitted the deposition to proceed and allowed for briefing from any party, if case authority existed contrary to the Court's ruling.[7]  Later during the day after the discovery dispute had been resolved, Law Clerk I sent a text message to the associate, indicating that she had "[dealt] with an over[-]the[-]phone objection in one of [his] cases," and asked whether he was in Washington, D.C. for the deposition.  Mot. at 6 (quoting text message sent from Law Clerk I to the associate).  The associate was apparently unaware that a deposition was being conducted in this case on that day.  See Aug. 18, 2015 Order, Ex. A (Aug. 11, 2015 Ltr.) at 2.

### 2.  In-Court Motions Hearing

On August 5, 2015, the Court heard oral arguments concerning various discovery-related motions.  See, e.g., August 5, 2015 Transcript of Motions Hearing ("Aug. 5, 2015 Tr."), ECF No. 74.  At the conclusion of that hearing, the Court orally granted the defendant's motion to require the plaintiff to submit to an independent medical examination, see generally August 7, 2015 Order (providing legal bases for the Court's oral ruling), ECF No. 73; see also August 5, 2015 Order ("Aug. 5, 2015 Order") at 1, ECF No. 71, as well as the defendant's motion for the disclosure of the plaintiff's grand jury testimony,[8] see generally Doe v. Cabrera, _ F. Supp. 3d _, 2015 WL 5190437 (D.D.C. 2015) (providing legal bases for the Court's oral ruling); see also August 6, 2015 Order ("Aug. 6, 2015 Order") at 1, ECF No. 72.  Law Clerk I and Law Clerk II

---

[6]  The plaintiff's characterization of the Court's ruling as "favorable" to the defendant, Mot. at 6, is belied by her consent to the presence of the defendant's expert at the deposition, see Opp'n, Ex. B (Graebe Dep. Tr.) at 6:21-7:1 ("Counsel for the plaintiff and the defendant waived the rule on witnesses by consent.").

[7]  Neither the third party nor the plaintiff ever filed a submission challenging the Court's ruling.

[8]  Although the Court did not rule on a third discovery motion during the August 5, 2015 hearing, the Court entertained arguments regarding the plaintiff's motion to strike certain of the defendant's rebuttal expert reports and provided its initial thoughts on the motion.  See Aug. 5, 2015 Tr. at 16:4-25:24.  The Court subsequently issued a detailed written Order, consistent with what it had already expressed to the parties.  See September 21, 2015 Order (detailing reasons for denying the motion), ECF No. 85.

were both present in the courtroom during the hearing.  See Aug. 18, 2015 Order, Ex. C (Decl. I) ¶¶ 10-12.  Later that day, as well the day after the hearing, Law Clerk I reminded Law Clerk II that he needed to help the Court memorialize the Court's oral rulings in paper orders, as the Court had limited availability during the remainder of that week and the following week.  See id. ¶¶ 13-14.  The Court memorialized its rulings on August 5, 2015, see Aug. 5, 2015 Order at 1 (granting motion for independent medical examination), and on August 6, 2015 (granting motion for disclosure of grand jury testimony), see Aug. 6, 2015 Order at 1.

After the Court issued its August 6, 2015 Order, that same day and unbeknownst to the Court and Law Clerk II, Law Clerk I sent text messages to the associate stating that he was going to "owe" her an alcoholic beverage.  See Aug. 18, 2015 Order, Ex. C (Decl. I) ¶¶ 14-15; see also Aug. 18, 2015 Order, Ex. A (Aug. 11, 2015 Ltr.) at 1.  More specifically, Law Clerk I insinuated that she had contributed to the Court's issuance of its August 6, 2015 Order in the defendant's favor.  See Aug. 18, 2015 Order, Ex. A (Aug. 11, 2015 Ltr.) at 1 & n.2 (Law Clerk I sending text message to associate that "as of 3:34 [p.m.] today," when the Court issued its order, the associate "owe[d] [her] a beer [(or wine)!]").  Law Clerk I also sent a similarly-worded text message to her father.  Id. at 1 n.1.  Law Clerk I has represented that these text messages were made in jest, as she was "pregnant" and was therefore "not drink[ing]" alcohol.  Aug. 18, 2015 Order, Ex. C (Decl. I) ¶ 14.  Nevertheless, realizing the impropriety of the text messages, she informed the Court about them that same night.  See, e.g., id. ¶¶ 15-16.  The following day, August 7, 2015, the Court contacted the parties to schedule an emergency conference to disclose what Law Clerk I had told the Court.

During the emergency conference, which occurred in the courtroom, telephonically, and on the record, the plaintiff orally moved for the Court to, inter alia, recuse itself from this case

and to vacate its discovery rulings from the August 5, 2015 motions hearing.  See, e.g., Aug. 18, 2015 Order at 1.  The Court denied the motion without prejudice, but allowed the parties to brief the issue of recusal.  See id.  The plaintiff has renewed her motion in written filings.

## II.   LEGAL STANDARD

"[B]ecause judges are presumed to be impartial, 'the Court must begin its analysis of the allegations supporting a request [for recusal] with a presumption against disqualification.'"  SEC v. Bilzerian, 729 F. Supp. 2d 19, 22 (D.D.C. 2010) (second alteration in original) (ellipses omitted) (quoting Cobell v. Norton, 237 F. Supp. 2d 71, 78 (D.D.C. 2003)); accord United States v. Ali, _ F.3d_, _, 2015 WL 5011433, at *4 (8th Cir. 2015) ("[A] party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." (quoting Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003))).  Under 28 U.S.C. § 455(a) (2012), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The party moving for disqualification of the judge must make "a showing of an appearance of bias or prejudice sufficient to permit the average citizen reasonably to question a judge's impartiality is all that must be demonstrated to compel recusal."  United States v. Bostick, 791 F.3d 127, 155 (D.C. Cir. 2015) (quoting United States v. Heldt, 668 F.2d 1238, 1271 (D.C. Cir. 1981)); see also SEC v. Loving Spirit Found., Inc., 392 F.3d 486, 493 (D.C. Cir. 2004) ("Recusal is required when 'a reasonable and informed observer would question the judge's impartiality.'" (quoting United States v. Microsoft Corp., 253 F.3d 34, 114 (D.C. Cir. 2001), cert. denied, 534 U.S. 952 (2001))); In re Barry, 946 F.2d 913, 914 (D.C. Cir. 1991) ("There is, of course, no doubt (1) that one determines a [28 U.S.C. § 455] violation completely without regard to whether there exist adequate independent grounds for the judge's rulings, (2)

that the appearance-of-partiality test is an objective one (whether an informed observer would

reasonably question the judge's impartiality), and (3) that application of the test is wholly

independent of whether the judge intends to act with bias or prejudice."); accord In re Sherwin-

Williams Co., 607 F.3d 474, 477-78 (7th Cir. 2010) ("That an unreasonable person, focusing on

only one aspect of the story, might perceive a risk of bias is irrelevant. . . .  In addition to being

well-informed about the surrounding facts and circumstances, for purposes of our analysis, a

reasonable person is a 'thoughtful observer rather than a hypersensitive or unduly suspicious

person.'" (ellipses and citation omitted) (quoting In re Mason, 916 F.2d 384, 386 (7th Cir.

1990))); United States v. Holland, 519 F.3d 909, 913 (9th Cir. 2008) (similar); Sensley v.

Albritton, 385 F.3d 591, 599 (5th Cir. 2004) (courts must consider how the facts would appear to

a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and

suspicious person" (quoting United States v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995))); In re

Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988) ("[J]udges determine

appearance of impropriety—not by considering what a straw poll of the only partly informed

man-in-the-street would show—but by examining the record facts and the law, and then deciding

whether a reasonable person knowing and understanding all the relevant facts would recuse the

judge."); United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998) (similar).

　　　　In applying this objective standard, the Court need not accept every fact alleged by the

moving party as true.  Heldt, 668 F.2d at 1271 ("[T]here is no support for the position that the

facts alleged in the papers submitted by a person relying on section 455 must in every case be

accepted as true . . . .  The very fact that [S]ection 455 is addressed directly to the judge makes it

evident that some evaluation by the court of the facts giving rise to the motion is anticipated in

most cases."); see also In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001) ("[T]he grounds asserted

in a recusal motion must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality."); Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987) (a court should "not recuse [itself] on unsupported, irrational, or highly tenuous speculation"); Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994) ("[A] judge need not accept as true the motion's factual allegations, but may contradict them with facts drawn from his own personal knowledge." (citing United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985))), aff'd, 107 F.3d 1026 (3d Cir. 1997); United States v. Sciarra, 851 F.2d 621, 625 n.12 (3d Cir. 1988); In re San Juan Dupont Plaza Hotel Fire Litig., 129 F.R.D. 409, 413-14 (D.P.R. 1989) ("Section 455 must be narrowly construed and the allegations of counsel must pass the litmus test of good faith. . . .  [A] Section 455 disqualification should not be allowed on the bases of rumors, innuendos, unsupported allegations, or claims that like blind moths, flutter aimlessly to oblivion when placed under the harsh light of the full facts." (citations omitted)).  Thus, "except in the most unusual circumstances . . . judges [are trusted] to put their personal feelings aside, [and] recusal must be limited to truly extraordinary cases where . . . the judge's views have become 'so extreme as to display clear inability to render fair judgment.'"  Cobell v. Kempthorne, 455 F.3d 317, 332 (D.C. Cir. 2006) (quoting Liteky v. United States, 510 U.S. 540, 551 (1994)); see also Ryan v. FBI, _ F. Supp. 3d _, _, 2015 WL 4965913, at *2 (D.D.C. 2015) ("A party moving for recusal pursuant to Section 455(a) must demonstrate the court's reliance on an extrajudicial source that creates an appearance of partiality or, in rare cases, where no extrajudicial source is involved, a deep-seated favoritism or antagonism that would make fair judgment impossible." (ellipses omitted) (quoting Am. Ctr. for Civil Justice v. Ambush, 680 F. Supp. 2d 21, 24-25 (D.D.C. 2010))).  As such, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it

is." In re Drexel Burnham Lambert, 861 F.2d at 1312 (citing In re Union Leader Corp., 292 F.2d

381, 391 (1st Cir.), cert. denied, 368 U.S. 927 (1961)); Cobell v. Norton, 237 F. Supp. 2d at 102

(similar).

"[T]he pall that the conduct of a law clerk may cast over the integrity of his [or her]

judge, is covered by the appearance of impropriety notion inherent in [S]ection 455(a)." In re

San Juan, 129 F.R.D. at 412 n.5.  "Nonetheless, whatever appropriate ethical foothold law clerks

must obtain in the employ of the judiciary; the judge cannot be made an easy victim of the

clerk's follies or perceived faults." Id.  "Both bench and bar recognize . . . that judges, not law

clerks, make the decisions." In re Allied-Signal Inc., 891 F.2d 967, 971 (1st Cir. 1989).  "If a

clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified."

Hunt v. Am. Bank & Trust Co. of Baton Rouge, 783 F.2d 1011, 1016 (11th Cir. 1986); see also

In re Corrugated Container Antitrust Litig., 614 F.2d 958, 968 (5th Cir. 1980) ("[W]e think it

fitting to restrict those situations in which the bias of a law clerk will work to disqualify the

clerk's employer.  Clearly, a law clerk's views cannot be attributed to the judge for whom the

clerk works."), cert. denied sub nom. 449 U.S. 888 (1980).

Finally, a motion to recuse under 28 U.S.C. § 455(a) is committed to the discretion of the

Court and denial will be reversed only upon a showing of abuse of discretion. E.g., Bostick, 791

F.3d at 155 ("We review a district court judge's refusal to recuse for abuse of discretion.");

accord In re United States, 666 F.2d 690, 695 (1st Cir. 1981) ("[Because] in many cases

reasonable deciders may disagree, the district judge is allowed a range of discretion.").  But if

there is any doubt as to "whether . . . disqualification is required," the Court "should resolve the

doubt in favor of disqualification." Parker v. Connors Steel Co., 855 F.2d 1510, 1524-25 (11th

Cir. 1988) (citing cases).

9

# III.   ANALYSIS

## A.  Imputation Of Actual Bias

The plaintiff[9] contends that Law Clerk I had an "actual bias in favor of Zuckerman Spaeder" and the bias must be "imputed to the [Court]." Mot. at 14. Her contention is supported by neither the facts nor case authority. See, e.g., In re Corrugated Container, 614 F.2d at 968 ("restrict[ing] those situations in which the bias of a law clerk will work to disqualify the clerk's employer" and recognizing that "a law clerk's views cannot be attributed to the judge for whom the clerk works").

The plaintiff suggests that Law Clerk I "demonstrated [her] actual bias" when she: (1) "slant[ed] or skew[ed] her representation of the [June 29, 2015 telephonic discovery] dispute to the [Court]," [10] Mot. at 16; (2) attended the August 5, 2015 motions hearing, so that she could observe the hearing, discuss her observations behind closed doors amongst those in the Court's chambers, and relay any "concerns" expressed in chambers to members of Zuckerman Spaeder, id. at 16-17; and (3) sent text messages in August 2015 to members of Zuckerman Spaeder "indicat[ing] that she was actively attempting to assist in . . . [the firm's] success," [11] id. at 11.

---

[9]  This motion does not concern the conduct of the parties. When the Court alludes to the "plaintiff" as the moving party, that reference should be construed as the plaintiff's counsel where appropriate.

[10]  According to the plaintiff, "it is not unrealistic to assume" that "she contacted [the associate]" later that day "to imply" that she did so to benefit Zuckerman Spaeder. Mot. at 16.

[11]  The plaintiff accuses Law Clerk I of committing several ethical violations, including impermissibly acquiring confidential information about the case and leaking that information through text messages to members of Zuckerman Spaeder. See Mot. at 17-18. Even accepting these accusations as true, the Court would still find that no reasonable observer, informed about all the circumstances surrounding how the Court handled this case and managed its law clerks, see infra, would view the Court as being partial to Zuckerman Spaeder and the defendant. Law Clerk I has not swayed the outcome of any motion the Court has decided in this case. If the plaintiff's accusations were true, they would be grounds for the Court to terminate Law Clerk I for cause, but not for the Court to recuse itself. See Prior v. Innovative Commc'ns Corp., Nos. 1999-CV-232, 1999-CV-236, 2000 WL 1670915, at *1, *2 (D.V.I. Aug. 16, 2000) (court recused itself because of a personal relationship with plaintiff, but not because there was an allegation that court's "law clerks communicated confidential information" with third parties—that was "irrelevant to the issue of [court's] impartiality"—as court's "law clerks are responsible for their own actions"); In re San Juan, 129 F.R.D. at 412 n.5 ("[T]he [Court] cannot be made an easy victim of the [law] clerk's follies or

(continued . . . )

But these suggestions of bias are precisely the "innuendos" that the Court will not rely on in resolving the plaintiff's motion. In re San Juan, 129 F.R.D. at 414; see also Heldt, 668 F.2d at 1271; Bartel Dental Books Co. v. Schultz, 786 F.2d 486, 490 (2d Cir. 1986) ("The conclusion that a law clerk 'had to be' influenced by the actions of a co-worker is compelled by neither logic nor the record before us."). They are speculative and unsupported by any facts, at best, and wildly inflammatory, at worst, i.e., they go so far as to attack Law Clerk I of being untruthful in her declaration.[12]  First, with respect to the June 29, 2015 telephonic discovery conference, Law Clerk I presented the parties' discovery dispute consistent with the Court's and Law Clerk II's recollection of the dispute.[13]  Compare, e.g., Aug. 18, 2015 Order, Ex. C (Decl. I) ¶ 8 ("To the best of my recollection, the issue presented a third[-]party objection[] and was unopposed by the plaintiff's counsel."), with Opp'n, Ex. B (Graebe Dep. Tr.) at 6:5-7:1 (counsel for third party

---

( . . . continued)
perceived faults."). For these reasons, discovery into Law Clerk I's potential ethical violations would seem inappropriate. See Reply at 3 (seeking to uncover other ethical violations); see also infra.

[12] Despite whatever suspicions the plaintiff may harbor about the declarations of the Court's law clerks, see Mot. at 18 & n.11 (characterizing Law Clerk I's declaration as a "self-serving affidavit" that is an "attempt to minimize misconduct," rather than "a genuine explanation of her motivation" for her text messages in August 2015), the Court exercises its discretion to credit those declarations, see, e.g., Hamid v. Price Waterhouse, 51 F.3d 1411, 1417 (9th Cir. 1995) (affirming district court's recusal decision where it "accepted the truth of [the law clerk's] representation[s]"); McCulloch v. Hartford Life & Accident Ins. Co., No. 01-CV-1115(AHN), 2005 WL 3144656, at *7 (D. Conn. Nov. 23, 2005) ("[A]s the law clerk attests, he had no substantive discussions with the Court on the merits of the rulings or this litigation after he left his clerkship."); Baugh v. City of Milwaukee, 829 F. Supp. 274, 276 (E.D. Wis. 1993) (relying on law clerk's word); Jewelry Repair Enters., Inc. v. E & S Assocs., Inc., No. 95-CV-7300, 1996 WL 311462, at *3-4, *6 (E.D. Pa. June 4, 1996) (relying on law clerk testimony in deciding recusal motion).

Further, in support of her motion, the plaintiff retained Keith Swisher, a purported expert in legal and judicial ethics. See Mot., Ex. C (Preliminary Expert Affidavit of Keith Swisher ("Swisher Aff.")) ¶¶ 1-8. The plaintiff retained Mr. Swisher "to opine on the judicial ethics and recusal rules applicable to the circumstances recounted below, including the communications and screening of [Law Clerk I]." Id. ¶ 9. The Court finds Mr. Swisher's purported expert testimony unnecessary and unconvincing. See In re Initial Pub. Offering Sec. Litig., 174 F. Supp. 2d 61, 62-70 (S.D.N.Y. 2001) (denying motion for expert testimony on subject of recusal); United States v. Everman, 660 F. Supp. 775, 781 (S.D.N.Y. 1987) (similar).

[13] Whatever alleged "slant[ing] or skew[ing]" of the issue there may have been, Mot. at 16—and to be clear, there was none—was surely undone when the parties had the opportunity to directly present the dispute to the Court when it made itself available on the teleconference.

noting that she "objected" to the presence of "one of the experts for the defense" and that "[c]ounsel for the plaintiff and the defendant waived the rule on witnesses by consent"). Second, Law Clerk I's attendance at the motions hearing was not part of a larger ruse to assist Zuckerman Spaeder in this case,[14] see Aug. 18, 2015 Order, Ex. C (Decl. I) ¶¶ 10-12, as she communicated none of her observations or insights, if any, to either Law Clerk II or the Court after the hearing concluded.[15] Third, although her August 2015 text messages may have implied that she had a personal bias[16] for Zuckerman Spaeder and the defendant, that possible bias never had an opportunity to impact the case, as the Court screened her from working on it. See, e.g., In re Corrugated Container, 614 F.2d at 968.

The plaintiff directs the Court's attention to two cases where courts have imputed a law clerk's bias to a court: Vaska v. State, 955 P.2d 943 (Alaska 1998), and Hall v. Small Business Administration, 695 F.2d 175 (5th Cir. 1983). See Mot. at 11-14. Each of these cases, however, are easily distinguishable. In Vaska, the law clerk substantively assisted the trial court on a case involving the local district attorney's office, 955 P.2d at 944-45, and "had sexual relations" with

---

[14] This is not remarkable. As is the case for many courts throughout the country, the Court's law clerks are free to attend hearings in cases that they are not working on, and they often do.

[15] Law Clerk I's "prompt[ing] of [Law Clerk II]" to assist the Court in memorializing its oral rulings from the August 5, 2015 motions hearing, Mot. at 17, in no way required her to convey any impressions she may have had after observing the hearing. See Aug. 18, 2015 Order, Ex. C (Decl. I) ¶¶ 13-14; see also Hunt, 783 F.2d at 1016 ("In this case, the record indicates that neither of the two clerks in question worked on the case or even talked with the judge about it to any significant extent. Although the case was assigned for a time to one of the clerks, the judge characterized this assignment as 'ministerial only,' and removed the file from the clerk once the clerk had accepted a job with the defendants' firm.").

[16] Having spent almost two years working with Law Clerk I, and despite whatever personal ties she may have to Zuckerman Spaeder, the Court cannot accept the proposition that she was actually biased in favor of the firm. See Byrne v. Nezhat, 261 F.3d 1075, 1102 (11th Cir. 2001) ("[W]e note that a law clerk has no incentive to violate a court's instruction that he isolate himself from the case and thereby subject himself to discharge. . . . [O]nly a foolhardy law clerk would purposely circumvent the court's instruction by attempting to pass on information about a case."), abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639 (2008); Bishop v. Albertson's, Inc., 806 F. Supp. 897, 902 (E.D. Wash. 1992) ("[L]aw clerks do not favor parties or classes of parties. One who did would rapidly lose credibility and the confidence of the Court."). But for purposes of this motion, the Court will accept the claim of bias as true.

another attorney in the district attorney's office, id. at 944.  Based on these facts, the Court found

that "because of [the clerk's] personal relationship with one of the . . . attorneys [in the district

attorney's office], [the clerk] may have had an actual bias in favor" of that office.  Id. at 946.

Moreover, the Court also found that there the clerk created a "reasonable suspicion . . . that she

was an active partisan who was willing to break the rules to benefit the [district attorney's

office]," id. at 946, because the law clerk: (1) sent "a copy of a confidential bench

memorandum" to the district attorney on the case; and (2) "attached a sticky note to the

memorandum" indicating that she was "battl[ing]" on behalf of the district attorney's office, id.

at 944.  No significant parallels can be drawn between the law clerk's incredible conduct in

Vaska and Law Clerk I's actions here.

  In Hall, the plaintiff filed a class action against the defendant employer, alleging that she

and other female employees were discriminated against in violation of Title VII.  695 F.2d at

175.  The case was tried by a magistrate judge, whose sole law clerk previously worked for the

defendant employer and had resigned because of allegations of discrimination.  Id. at 176, 178.

The law clerk was also a member of the plaintiff's certified class, id. at 177, and had accepted

employment with plaintiff's counsel, id. at 176.  Despite the law clerk's ties to the case, she

participated in pretrial proceedings, attended the trial and took notes, and worked on the final

opinion in the case right before she left her clerkship.  Id. at 178.  Under these circumstances, the

magistrate judge's failure to disqualify himself was error, id. at 175, because regardless of

"[w]hether or not the law clerk actually affected the magistrate's decision, her continuing

participation with the magistrate in a case in which her future employers were counsel gave rise

to an appearance of partiality," id. at 179.

Hall is not analogous to this case.  Although the plaintiff is correct that Hall does not

"expressly [hold] that an actual bias is imputed to [the Court only] where the law clerk

[substantively] participates in [a conflicted] matter," Mot. at 13 n.9, there is no language in Hall,

let alone any other case cited by the plaintiff, that compels imputation of a perceived law clerk

bias to the Court in this case, where Law Clerk I has not substantively participated in the case.

Hall "does not create a mandatory rule requiring the recusal of the judge whenever a law clerk

employed by that judge has a real or possible conflict of interest."  Baugh v. City of Milwaukee,

829 F. Supp. 274, 275 (E.D. Wis. 1993).  Rather, consistent with Hall, this Court "had [Law

Clerk II] take control of th[is] case," which did not "giv[e] rise to [a] conflict."  Id.; see also id.

(where law clerk has conflict, "[t]he practice is not to have the judge recuse himself").

     One common theme emerges from Vaska and Hall—any bias of a law clerk is imputed to

the Court only when the clerk substantively participates in a case where that bias can potentially

manifest itself.[17]  See Mathis v. Huff & Puff Trucking, Inc., 787 F.3d 1297, 1311 (10th Cir.

2015) (citing Hall, 695 F.2d at 180, for the proposition that "[i]f a law clerk continues to work on

the case in which his or her impartiality might reasonably be questioned, . . . the clerk's actual or

potential conflict may be imputed to the judge." (emphasis added)); Milgard Tempering, Inc. v.

Selas Corp. of Am., 902 F.2d 703, 714 (9th Cir. 1990) (same); see also Hamid v. Price

Waterhouse, 51 F.3d 1411, 1416 (9th Cir. 1995) ("Even if the judge has no reason to recuse

herself based upon her own circumstances, a law clerk's relationships might cause the

impartiality of decisions from that judge's chambers in which the clerk participates reasonably to

be questioned." (emphasis added)).  Otherwise, any alleged law clerk bias cannot be "advanced,"

---

[17]  To the extent the plaintiff relies on Parker, that case also lends her no support.  There, the law clerk had a "close familial relationship" with a "senior partner" representing some of the litigants.  855 F.2d at 1524.  But the law clerk substantively participated in the case.  See id. (judge noted that law clerk assisted in the preparation of the opinion on appeal and even "held a hearing in [the judge's] absence").  There are no similarities to be drawn here.

Mot. at 18, because "a law clerk's views cannot be attributed to the judge for whom the clerk works," In re Corrugated Container, 614 F.2d at 968.  No case authority compels the Court to impute Law Clerk I's alleged bias for Zuckerman Spaeder and the defendant to itself under the circumstances here.

### B.  Appearance of Partiality

No well-informed and reasonable observer could call into question the Court's impartiality under the totality of the circumstances.  The Court screened Law Clerk I from this case after determining that there was a conflict, and thus, she has never provided any "substantive input" about this case to either the Court or Law Clerk II.  Aug. 18, 2015 Order, Ex. C (Decl. I) ¶¶ 1, 2, 6, 17-18; see also Aug.18, 2015 Order, Ex. B (Decl. II) ¶¶ 4-5.  Incredibly, the plaintiff sees ambiguity where none exists, as she contends that she is "unclear" as to what the term "substantive input" means in Law Clerk I's declaration.  Mot. at 15.  Let the plaintiff no longer wallow in uncertainty: in this case, Law Clerk I has neither conducted legal research on any of the parties' motions nor did she provide any advice to the Court or Law Clerk II as to the merits of any motion or any other matter concerning this case.  In other words, when ruling on all motions in this case, the Court has never itself, or through Law Clerk II, relied on any contribution from Law Clerk I.  She did no work on the case, and she did not contribute any substantive input about any aspect of the case.[18]  See Mathis, 787 F.3d at 1312, 1313 (recusal unwarranted where conflicted law clerk "did not have . . . substantive participation in the case," i.e., "the clerk took no part in drafting or researching," and only performed a 'ministerial and

---

[18]  The plaintiff regards the Court's screen of Law Clerk I from this matter as inadequate because "[h]ad she truly been screened from the case, there would have been no reason for her to have any communication with [Law Clerk II] about this case and there is simply no 'innocent' explanation for [Law Clerk I] taking any action in a case" where she was screened.  Mot. at 23.  But the case authority does not hold that the Court's screen is deficient where Law Clerk I engaged in ministerial tasks associated with the case.  Indeed, just the opposite is the case.

observational role'"); In re Kempthorne, 449 F.3d 1265, 1270 (D.C. Cir. 2006) ("'[C]onflicted

advisors who participate or influence a judge require[] the judge's disqualification' under [28

U.S.C.] § 455(a), 'as distinct from an expert or other assistant to the judge who is disinterested

and non-conflicted.'" (second alteration in original) (emphasis added) (quoting In re Kensington

Int'l Ltd., 368 F.3d 289, 311 (3d Cir. 2004))); Hamid, 51 F.3d at 1416 (no recusal because

Court's decision could not have been "tainted" by conflicted law clerk who "did not work on the

case," i.e., "gave no advice and did no research"); Milgard Tempering, 902 F.2d at 714 ("[W]hen

the judge promptly removes the [law] clerk from the case, and avoids further communication

with that clerk about the litigation, the appearance of judicial propriety is preserved."); Hunt, 783

F.2d at 1016 ("In this case, the record indicates that neither of the two clerks in question worked

on the case or even talked with the judge about it to any significant extent.")[19]; Bartel, 786 F.2d

at 490 (court's recusal generally not required where conflicted law clerk is not working on the

case); In re Horne, No. 13-CV-258-CB-B, 2014 WL 1370151, at *4-5 (S.D. Ala. Apr. 8, 2014)

("The mere existence of a relationship between a law clerk and a party does not disqualify the

judge; rather, disqualification may be called for only if the law clerk works on the case, i.e.,

makes a substantive contribution to the outcome of the case. . . .  A law clerk's relationship to a

party does not create an appearance of impropriety, as long as the law clerk performs no

substantive work on the case. . . . [N]o appearance of impropriety arises from [court personnel's]

relationship to a party . . . [where the court's personnel's] function is administrative, not

substantive."); Keyhani v. Chance, No. 86-CV-7520, 1988 WL 109100, at *2 (E.D. Pa. Oct. 18,

---

[19]  Hunt even suggests that some insignificant discussion between a law clerk and the Court about a case where the
clerk is screened is permissible.

1988) (court did not recuse itself where "notes" from conflicted law clerk did not "form[] the basis of any of [the Court's] substantive decisions or rulings in [the] matter").

The plaintiff argues that the Court's screening of Law Clerk I was insufficient because she in fact did participate in the case. See Mot. at 14-18. She represents that she is troubled by Law Clerk I's handling of the June 29, 2015 telephonic discovery dispute, attendance at the August 5, 2015 motions hearing motion hearing, where she allegedly took notes,[20] and reminders to Law Clerk II to docket orders reflecting the Court's oral rulings.[21] See id. at 22; Reply at 10. Such participation, however, does not cast doubt on the impartiality of the Court. At most, Law Clerk I undertook "ministerial" tasks that had no bearing on how the Court ruled on any motions in this case.[22] See United States v. Martinez, 446 F.3d 878, 883 (8th Cir. 2006) (recusal unwarranted where conflicted clerk "served only ministerial functions"); Hunt, 783 F.2d at 1016 (no recusal necessary where potentially conflicted law clerk's assignment was "ministerial only"

[20] Law Clerk II, who was responsible for assisting the Court with the case, transcribed notes. To the extent Law Clerk I even memorialized her impressions or the like from the hearing, see Reply at 10, they were never brought to the attention of either Law Clerk II or the Court, see Keyhani, 1988 WL 109100, at *2.

[21] The Court's August 6, 2015 Order permitted the defendant to reopen the plaintiff's deposition to explore her grand jury testimony, see Aug. 6, 2015 Order, an issue that the Court did not decide at the August 5, 2015 motions hearing. In the time between the hearing and the issuance of the Order, with the assistance of Law Clerk II and after considering the law and the parties' briefing, see Doe, _ F. Supp. 3d at _ n.1, 2015 WL 5190437 at *1 n.1; see also id. at *3 n.6 (addressing parties' disagreement over whether the plaintiff's deposition can be reopened to examine her on the substance of her grand jury testimony—an issue that the parties had briefed); Plaintiff's Opposition to Defendant's Renewed Motion for Disclosure of Jane Doe's Grand Jury Testimony at 3 ("At the conclusion of her deposition, which lasted for more than [nine and a half] hours, counsel for the Defendant held open the deposition for the express purpose of deposing Plaintiff regarding her grand-jury testimony, to the extent the testimony was later made available."), ECF No. 68, the Court determined that the reopening of the deposition was appropriate. Despite what Law Clerk I's August 2015 text messages insinuated, they could not reasonably be perceived to be accurate, because on August 6, 2015, Law Clerk I merely reminded Law Clerk II to help the Court docket orders that were in accordance with its rulings from the previous day, Aug. 18, 2015 Order, Ex. C (Decl. I) ¶¶ 13-14, i.e., consistent with the disclosure of the plaintiff's grand jury testimony is the reopening of her deposition, see Doe, _ F. Supp. 3d at _ & n.6, 2015 WL 5190437, at *3 & n.6.

[22] The plaintiff also faults the Court for not having disclosed earlier that Law Clerk I received "a substantial gift," in the form of legal services from Zuckerman Spaeder. See Reply at 2. But the Court had no knowledge of whether Law Clerk I paid for the services, and in any event, had no duty to disclose the "mere presence" of a conflicted law clerk in chambers, especially where she did not work on the case. United States v. Martinez, 446 F.3d 878, 883 (8th Cir. 2006); United States v. Reggie, No. 13-CR-111-SDD, 2014 WL 1664256, at *3 (M.D. La. Apr. 25, 2014) (same).

and clerk did not talk with judge about case to any "significant extent"); <u>Anderson v. Bd. of Sch.</u>

<u>Dirs. of Millcreek Twp. Sch. Dist.</u>, No. 07-CV-111-SJM, 2011 WL 5325782, at *4 (W.D. Pa.

Nov. 3, 2011) (recusal unnecessary where law clerk had potential conflict because she "had no

real involvement in any of the Court's substantive rulings," even though she "attend[ed] . . . [an

oral] argument and docket[ed] the Court's minutes and the order issued verbally by [the judge] in

open court").

      In maintaining that the Court's screen was ineffective, the plaintiff cites <u>First Interstate</u>

<u>Bank of Arizona, N.A. v. Murphy, Weir & Butler</u>, 210 F.3d 983, 985 (9th Cir. 2000), where a

bankruptcy court recused itself because its "law clerk continued to have some contact with [a]

case" where the clerk had a conflict of interest, i.e., the clerk accepted employment with defense

counsel in the case.  There, the Ninth Circuit found that "the 'Chinese Wall' was not

impermeable as it should have been . . . ."  <u>Id.</u>  The contact in that case included "handl[ing] a

few telephone calls pertaining to procedural matters, observ[ing] some courtroom proceedings,

[and] <u>mark[ing] up a [substantive] memorandum</u> . . . ."  <u>Id.</u>  (emphasis added).  Therefore, the

extent of the law clerk's contact with a conflicted case in <u>First Interstate</u> greatly differs from that

of Law Clerk I in this case.[23]

      Further, despite the fact that Law Clerk I insinuated that she somehow influenced the

Court's decisionmaking process in favor of Zuckerman Spaeder and the defendant in this case

through her text messages to members of the firm, a well-informed and reasonable observer

would understand that it is the Court, and <u>not</u> any of its law clerks, that presides over a case and

resolves disputes between the parties in the case, and unfounded proclamations to the contrary

---

[23]  The difference in the degrees of contact becomes even greater when examining the record of the bankruptcy case.  <u>See</u> Opp'n at 15 (citing Opp'n, Ex. D (Transcript of Proceedings, <u>In re Scottsdale Pinnacle Associates</u>, No. 93-40272-N (Bankr. N.D. Cal. Feb. 7, 1995))).

from a law clerk could not reasonably change that understanding.  See First Interstate, 210 F.3d

at 988 ("[J]udges (and their law clerks) are presumed to be impartial and to discharge their

ethical duties faithfully so as to avoid the appearance of impropriety." (emphasis added)); In re

Allied-Signal, 891 F.2d at 971 ("Both bench and bar recognize . . . that judges, not law clerks,

make the decisions. . . . [J]udges are fully capable (and believed by reasonable members of the

public to be fully capable) of taking account of whatever 'bias' . . . a clerk [might bring to

chambers]."); Parker, 855 F.2d at 1524 ("It goes without saying that it would be improper for a

judge to delegate the adjudicative function of his office to one that was neither appointed by the

President nor confirmed by the Senate."); Ohio Valley Envtl. Coal. v. Fola Coal Co., _ F. Supp.

3d _, _ n.4, 2015 WL 4772351, at *31 n.4 (S.D. W. Va. 2015) ("Judges decide cases; law clerks

perform tasks as directed. Here, [the] [d]efendant appears to offer no complaint of bias on behalf

of the Court, instead questioning potential biases of a subordinate staff-member, a term law

clerk.  Such concerns are trivial at best.  At the risk of stating the obvious, a term law clerk is not

a judge.  A term law clerk performs tasks as delegated to him or her by a supervising judge.  A

term law clerk does not enjoy the exercise of discretion.  That responsibility is reserved for the

judge and the judge alone.  A term law clerk merely acts in service of a supervising judge's

discretion."); Anderson, 2011 WL 5325782, at *5 ("[M]ost reasonable people would understand

that judges are able to ferret out and set aside the potential biases of their law clerks."); Bishop v.

Albertson's, Inc., 806 F. Supp. 897, 902 (E.D. Wash. 1992) ("But law clerks do not favor parties

or classes of parties.  One who did would rapidly lose credibility and the confidence of the

Court."); id. ("Motions of any complexity are typically taken under advisement at which point

the facts and applicable law are once again hashed and thrashed.  Once the undersigned is

convinced that further research and reflection would not alter the result, a decision is made and a

written disposition entered.  When counsel read that disposition, they may do so with confidence

that it is not a rubber stamped version of what the law clerk thinks."); In re Chandler's Cove Inn,

Ltd., 97 B.R. 752, 756 (Bankr. E.D.N.Y. 1988) ("[T]he movant's argument is predicated upon

the alleged misconduct of the law clerk, and not the court.  Even if this argument had any

validity, then it is the law clerk, and not the judge, to whom recusal should be directed.").

      Make no mistake about it—Law Clerk I's decision to send text messages to members of

Zuckerman Spaeder implying that she had a hand in the Court's orders in this case was

regrettable and senseless, especially where such an implication was completely inaccurate.[24]

See, e.g., Bishop, 806 F. Supp. at 901 n.4 ("The case law reflects occasional lapses of judgment

[by law clerks]").  "But . . . the [Court] cannot be made an easy victim of the [law] clerk's follies

or perceived faults."  In re San Juan, 129 F.R.D. at 412 n.5; see also Prior v. Innovative

Commc'ns Corp., Nos. 1999-CV-232, 1999-CV-236, 2000 WL 1670915, at *2 (D.V.I. Aug. 16,

2000) (similar).  At bottom, none of the text messages exchanged between Law Clerk I and

members of Zuckerman Spaeder affected any of the Court's rulings.  See In re Brooks, 383 F.3d

1036, 1038, 1041-43 (D.C. Cir. 2004) (ex parte contacts did not require recusal because they

were "not . . . substantively related to [the] proceedings"); Wallace v. Skadden, Arps, Slate,

Meagher & Flom, LLP, 362 F.3d 810, 812 (D.C. Cir. 2004) (affirming refusal to recuse where

there was neither impropriety nor judicial bias "resulting from the ex parte contact with the

district judge's law clerk")[25]; Intercontinental Apparel, Inc. v. Danik, Inc., No. 83-CV-1579,

---

[24]  At the emergency telephonic conference regarding Law Clerk I's August 2015 text messages, the Court stated
that those messages "could . . . [give someone] the impression that somehow she had something to do with the
ultimate ruling[s] that [the Court] made . . . ."  Aug. 19, 2015 Tr. at 3:22-25.  The Court still believes that to be true.
But, of course, Law Clerk I's text messages must be put into context.  A well-informed and reasonable observer
cannot turn a blind eye to other relevant facts that refute that impression.

[25]  The allegations surrounding the ex parte contact are unclear from the decision.  But scrutiny of the underlying
record indicates that the allegations of judicial misconduct bear strong similarity to those in this case.  See Brief of

(continued . . . )

1984 WL 21974, at *1 (D.D.C. July 18, 1984) (law clerk handled telephonic discovery dispute,

but the court did not recuse itself as there was "no showing of bias" or "prejudice"); see also

United States v. Levy, 390 F. App'x 726, 728 (9th Cir. 2010) (although ex parte contact between

court and litigant was deemed improper, no recusal necessary because it occurred "after" court's

substantive decision was rendered and did "not reflect such a high degree of favoritism to . . .

[one party] or antagonism to the [other party] that would make fair judgment impossible");

Thampi v. Manatee Cnty. Bd. of Comm'rs, 384 F. App'x 983, 991 (11th Cir. 2010) ("[Appellant]

cites no binding case law providing that a magistrate must recuse himself if one party engages in

an ex parte communication with the magistrate's law clerk."); In re Adbox, Inc., 234 F. App'x

420, 421 (9th Cir. 2007) (despite "several ex parte contacts," there was "no evidence that those

communications affected the bankruptcy judge's rulings" so no recusal necessary); Knop v.

Johnson, 977 F.2d 996, 1011 (6th Cir. 1992) (no recusal necessary despite ex parte contacts

because they were "lapses [that] appear[ed] relatively harmless," as the court did not rely on any

of the contacts in writing its opinion); Aiken Cnty. v. BSP Div. of Envirotech Corp., 866 F.2d

661, 679 (4th Cir. 1989) (no "reasonabl[e] . . . belief that the judge was not impartial," where ex

parte contacts did not touch upon "substantive issues"); Carranza v. Fraas, 763 F. Supp. 2d 113,

120 (D.D.C. 2011) (explaining that "[e]x parte communications between a judge, acting through

one of his or her law clerks, and counsel or a witness that do not touch upon the merits of the

---

( . . . continued)

Appellees, Addendum of Exhibits at B29-B33, Wallace v. Skadden, Arps, Slate, Meagher & Flom, LLP, No. 03-7026 (D.C. Cir. Oct. 2, 2003) (asserting judicial misconduct where defendants through ex parte communication with court became "privy to the court's action at or before the time it was taken"); Brief of Appellant at 30-32, Wallace v. Skadden, Arps, Slate, Meagher & Flom, LLP, No. 03-7026 (D.C. Cir. Sept. 2, 2003) (arguing that there was appearance of impropriety where there was an "ex parte telephone conference and subsequent faxing of [a]n Order granting [d]efendants a de facto stay, without notice to [p]laintiff"); Joint Appendix at 257, Wallace v. Skadden, Arps, Slate, Meagher & Flom, LLP, No. 03-7026 (D.C. Cir. Sept. 2, 2003) (moving to disqualify court on basis that its "impartiality . . . may reasonably be questioned because of certain ex parte communications between [d]efendants and . . . chambers regarding [d]efendants' motion . . . the day after such motion was filed, which resulted in [court] issuing an order favorable to [d]efendants on that same day and immediately sending such order to [d]efendants' via facsimile").

case generally do not warrant relief," and citing <u>Kaufman v. Am. Family Mut. Ins. Co.</u>, 601 F.3d 1088, 1095 (10th Cir. 2010), which upheld determination that a telephone call from a judge's law clerk to counsel was harmless and warranted no further investigation or sanctions); <u>AIG Baker Shopping Ctr. Props., LLC v. Deptford Twp. Planning Bd.</u>, No. 04-CV-5849(FLW), 2006 WL 83107, at *12 (D.N.J. Jan. 10, 2006) (explaining that the proscription against <u>ex parte</u> communications concerns those communications that affect the merits of a proceeding and no recusal necessary if they do not); <u>United States v. Feneziani</u>, No. 05-CR-290A, 2007 WL 2176490, at *3 (W.D.N.Y. July 27, 2007) ("Nor does the <u>ex parte</u> communication between the government and the Court's law clerk require recusal.  This communication simply advised the Court that the grand jury subpoena, which was at issue, was no longer effective because the grand jury's term had expired.  Such a communication was procedural in nature and did not affect the merits.  Thus, it was not improper."); <u>Jewelry Repair Enters., Inc. v. E & S Assocs., Inc.</u>, No. 95-CV-7300, 1996 WL 311462, at *5 (E.D. Pa. June 4, 1996) ("<u>Ex parte</u> communications to or by a court, while generally improper, do not require a court to disqualify itself.") (citing various cases).

Were there any doubt that a well-informed and reasonable observer would view this Court as impartial, notwithstanding Law Clerk I's conduct, that doubt can be erased by consideration of the plaintiff's own words, or lack thereof, and observations, which weigh against the Court recusing itself.  <u>See</u> <u>In re Allied-Signal</u>, 891 F.2d at 972 ("[T]he parties' own words and deeds may help determine the extent to which a knowledgeable observer would see, in a particular circumstance, a sign of partiality [or lack thereof].").  The plaintiff acknowledges that the Court has done no wrong in this case.  Reply at 9 n.5 ("[The] [p]laintiff does not suggest any fault of the Court that . . . contact [between Law Clerk I and this case] occurred."); <u>see also</u>

Jewelry Repair, 1996 WL 311462, at *6 (<u>ex parte</u> contact did not require recusal where it "was made without the Court's knowledge").  There is no allegation that the Court has any bias against the plaintiff.  <u>See</u> <u>Hunt</u>, 783 F.2d at 1016 (affirmance of refusal to recuse bolstered by lack of any allegation concerning "any actual bias on the part of the district judge").  Nor is there any.  And finally, even the plaintiff "agree[s]" with what the Court has unequivocally stated throughout this Opinion—"that the text[] [messages] were unfortunate, but were <u>in jest</u> and <u>should not be a matter of concern in the case</u>."  Opp'n at 3 n.1 (emphasis added)[26]; <u>see also</u> Reply at 12 ("Surely, the activities of [Law Clerk I] in this case that have been revealed so far could be construed to be "non-substantive" in that they seem, on balance, relatively unimportant.").[27]

In sum, the Court finds that the unfortunate text messages exchanged between Law Clerk I and members of Zuckerman Spaeder, coupled with her minimal ministerial and observational role in this case—a case in which she has had no substantive involvement—cannot lead a well-informed and reasonable observer to believe that the Court is partial towards Zuckerman Spaeder and the defendant.

## C.  Discovery

The plaintiff contends that she is entitled to conduct discovery <u>and</u> have <u>another</u> hearing on the issue of recusal before the Court rules on her motion.[28]  <u>See, e.g.</u>, Mot. at 3 & n.1; Reply

---

[26]  Nowhere in the plaintiff's reply brief is the defendant's representation contested.

[27]  Contrary to plaintiff's characterization, the Court does not find that any ministerial task Law Clerk I undertook in this case required "discretion, judgment, or skill."  Reply at 12.

[28]  Had the plaintiff only requested discovery, the Court would deny that request as premature, with respect to this Court, on the ground that another member of this Court (at this Court's request) is currently handling discovery matters related to the issue of recusal.  But because the plaintiff also requested an additional hearing regarding the Court's refusal to recuse itself from this case, predicated on her general request to conduct discovery, <u>see</u> Reply at

(continued . . . )

at 5, 14.  The plaintiff is unsatisfied with what the Court and its law clerks have already represented to the parties because she contends that she "cannot fully evaluate the screening measures that were in place" and there are "conspicuous inconsistencies and ambiguities" based on what has been disclosed.  Reply at 12-13.  The Court sees things differently.

As the Court has unequivocally repeated <u>ad nauseum</u>, Law Clerk I was screened from the case, such that neither the Court nor Law Clerk II were substantively influenced by Law Clerk I on any substantive aspect of this case.  The details and mechanics of how the Court went about the screen are, <u>inter alia</u>, irrelevant, so long as once implemented, they shielded Law Clerk I from substantive involvement in the case.  As noted earlier, the Court has only looked to Law Clerk II for substantive assistance in this case, and the plaintiff does not suggest otherwise.  <u>See, e.g.</u>, Opp'n at 3 n.1 (plaintiff "agree[ing]" that "the text[] [messages] were unfortunate, but were <u>in jest</u> and <u>should not be a matter of concern in the case</u>." (emphasis added)); Reply at 9 n.5 ("[The] [p]laintiff does not suggest any fault of the Court that . . . contact [between Law Clerk I and this case] occurred.").  And her minimal involvement in purely ministerial tasks, observation of a motions hearing, and factually inaccurate text messages sent in jest to members of Zuckerman Spaeder do nothing to change that reality.  Simply put, through the Court's representations at the emergency telephonic conference and the two law clerks' declarations, the plaintiff has all the information she needs to advance the strongest case she can muster for the Court's recusal.

---

( . . . continued)
12-14, the Court cannot address the merits of the plaintiff's motion to recuse without first addressing the propriety of any discovery.

In similar circumstances, courts, including the District of Columbia Circuit, have denied discovery. [29] See In re Brooks, 383 F.3d at 1043-44 (denying discovery where it would lead to "private communications between a district judge and subordinate judicial officers regarding matters the judge has expressly stated are procedural and non-substantive"); see also Kaufman, 601 F.3d at 1096 (after prompt disclosure of ex parte contact disclosed, further investigation, such as "full-blown discovery," of additional ex parte contacts was unnecessary); Bartel, 786 F.2d at 490 ("The conclusion that a law clerk 'had to be' influenced by the actions of a co-worker is compelled by neither logic nor the record before us.  Furthermore, the facts on the record do not justify further inquiry.  This claim is also frivolous."); Turner v. Murphy Oil USA, Inc., No. 05-CV-4206(EEF), 2008 WL 2178087, at *1 (E.D. La. May 21, 2008) ("By way of example, the Court sees this situation the same as if an applicant sought to subpoena the Court's law clerk to testify, which courts have routinely held should generally not be allowed." (citing In re U.S., 463 F.3d 1328, 1332 n.4 (Fed. Cir. 2006))); United States v. Persico, No. 04-CR-911(SJ), 2006 WL 2792761, at *2 (E.D.N.Y. Sept. 7, 2006) (where court has already found recusal unwarranted, "further judicial inquiry" is "obviate[ed]"); Cobell, 237 F. Supp. 2d at 100-02 ("The sole line of inquiry that movants seek to pursue relates to communications which, as explained above, neither conveyed information about disputed facts in these proceedings nor imparted an extrajudicial bias to the presiding judge.  Movants have not cited any case or statute in support of their request, and this Court knows of no case in which a court has authorized discovery to be taken upon judicial officers."); Baugh, 829 F. Supp. at 276 (denying request for discovery in alleged conflict of interest); Terrazas v. Slagle, 142 F.R.D. 136, 139 (W.D. Tex.

---

[29]  The plaintiff's reliance on Mathis, 787 F.3d at 1313, is unavailing.  Reply at 13.  The Court has already provided detailed law clerk declarations and sua sponte convened a hearing to disclose the facts surrounding Law Clerk I's conduct.  See Aug. 18, 2015 Order at 1.

1992) ("Thus, deposing the law clerks will not achieve the stated purpose of aiding counsel in reversing the Court's orders based on improper decisionmaking by the Court. . . . The judges, with full knowledge of the facts, have already determined there is no basis to require their recusal."); In re Wisdom, No. 11-01135-JDP, 2014 WL 1573134, at *2 (Bankr. D. Idaho Apr. 17, 2014) (quashing subpoena that "attempt[ed]" to buttress recusal contentions); In re Lickman, 304 B.R. 897, 903-04 (Bankr. M.D. Fla. 2004) (discussing judicial immunity and quashing subpoenas served on law clerk because, among other reasons, "if a judge cannot be compelled to testify in a case over which he or she presides in regards to her or his [decisionmaking], then a disgruntled litigant should not be allowed to circumvent this by compelling the judge's staff to so testify."); Bova v. Blasdel, No. 96-CV-15083(DAS), 1998 WL 51286, at *1 (Bankr. E.D. Pa. Feb. 3, 1998) ("This court firmly resists any duty to disclose the contents of its discussion with its own or any other law clerk.").  Therefore, discovery is unnecessary, as the Court is confident that Law Clerk I did nothing that influenced the Court or Law Clerk II on any substantive matters concerning this case.[30]

## IV.   CONCLUSION

This Court has no vested interest in which party ultimately prevails in this case.  Its only interest is to ensure that the parties receive a fair trial on the merits.  The Court is confident that it has acted impartially throughout the life of this case and that it will continue to do so in the future.  If the Court believed otherwise, it would recuse itself without hesitation.  And although

---

[30] The defendant and the associate recently filed a Joint Motion to Quash and for a Protective Order.  As alluded to earlier, the Court saw it prudent to refer that motion to another member of this Court for resolution.  The Court leaves open the possibility that the resolution of that motion could result in the Court having to reconsider this Opinion.

the Court has ruled adversely to the plaintiff's litigation interests on several occasions,[31] these rulings were based on an objective understanding of the facts and the law that governed these disputes, rather than on any alleged bias of Law Clerk I, who played no role concerning any of those rulings.  Moreover, the Court has not relied on any extrajudicial source that can reasonably call into question its impartiality.  Accordingly, the plaintiff's motion for recusal is denied.

      **SO ORDERED** this 30th day of September, 2015.[32]

REGGIE B. WALTON
United States District Judge

---

[31]  To the extent that the outcomes of the Court's rulings have any relevance to a recusal motion, see, e.g., Williams v. Johanns, 563 F. Supp. 2d 27, 32-33 (D.D.C. 2008) ("Although a judge's ruling for or against one party is insufficient to show bias, the Magistrate Judge's various rulings in favor of both parties in this case undermines [the] [p]laintiffs' claims of bias even further." (citation omitted)), the Court notes that not all of its rulings have been entirely in favor of the defendant, see, e.g., September 21, 2015 Order at 8-9 (unlikely to permit defendant's rebuttal expert to testify at trial if the plaintiff proceeds with intended trial strategy); Aug. 5, 2015 Tr. at 26:11-34:18 (agreeing, over defendant's objections, to have trial conducted in January 2016 rather than in November 2015, and to refer case to a magistrate judge for settlement discussions); Doe v. Cabrera, 307 F.R.D. 1, 10 (D.D.C. 2014) (granting in part and denying in part the plaintiff's motion to proceed under a pseudonym).

[32]  The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.