## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA


JANE DOE,                                          *

      Plaintiff,                                *

v.                                                 *          Case No. 1:14-cv-01005 (RBW)

ALFREDO SIMON CABRERA,                             *

      Defendant.                                *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### PLAINTIFF'S MOTION *IN LIMINE* FOR SPOLIATION
### SANCTIONS AND MEMORANDUM OF POINTS
### AND AUTHORITIES IN SUPPORT THEREOF

Plaintiff Jane Doe by and through her undersigned counsel files this Motion *in Limine* for

Spoliation Sanctions, and Memorandum of Points and Authorities in Support thereof and states

as follows:

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff respectfully requests that this Court issue an adverse jury instruction and

reasonable attorneys' fees and costs based on Defendant's willful destruction of relevant

evidence after he was on notice of this litigation. These sanctions are well supported by D.C. law

as applied to the facts now before the Court.

Plaintiff was sexually assaulted by Defendant Alfredo Simon Cabrera in the early

morning hours of April 28, 2013, at the Mayflower Hotel in Washington, D.C. Compl. ¶¶ 6-16.

Plaintiff underwent a sexual-assault forensic examination on April 28, 2013, and, on May 3,

2013, she reported the assault to the D.C. Metropolitan Police Department ("MPD"). At the

request of MPD detectives, Plaintiff provided her cellular telephone to detectives and detectives

took photocopies and retained copies of several electronic copies of text messages they determined to be relevant to the case. *See* Pl.'s July 8, 2015 Tr. Dep. of Plaintiff at 274-276, cited portions of Plaintiff's testimony, which are attached as **Exhibit A, filed under seal**. Among the text messages that MPD retrieved from Plaintiff's phone was a text exchange between Plaintiff and Defendant that occurred shortly prior to the time of the assault. *See* April 28, 2013, text exchange, attached as **Exhibit B**. The U.S. Attorneys' Office for D.C. elected not to pursue criminal charges against Defendant. Plaintiff was informed of that decision on or about May 16, 2013. (*See* Ex. A at 338.)

On October 4, 2013, counsel for Plaintiff sent Defendant a letter setting forth the nature of her allegations against him. The letter specifically states:

By this letter, you are hereby given notice to preserve and ***not to destroy, conceal or alter*** any documents or communications that relate in any way to [Plaintiff] or any aspect of the sexual attack. This notice applies to smartphones, tablets, laptops, desktops, computer systems and removable electronic computer systems, services and devices (including all remote access and wireless devices) including (without limitation): text messages, e-mail and other electronic communications; electronically stored documents, records, images, graphics, recordings, spreadsheets, databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cache files, user information, and other data. Further, this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail and other data. All operating systems, software, applications, hardware, operating manuals, codes, keys and other support information needed to fully search, use, and access the electronically stored information must also be preserved.

Current D.C. law applies to the discovery of electronically stored information just as they apply to other evidence, and confirm the duty to preserve such information for discovery. You must take all reasonable steps to preserve this information until this matter is fully resolved. To fulfill your preservation obligation, you must refrain from data destruction, electronic shredding, rotation of backup tapes, and the sale, gift or destruction of hardware containing any potentially relevant data. You must also notify all individuals and affiliated organizations of the need and duty to take the necessary affirmative steps to comply with the duty to preserve evidence. Failure to comply with this notice can result in severe sanctions being imposed by a court and/or separate tort liability for spoliation of evidence or potential evidence.

> This letter constitutes formal notice of my client's claim for money damages and, consistent with all applicable local, state and/or federal laws, may preclude you from lawfully conveying, transferring or otherwise altering ownership interest in any property or assets.  This notice is without prejudice and my client expressly reserves all rights and remedies afforded her under any local, state and/or federal law.

*See* October 4, 2013, letter from Steven J. Kelly, Esquire to Alfredo Simon Cabrera at 4, attached as **Exhibit C** (emphasis original). Defendant testified that he received notice of the letter shortly after it was sent and he assigned legal counsel to deal with it. *See* July 16, 2015, Dep. Tr. Defendant at 14-17, cited portions of which are attached as **Exhibit D**, filed under seal. Defendant's counsel issued a response to the initial letter on October 29, 2014. A copy of the October 29, 2013 letter from Jack Quinn, Esquire to Steven J. Kelly, Esquire is attached as **Exhibit E**.

In the Interrogatory Answers produced by Defendant in this case, Mr. Simon indicates, "On or about October 2013, Simon received a new Samsung cellular phone to replace an old version that had broken. He is no longer in possession of the old phone but believes that information contained on that phone at the time was copied onto his new phone that he possessed through the filing of the Complaint." *See* Def.'s Objections and Answers to Plaintiff's Interrogatories at 9, attached as **Exhibit F**. In deposition, Mr. Simon's ex-wife, Arlene Melgar, gave somewhat contradictory testimony, first professing ignorance as to what happened to the phone but suggesting that he obtained a new cellphone for the updated technology:

> Q: Do you know what happened to the Samsung phone that [Mr. Simon] had in October 2013?
> A: No.
> Q: Do you remember some point after that when he had a different phone?
> A: Every year, you know how Samsungs they change different models, more technology. If he liked the phone he would change it because he wanted the more technology, a better phone.

*See* Tr. of Dep. of Arlene Viridiana Melgar (the "Melgar Deposition"), July 20, 2015, at 79, attached hereto as **Exhibit G,** filed under seal**.** She later, however, testified that she did know what happened to the phone and testified that he broke it — not in October 2013, but sometime in the middle of *the following year*:

> Q: After October 2013 did there come a point at which he had a different phone than what he had in October 2013?
> A: Yeah, I think in January 2014 he still had the same phone. I believe that in the middle of the year, 2014, he changed it because it broke.
> Q: Okay. Is the phone that he had in January 2014 the same phone he had in October 2013?
> A: Yes, it was the same one.

*Id.* at 80.

In deposition, Defendant testified that he believes he sent his old phone to the Dominican Republic. Ex. D at 318. Ms. Melgar, however, testified that they sent it back to the service provider for a new model, stating, "We made a claim and sent it back to T-Mobile for replacement." Ex. G at 80. In either case, both Mr. Simon and Ms. Melgar agreed that Mr. Simon took no steps at all to preserve any data on the phone.

When asked what he did to preserve relevant evidence after he received the October 4, 2013, letter, he stated "I didn't do anything." Ex. D at 329. Ms. Melgar testified that Mr. Simon specifically took no steps at all to preserve evidence before sending the phone back to the service provider:

> Q: Do you know what happened to the data that was on that phone?
> A: No.
> Q: Okay. Did you ask T-Mobile to transfer that data to a new phone?
> A: No.
> Q: Did you ask T-Mobile to save the data on that phone?
> A: No.

Melgar Dep. at 81. It is unclear why Mr. Simon "believes" the information was transferred from the old phone to the new phone given that they never asked the service provider to do that or otherwise make any effort to save the data.

Indeed, although Mr. Simon and his counsel stated that Mr. Simon "believes" all his data was transferred from his old phone to his new phone, Mr. Simon has *none* of the several texts he admits sending or receiving on April 27 and 28, 2013. *Id.* at 336. This fact in itself demonstrates that the data was *not* completely transferred between his phones before the phone he had at the time of the assault was destroyed. It is thus apparent that Mr. Simon made no effort to preserve evidence prior to when suit was filed in this case, despite explicit notice of an impending lawsuit and despite a notice that instructed him to preserve all evidence.

## II.    LEGAL STANDARD

Parties or potential parties to litigation have a duty "to preserve potentially relevant evidence . . . 'once [the party or potential party] anticipates litigation.' " *D'Onofrio v. SFX Sports Group, Inc.,* Civ. Action No. 06–0687, 2010 WL 3324964, at *5 (D. D.C. Aug. 24, 2010) (quoting *Smith v. Café Asia,* 246 F.R.D. 19, 21 n. 2 (D. D.C.2007)). That obligation "runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Zhi Chen v. D.C.*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011) (quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.,* 271 F.R.D. 429, 437 (S.D.N.Y. 2010)).

When a party fails to preserve and produce necessary and responsive documents, the Court may sanction such conduct by imposing an adverse inference against the offending party. *Jones v. Hawley*, 255 F.R.D. 51, 52-53 (D. D.C. 2009); *see also Mazloum v. District of Columbia Metro. Police Dep't*, 530 F.Supp.2d 282, 292-293 (D. D.C. 2008). The District of Columbia

Circuit has long established that, in addition to what is provided by the Federal Rules, courts have an inherent power to sanction parties for their abusive litigation practices. *Shepherd v. American Broad. Co.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995) ("When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap.").

Here Plaintiff seeks two forms of sanctions: an adverse inference instruction and reasonable attorneys' fees and costs.

Federal district courts may impose an adverse-inference instruction when a preponderance of the evidence establishes that "a party's misconduct has tainted the evidentiary resolution of the issue." *Zhi Chen v. D.C*., 839 F. Supp. 2d 7, 12-13 (D. D.C. 2011). To prevail on a request for an adverse instruction due to spoliation, Plaintiff must also demonstrate: "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it." *See Mazloum,* 530 F. Supp. 2d at 291 (quoting *Thompson v. HUD,* 219 F.R.D. 93 (D. Md. 2003)).

This Court has also recognized that attorneys' fees and costs are an appropriate sanction for spoliation of evidence. In general, if a movant demonstrates that another party destroyed discoverable material it knew or should have known was relevant to pending, imminent, or reasonably foreseeable litigation, courts award the victim its attorney's fees and costs on the sanctions motion. *Zhi Chen*, 839 F. Supp. at 14 (D. D.C. 2011) (quoting Gorelick, Destruction of

6

Evidence § 3.16, at 118). In light of the punitive purpose and effect of such an award, however, the D.C. Circuit has recognized that district courts must find sanctionable conduct by clear and convincing evidence to justify an award of fees and costs. *Shepherd*, 62 F.3d at 1477.

## III.    ARGUMENT

### A.    PLAINTIFF IS ENTITLED TO AN ADVERSE-INFERENCE INSTRUCTION

Plaintiff has met her burden on each of the three elements required under *Mazloum.*

First, Defendant was plainly on notice of litigation because he received a letter that explicitly threatened litigation and set forth his preservation obligations in no uncertain terms. By its terms, the notice applied to Defendant's smartphone. *See* Ex. C at 2. After setting forth the categories of documents and data that should be preserved, the letter states that: "Failure to comply with this notice can result in severe sanctions being imposed by a court and/or separate tort liability for spoliation of evidence or potential evidence." *Id.* Such a letter constitutes adequate notice of foreseeable litigation for the preservation obligation to attach. *See Zhi Chen*, 839 F. Supp. 2d at 13-14 (holding that a letter that threatens litigation and warns party not to destroy evidence is sufficient notice for spoliation purposes). While Defendant refused at deposition to provide details as to precisely when he discarded his telephone, Ms. Melgar's testimony indicates that he did so sometime in middle of 2014 — which would be *after this lawsuit was filed*, presumably six months or more after he was on notice to preserve all the data on the phone.

Further, Mr. Simon's deposition testimony states unequivocally that he "didn't do anything" to retrieve the telephone or to otherwise ensure communications relating to the night in question were preserved. This is corroborated by Ms. Melgar's testimony that they destroyed the phone without making any attempt to ensure that the service provider transferred or otherwise

saved the data on it. Simply put, no efforts to comply with Mr. Simon's preservation responsibilities were made whatsoever.

Second, Defendant's state of mind was sufficiently culpable to justify imposition of spoliation sanctions. As this Court has recognized, "the spoliation of evidence need not be 'purposeful,' … negligent spoliation may suffice." *Id.* at 14 (quoting *Mazloum,* 530 F.Supp.2d at 292–93). Defendant acknowledges that he disposed of his cellphone after receiving notice of this lawsuit (and seemingly even after the lawsuit was filed) and failed to take any action preserve the evidence. Accordingly, Defendant acted, at the very least, in a negligent manner than justifies the imposition of the sanctions Plaintiff seeks here. *See Zhi Chen*, 839 F. Supp. 2d at 14.

Finally, Plaintiff has demonstrated that the evidence destroyed by Defendant was relevant to her claims. "Relevance" in this context includes evidence that is both probative to a claim and that would, by its nature, likely prove favorable to the Plaintiff. *See id.* Moreover, where, as here, the evidence was destroyed willfully, or with (at best) gross negligence, relevance can be inferred. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004).

Additionally, the text messages would have likely proved probative and favorable to Plaintiff. The text messages from the night of the assault, one of which was sent to and from Defendant by Plaintiff prior to the assault and another of which was sent by Defendant very soon after the assault, at a minimum, corroborate Plaintiff's claim as to when she was with Defendant and establish a timeline of events. In addition, the text messages may well have evidenced Defendant's state of mind both before and after the assault.

It is also worth noting that Defendant failed to produce any text messages, emails or other communications concerning the allegations of this lawsuit with the exception of the letters attached hereto and a single text exchange that was sent after the lawsuit was filed. It is difficult

to believe that Defendant failed to communicate with anyone other than his lawyers after receiving the October 4 letter or at any time leading up to the filing of this lawsuit. Because Defendant discarded the telephone before that point, there is simply no way to determine what communications exist. The fact that Defendant discarded this evidence after he was placed on notice of the claim suggests both that the evidence was relevant and that it would have been favorable to Plaintiff. *See id.*

### B. PLAINTIFF IS ENTITLED TO FEES AND COSTS

Defendant's conduct warrants imposition of fees and costs. Generally, if a party establishes that an opposing party "destroyed discoverable material it knew or should have known was relevant to pending, imminent, or reasonably foreseeable litigation, courts award the victim its attorney's fees and costs on the sanctions motion." *Zhi Chen*, 839 F. Supp. 2d at 16 (quoting Gorelick, Destruction of Evidence § 3.16, at 118). To satisfy this requirement, Plaintiff must establish, by clear and convincing evidence, that Defendant acted with, at least, gross negligence. *See id.* Based on the facts discussed above, this requirement is easily satisfied. Defendant received a notice setting forth his preservation obligations and chose to ignore them. The text messages at issue may well have contained probative information and they are now forever lost.

### IV. CONCLUSION

**WHEREFORE,** for the foregoing reasons, Plaintiff respectfully requests that the Court GRANT the instant Motion *in Limine* and impose the sanction of an adverse jury-instruction consistent with this Court's Order and that the Court grant reasonable fees and costs, the proof of which shall be submitted at the Court's direction.

Dated:  October 16, 2015                    Respectfully submitted,

                                            /s/Steven J. Kelly_____
                                            Steven J. Kelly (DC Bar No. 1021534)
                                            Christopher Mincher, (admitted *pro hac vice*)
                                            SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC
                                            201 North Charles Street, Suite 2600
                                            Baltimore, Maryland 21201
                                            Tel: (410) 385-2225
                                            Fax: (410) 547-2432
                                            skelly@mdattorney.com
                                            cmincher@mdattorney.com
                                            *Attorneys for the Plaintiff*

## LR 7(m) CERTIFICATE

I certify that, pursuant to Local Rule 7(m), I conferred with Defendant's counsel and Defendant opposes the relief sought herein.

                                            /s/_____
                                            Steven J. Kelly

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the foregoing PLAINTIFF'S MOTION *IN LIMINE* FOR SPOLIATION SANCTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF were electronically filed with the Clerk of the Court by using the CM/ECF system, which will furnish electronic copies to all counsel.

Dated at Baltimore, Maryland, this 16th day of October, 2015.

                                            /s/_____
                                            Steven J. Kelly