UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Jane Doe, § | |
|          Plaintiff, § | |
| § | |
|          v. § | Case No. 1:14-cv-01005 (RBW) |
| § | |
| Alfredo Simon Cabrera, § | |
| § | |
|          Defendant. § | |

### DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY REGARDING THE SANE'S PHYSICAL FINDINGS AND THE SANE REPORT AS UNRELIABLE

Defendant seeks to exclude as evidence the Sexual Assault Medical Forensic Record created by Jennifer Graebe, R.N., which purports to document her examination of Plaintiff on April 28, 2013 ("SANE Report" or "Report") and also exclude Nurse Graebe's testimony about the "physical findings" described in that Report. The "physical findings" in the SANE Report are inherently flawed and, particularly because of their sensitive subject matter, would be highly prejudicial. To a lay jury, these "physical findings" would appear to be medical evidence of injuries resulting from the sexual encounter with Defendant. In fact, however, the problematic methods used by Nurse Graebe, together with Plaintiff's decision to disallow photographs of the alleged injuries, render these "physical findings" entirely unreliable. Accordingly, the SANE Report and Nurse Graebe's testimony about her "physical findings" should be excluded as evidence under Federal Rule of Evidence 403.

### INTRODUCTION

The SANE Report purports to document four physical findings: (1) swelling in Plaintiff's vaginal area; (2) & (3) abrasions on either side of Plaintiff's labia minora; and (4) a "swollen and tender anus" with "tissue from rectum protruding through rectum." Ex. A, SANE Report, DCFNE0006-07. These physical findings would appear to a lay jury as evidence of

injuries to Plaintiff's genitalia.  However, each of these findings is inherently unreliable.  First, genital swelling is notoriously difficult (if not impossible) to recognize without photographs, a follow-up appointment, or some familiarity with a woman's baseline or normal genital appearance.  None existed here.  Second, Nurse Graebe identified the abrasions on Plaintiff's labia minora only after applying Toluidine Blue Dye ("TB dye") to Plaintiff.  But TB dye is not intended to be applied the inner aspects of the labia minora—that is, to the inner folds of a woman's vulva—and may result in false positives if applied to such mucosal areas.  In fact, Nurse Graebe even admitted that current hospital procedures recommend that TB dye *not* be applied to the areas where Nurse Graebe applied it.  Lastly, as Plaintiff's own experts admit, Nurse Graebe's finding that Plaintiff had "tissue from rectum protruding through rectum" is, on multiple levels, medically questionable and unreliable, going so far as to testify that Nurse Graebe must have been mistaken.

Federal Rule of Evidence 403 gives this Court broad discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  In the context of Rule 403, unfair prejudice "means an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States ex rel. El-Amin v. George Wash. Univ.*, 533 F. Supp. 2d 12, 45 (D.D.C. 2008) (quoting 2 Weinstein's Federal Evidence § 403.04).  Nurse Graebe's testimony and the SANE Report present a grave danger of unfair prejudice because they purport to document injuries to Plaintiff's genital area—but that testimony and documentation is unreliable and the injuries likely did not exist.  In other words, given the flawed nature of Nurse Graebe's findings and the high risk of such sensitive evidence prejudicing the jury, Nurse Graebe's testimony and the misleading documentation of her findings in the SANE

Report should be excluded. This potential prejudice is further magnified as Plaintiff seeks to offer expert testimony that relies solely on Nurse Graebe's findings—findings that cannot be independently assessed or verified because Plaintiff would not consent to photographs.[1]

## ARGUMENT

### A. The Lack of Photographs Makes It Impossible to Verify Nurse Graebe's Findings.

The combination of Nurse Graebe's methodological failures and Plaintiff's decision not to consent to photographs renders Nurse Graebe's testimony about Plaintiff's alleged physical findings and the documentation of those findings unreliable. Defendant now moves for the exclusion of her testimony and that documentation. As a preliminary matter, however, it is worth noting that this entire situation could have been avoided if Plaintiff had permitted Nurse Graebe to photograph Plaintiff's alleged injuries as is standard protocol. Photographs of Plaintiff's injuries would allow the experts retained in this case to independently verify the accuracy and reliability of Nurse Graebe's findings. Unfortunately, however, Plaintiff did not permit photographs of her alleged injuries. Ex. B, Graebe Dep. 164:11-15 ("Q: You recommended that she have photographs taken? A: Yes. Q: And she did not say yes? A: Yes."). By not agreeing to photographs, Plaintiff has removed the best evidence to evaluate whether there were any injuries, and now asking the Court to substitute words for pictures is patently improper.

Without photographs, no one can assess or verify Nurse Graebe's findings. Each of Plaintiff's experts has acknowledged that. Ex. C, Ledray Dep. 159:20-160:19, 177:6-8, 208:6-20, July 10, 2015; Ex. D, DeVore Dep. 281:3-20, July 22, 2015; Ex. E, Holbrook Dep. 235:7-

---

[1] Plaintiff originally disclosed Nurse Graebe as a hybrid fact/expert witness. Plaintiff now has represented that she will call Nurse Graebe only as a fact witness. If, however, Nurse Graebe were to testify as an expert witness, her testimony regarding Plaintiff's physical findings would not pass muster under Federal Rule of Evidence 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

236:7, July 15, 2015; *see also* Ex. F, Rotolo Expert Report 6, ¶ 19 ("Without photographs, no peer review can be performed and no expert can verify the SANE's findings."). In the absence of photographs, the jury would have to rely on Nurse Graebe's findings without any objective facts-based verification of those findings. Because, as described *infra*, these findings are entirely unreliable, permitting the jury to consider them would be unfairly prejudicial and misleading.

      **B.    Nurse Graebe's Physical Findings as Documented in the SANE Report are Flawed and Unreliable.**

The SANE Report purports to document four physical findings. Each of these physical findings is flawed and unreliable.

      **1.    Nurse Graebe's Findings of Swelling Are Unreliable.**

Nurse Graebe's first physical finding is swelling and tenderness in "shaded areas" on the diagram of the vulva and the anus. *See* Ex. A, SANE Report DCFNE-0006. These shaded areas appear on the clitoral hood, the inner labia minora, and at the bottom of the vulva. *Id.*[2] Swelling is notoriously subjective and difficult to recognize. Many peer-reviewed studies exclude findings of swelling and redness due to their lack of reliability as a finding.[3] Because swelling can only be reliably identified by comparison to a baseline, without a follow-up appointment and

---

[2] Notably, Nurse Graebe's deposition testimony conflicted with the SANE Report. She testified that she "recall[ed] from memory that [Plaintiff] had a lot of swelling of her clitoral hood, swelling of the labia minora, and then swelling at the base of the posterior fourchette and the fossa navicularis." Ex. B, Graebe Dep. 158:1-4. In fact, the diagram in the SANE Report shows no swelling to the posterior fourchette or the fossa navicularis. *Accord* Ex. G, Rotolo Dep. 164:8-14, July 3, 2015.

[3] *See, e.g.*, Sarah Anderson et al., *Genital Findings of Women After Consensual and Nonconsensual Intercourse*, 2 J. of Forensic Nursing 59, 63 (Summer 2006) (explaining the decision to exclude redness and swelling from the data analysis in the study because of "the potential for differences between how each examiner visualizes the redness or swelling without a comparison evaluation" where the "pictorial documentation of redness and swelling was not adequately depicted in the photographs taken"); Birgitte S. Astrup et al., *Nature, frequency and duration of genital lesions after consensual intercourse—Implications for legal proceedings*, 219 Forensic Sci. Int'l 50, 51 (2012) (noting that "more ambiguous lesion types" such as "swelling" were not included in the study); Ian McLean et al., *Female genital injuries resulting from consensual & non-consensual vaginal intercourse*, 204 Forensic Sci. Int'l 27, 29 (2011) ("Subjective injury types such as redness, swelling, and tenderness were not included in this study"); Laura Slaughter, *Sexual Assault*, in *Rosen's Emergency Medicine Concepts & Clinical Practice* 855, 865 (John A. Marx eds., 8th ed. 2014) (noting that redness and swelling "may be difficult to recognize without a follow-up examination, and some investigators have suggested that redness or swelling not be reported if a second examination is not performed.").

without photographs, it is impossible to determine whether the reported swelling is a normal variant of the patient's body or actual swelling. *See, e.g.*, U.S. Dep't of Justice, A National Protocol for Sexual Assault Medical Forensic Examinations 117 (2013) (indicating follow-up to "further evaluate nonspecific findings (such as redness, swelling, or cervical abnormalities) that may be related to acute trauma or may be normal variants"); Slaughter, *supra* 865 (noting that redness and swelling "may be difficult to recognize without a follow-up examination, and some investigators have suggested that redness or swelling not be reported if a second examination is not performed"); Joyce A. Adams et al., *Adolescent Sexual Assault: Documentation of Acute Injuries Using Photo-colposcopy*, 14 J. Pediatric & Adolescent Gynecology 175, 179 (2001) ("These findings suggest that perhaps 'redness' and 'swelling,' which are very subjective observations, should not be assumed to be due to trauma in patients who report a sexual assault.").

Here, Plaintiff had no follow-up appointment and declined photographs. It is therefore impossible to determine whether Nurse Graebe actually observed swelling or simply a normal variant of Plaintiff's body. During her deposition, Nurse Graebe conceded that she had taken no steps to verify whether the purported swelling was a normal variant for Plaintiff. *See* Ex. B, Graebe Dep. 169:12-16 ("Q: Okay. But besides asking her, what other steps did you take to determine if the swelling was a normal variant of plaintiff's body? A: I wouldn't be able to, because I didn't know what she looked like before she came in."). Accordingly, Nurse Graebe's finding that Plaintiff's vaginal area had areas of "swelling" is flawed, unreliable and highly prejudicial.

### 2.      Nurse Graebe Misapplied TB Dye, Rendering Her Findings of Alleged Abrasions Unreliable.

Nurse Graebe's second and third findings purport to document two symmetrical abrasions on the inner aspects of the labia minora. Ex. A, SANE Report at DCFNE-0006. These abrasions were not visible to the naked eye and Nurse Graebe observed them only after the (inappropriate) application of TB dye. Ex. B, Graebe Dep. 185:18-21 ("Q: Okay. So prior to the application of the dye, the abrasion that's listed in [the findings numbered] 2 and 3 you did not see with your own eye? A: No."). But because Nurse Graebe improperly applied the TB dye to a part of the body for which it is not intended, these findings are highly suspect.

TB dye works by staining disrupted skin. When TB dye is applied to mucous membranes, it can be absorbed, resulting in a false positive result. Accordingly, it is well-established that TB dye should be used only on keratinized tissue, i.e., the tough tissue that covers the outside of the body, and *not* on tissue lined with mucous membranes such as the inside of a person's mouth or the inside mucosal folds of the labia minora.[4] *See, e.g.*, Judith A. Linden, *Forensic Examination of Adult Victims & Perpetrators of Sexual Assault*, in *Forensic Emergency Medicine* 85, 100 (Jonathan S. Olshaker et al. eds., 2d ed. 2007) ("Do not apply to mucosal surfaces."); Dianne M. Loomis et al., *Psychosocial Problems*, in *Primary Care: The Art & Science of Advanced Practice Nursing*, 1026, 1120 (Lynne M. Dunphy et al. eds., 4th ed. 2015) ("Toluidine blue dye is a nuclear stain that adheres to the areas of injury on subepithelial nucleated cells but not to intact epithelial cells; therefore, it is not useful for mucosal surfaces such as the vagina or anus."); Roberts & Hedges, *Clinical Procedures in Emergency Medicine* 1195 (James R. Roberts et al. eds., 6th ed. 2014) ("Do not use dye in the vaginal vault or mucous membranes."); *Recommended Guidelines: Washington State Sexual Assault Emergency Medical*

---

[4] Notably, Nurse Graebe did not know what the term keratinized tissue referred to. Ex. B, Graebe Dep. 190:2-10.

6

*Evaluation Adult and Adolescent* 26 (2010) ("[TB dye] [m]ay be used to delineate small areas of abrasion *on non-mucosal* skin.") (emphasis added); Slaughter, *supra* 866 ("Toluidine blue dye is a nuclear stain that has been shown to enhance gross visualization of *external* genital (vulvar) injuries. . . . Twenty-three categories of benign disease, along with columnar epithelium, *and mucus* will take up this stain.") (emphases added); Jeffrey S. Jones et al., *Significance of Toluidine Blue Positive Findings after Speculum Examination for Sexual Assault*, 22 Am. J. of Emergency Med. 201, 202 (May 2004) ("We do not apply the dye to mucosal surfaces because results are difficult to interpret.").

    In contravention of this guidance, however, Nurse Graebe applied the TB dye to the inner aspects of the labia minora, which is lined with mucous membranes.  This misuse of the dye makes it possible—and perhaps likely—that what she documented as abrasions were, in fact, false positive results from the improper application of the TB dye.  At her deposition, Nurse Graebe testified that her application of the dye was in line with how she had been trained in 2011, but the hospital's policies had since changed.  Ex. B, Graebe Dep. 186:4-10 ("Q:  Do you regularly apply TB dye to the inner aspects of the labia minora?  A:  I would say based on my training and knowledge at the time, yes.  But the application of the dye and where we apply it has changed over time. . . .").  She admitted that the purported abrasions fall outside of the area where current hospital policy dictates that TB dye should be applied.  *Id.* at 188:20-22.  She did not recall, however, why the hospital changed its policy as to where the TB dye should be applied and not applied.  *Id.* 189:1-17.  In other words, had Nurse Graebe applied the TB dye appropriately based on current hospital procedures, her findings of abrasions would not have been noted in the Report.

Thus, Nurse Graebe's improper use of TB dye makes it impossible to reliably conclude that Plaintiff in fact had abrasions on the inner aspects of her labia minora.

### 3. The Anal Findings Documented by Nurse Graebe Are Unreliable.

Nurse Graebe's final physical finding related to Plaintiff's anus. With regard to this finding, Nurse Graebe circled the entire anus on the genital diagram and drew diagonal lines across it. Ex. A, SANE Report at DCFNE-0007. Her written description of the physical finding stated that Plaintiff had a "swollen and tender anus" and "tissue from rectum protruding through rectum." As described *supra*, because no photographs were taken and no follow-up appointment occurred, Nurse Graebe's findings of swelling are unreliable. This logic applies equally to anal swelling as to vaginal swelling. Furthermore, the finding of "tissue from rectum protruding through rectum" is also deeply unreliable and medically suspect.

In fact, Plaintiff's own experts have questioned this finding. Linda Ledray, an experienced SANE who testified that she had performed "hundreds to thousands" of SANE examinations, testified that she had "no idea what [Nurse] Graebe meant" by "tissue from rectum protruding through rectum" and she did not know if that was even physically possible. Ex. C, Ledray Dep. 133:10, 237:11-19. She stated that she had never seen a SANE report which contained that description. *Id.* at 237:20-238:1. She speculated that Nurse Graebe may have seen a "hemorrhoid." *Id.* at 239:8-9.[5] Debra Holbrook, another SANE retained as an expert by Plaintiff, wrote in her expert report that Nurse Graebe's notation of "'rectum protruding through rectum' is clearly a mistaken entry with redundant terminology." Ex. H, Holbrook Rebuttal Expert Report 4, ¶ 23. Nurse Graebe, however, was adamant that her description was not a mistake, but an accurate report of what she observed. Ex. B, Graebe Dep. 203:5-7 ("Q: Rectum

---

[5] Hemorrhoids would be consistent with Plaintiff's long history of constipation and colon problems and the Emergency Department's recommendation that she apply hemorrhoid cream. *See* Ex. I, Hembree Dep. 228:6-15 (noting that the doctor had recommended hemorrhoid cream).

through rectum? A: Yes. I was trying to describe what I was seeing, because she had not consented to photos."). The accuracy of Nurse Graebe's findings is further called into question by the fact that it is inconsistent with the notes of the attending physician, Joelle Borhart, M.D., who examined Plaintiff and did not note any protruding tissue.

Given that Plaintiff's own experts have called into question Nurse Graebe's finding with regard to the alleged tissue protrusion from Plaintiff's rectum, the reliability of that finding is highly suspect and should be excluded.

C. **Given the Unreliability of the Physical Findings and the High Likelihood of Unfair Prejudice, the SANE Report and Nurse Graebe's Testimony Regarding Physical Findings Should Be Excluded under Rule 403.**

Under Federal Rule of Evidence 403, a district court must "engage in on-the-spot balancing of probative value and prejudice and [] exclude even factually relevant evidence when it fails the balancing test." *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (citation omitted). "[U]nfair prejudice within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee's note); *see also Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (explaining that evidence is unfairly prejudicial "if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case.") (citation omitted).

The SANE Report and Nurse Graebe's testimony about Plaintiff's alleged physical injuries fail the Rule 403 balancing test. The testimony at issue is extremely sensitive in that it addresses alleged physical injuries on delicate and private parts of a woman's body—her vagina and anus. Given the likelihood of such testimony provoking an emotional response from the jury, the Court should be particularly wary of admitting it under Rule 403. Furthermore, the

9

testimony will run the grave risk of misleading the jury who may be seduced by its "false aura of scientific infallibility," without grasping the inherent flaws in Nurse Graebe's findings. *See, e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1267, 1282 (E.D.N.Y. 1985) (excluding doctor's expert testimony based on his evaluation under Rule 403 where doctor "exclude[d] other potential causes [for patient's death] without any factual basis for doing so."). Weighed against the high risk of unfair prejudice and misleading the jury is the low probative value of the SANE Report and Nurse Graebe's testimony given the methodological flaws in how Nurse Graebe obtained her findings. Put differently, by permitting the SANE Report and Nurse Graebe's testimony to go before the jury, the Court runs the risk of inflaming the passions of the jury by permitting jurors to believe that Plaintiff suffered physical injuries to the most sensitive parts of her genitalia when, in all likelihood, Nurse Graebe's findings are inaccurate and the product of inexperience and flawed methodology.[6] Under these circumstances, Rule 403 requires the exclusion of the SANE Report and Nurse Graebe's testimony regarding Plaintiff's alleged physical injuries.

## CONCLUSION

For the foregoing reasons, the Court should exclude the SANE Report and Nurse Graebe's testimony regarding Plaintiff's alleged physical injuries.

Dated: October 16, 2015

Respectfully submitted,

/s/ *Jon R. Fetterolf*
Jon R. Fetterolf (D.C. Bar No. 479225)
Rachel F. Cotton (D.C. Bar No. 997132)
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000

---

[6] Nurse Graebe had not received her sexual assault nurse examiner certification at the time of Plaintiff's examination. Ex. B, Graebe Dep. 73:12-17. Prior to examining Plaintiff, Nurse Graebe had only conducted approximately twelve full SANE examinations. *Id.* at 246:1-4.

10

Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
jfetterolf@zuckerman.com
rcotton@zuckerman.com
*Attorneys for Defendant Alfredo Simon Cabrera*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically served using the CM/ECF system and e-mail on this 16th day of October 2015, on the following:

> Andrew G. Slutkin
> Christopher Mincher
> Steven J. Kelly
> SILVERMAN, THOMPSON, SLUTKIN & WHITE, LLC
> 201 North Charles Street, 26th Floor
> Baltimore, Maryland 21201
> aslutkin@mdattorney.com
> cmincher@mdattorney.com
> skelly@mdattorney.com

> /s/ *Rachel F. Cotton*
> Rachel F. Cotton