**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Jane Doe, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:14-cv-01005 (RBW) |
| | § | |
| Alfredo Simon Cabrera, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PORTIONS OF THE PROFFERED TESTIMONY OF PLAINTIFF'S EXPERT LINDA LEDRAY

Defendant Alfredo Simon Cabrera respectfully moves that this Court exclude portions of the proffered expert testimony of Linda Ledray, R.N. ("Ledray").  Defendant's counsel has conferred with Plaintiff's counsel, as required by Local Civil Rule 7(m), and Plaintiff's counsel opposes the motion.

Ledray's expert report purports to offer several types of impermissible testimony, including opining on legal conclusions and unresolved questions of fact for the jury; opining on topics that are well outside her expertise as a Sexual Assault Nurse Examiner ("SANE"); giving opinions that rely on inaccurate and unreliable assumptions; and giving opinions that are contradicted by scientific literature.  Her proffered expert opinion as set forth in her expert report reads as follows:

> It is my opinion to a reasonable degree of medical certainty that this was a violent sexual assault.  Jane Doe clearly reported her lack of consent and unsuccessful attempts to stop the sexual contact and get away to both of her roommates, to the SANE nurse and to the law enforcement officer.  Her statements have been consistent.  She also suffered genital injuries that would be considered consistent with forced penetration and inconsistent with consenting sexual contact.  In addition, she appeared to be intoxicated to the point that she was unable to consent.  As often happens in alcohol-facilitated sexual assault cases, the pain of

penetration was sufficient that she became consciously aware of what was happening but unable to get away because of his size and strength and likely also because of her level of intoxication.

Having reviewed the medical records, it is also my opinion, to a reasonable degree of medical certainty, that the forensic examination on Jane Doe was performed in accordance with the policies and procedures that govern such examinations.   Based upon my review of the records and my knowledge, training, and experience, it is my opinion that Jane Doe's report was not 'late' and that she reported to police in a period that is well within the period in which most victims of sexual assault report.

Ex. A, Ledray Expert Report 4-5.   Most of these "opinions" are plainly improper expert testimony.  Indeed, Ledray withdrew a good number of these "opinions" during her deposition.[1]

Accordingly, Defendant moves that the Court limit Ledray's testimony to the following topics:   (1) that Plaintiff "suffered genital injuries that would be considered consistent with forced penetration;" (2) "to a reasonable degree of medical certainty, that the forensic examination on Jane Doe was performed in accordance with the [DOJ National Protocol] that

---

[1] Recognizing that an expert may not opine that a "violent sexual assault occurred," Ledray withdrew this opinion at her deposition.  Ex. B, Ledray Dep. 249:6-20;; *see also United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) ("Because jurors are equally capable of considering the evidence and passing on the ultimate issue of sexual abuse, however, a doctor's opinion that sexual abuse has in fact occurred is ordinarily neither useful to the jury nor admissible.") (citations omitted).

Ledray also retracted her proposed opinions that Plaintiff "clearly reported her lack of consent and unsuccessful attempts to stop the sexual contact and get away to both of her roommates, to the SANE nurse and to the law enforcement officer" and that Plaintiff's "statements have been consistent," in recognition that the jury was equally as competent to decide such questions of fact.  *See* Ex. B, Ledray Dep., 251:7-15, 253:6-15; *see also id.* at 129:4-132:17 (testifying that she did not intend to opine on what constitutes "consent").  And, of course, Ledray was simply regurgitating a version of the facts Plaintiff's counsel now advocates—one that is contradicted by Plaintiff's own statements to the police and testimony to the grand jury, which are anything but "consistent."

Ledray (and Plaintiff's counsel) further withdrew any testimony about Plaintiff's intoxication or "alcohol-facilitated" cases.  *Id.* at 121:13-17 ("I'm not going to give any opinion as far as how intoxicated she was or wasn't."); *see also* Pl.'s Mot. to Strike Def.'s Rebuttal Expert Witness Reports at 7 n.3, June 25, 2015, ECF No. 57 ("Ms. Doe concedes that any conclusion by . . . Dr. Ledray regarding Ms. Doe's level of intoxication or ability to consent because of intoxication would be inappropriate and does not intend to submit such testimony.").

To the extent that Ledray did not expressly withdraw her opinion that "the pain of penetration was sufficient that [Plaintiff] became consciously aware of what was happening but unable to get away because of his size and strength," the Court should exclude such opinion as, at best, an embellished version of what Plaintiff reported to the SANE nurse and, more realistically, rank speculation.

govern[s] such examinations;"[2] and (3) "that Jane Doe's report was not 'late' and that she reported to police in a period that is well within the period in which most victims of sexual assault report."  The remainder of Ledray's testimony should be excluded.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert evidence and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "When analyzing whether expert testimony is admissible under this test, the Court plays the role of a 'gatekeeper' with the responsibility to ensure that the proposed testimony is both reliable and relevant."  *United States v. Libby*, 461 F. Supp. 2d 3, 5-6 (D.D.C. 2006) (citing *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996) and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  The proponent of the expert testimony must establish by a preponderance of the evidence that the testimony satisfies both the reliability and relevance prongs of this test.  *Libby*, 461 F. Supp. 2d at 6.

The first prong of *Daubert* "establishes a standard of evidentiary reliability."  509 U.S. at 590.  Although the subject of the scientific testimony need not be "known to a certainty," it must

---

[2] In her deposition, Ledray clarified that the "policies and procedures" she referenced in her expert report referred to the Department of Justice's National Protocol for Sexual Assault Medical Forensic Examinations ("DOJ National Protocol").  Ledray Dep. at 319:12-20.

be "ground[ed] in the methods and procedures of science." *Id.* "Proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Id.*[3] The second prong of *Daubert* "goes primarily to relevance." *Id.* at 591.  In determining whether proposed scientific evidence satisfies the second prong, "courts have looked to a variety of factors, including:  '(1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility.'" *Libby*, 461 F. Supp. 2d at 7 (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)).  "Expert testimony will also be precluded if would usurp the jury's role as the final arbiter of the facts." *Id.* (citations omitted).

**ARGUMENT**

**A.     Ledray's Opinion that Plaintiff's Purported Genital Injuries are "Inconsistent with Consenting Sexual Contact" is Improper.**

Ledray seeks to opine that Plaintiff's injuries are *both* "consistent with forced penetration" and "inconsistent with consenting sexual contact." Ex. A, Ledray Expert Report 4.[4] This proffered testimony is impermissible for at least three reasons. First, by linking the two opinions together, Ledray is, in effect, stating that she believes Plaintiff was the victim of a "violent sexual assault"—an opinion that Ledray already has disavowed any ability to render, *see supra* 2 n.1, and one that is purely within the province of the jury to decide.  Second, this

---

[3] In *Daubert*, the Supreme Court provided a non-exhaustive list of factors to help determine whether the proffered testimony satisfies the reliability prong:  (1) whether the subject of the expert's testimony "can be (and has been) tested;" (2) "whether it has been "subjected to peer review and publication;" (3) "the known or potential rate of error" of the relevant scientific technique; (4) "the existence and maintenance of standards controlling the technique's operation;" and (5) whether there is "general acceptance" in the relevant scientific community.  509 U.S. at 593-94 (citations omitted).

[4] Plaintiff's Rule 26(a)(2) Expert Disclosures identify Joelle Borhart, M.D., and Jennifer Graebe, R.N. who examined Plaintiff at the hospital on the morning after the encounter with Defendant, as hybrid fact/expert witnesses who will offer similar testimony that Plaintiff's alleged injuries "are inconsistent with consensual sexual activity and consistent with forced vaginal and anal penetration." Ex. C, Pl.'s Rule 26(a)(2) Expert Disclosures 3-4, Apr. 15, 2015.  Plaintiff's counsel recently advised Defendant's counsel that these witnesses will not testify as experts.  To the extent Plaintiff seeks to still offer such testimony, however, their opinions should also be excluded for the same reasons.

combined "opinion" is based solely on the unreliable findings in the Sexual Assault Medical Forensic Record filled out by the SANE who conducted Plaintiff's exam ("SANE Report"). Finally, her opinion is not based on valid science.

> ### 1.    Ledray's Personal Opinion as to Whether Plaintiff was Assaulted is an Improper Usurpation of the Jury's Function

Ledray's combined opinion that Plaintiff's injuries are "consistent" with non-consenting sexual contact *and* "inconsistent" with consenting sexual contact is tantamount to opining on the ultimate issue in this case—whether the sexual encounter between Plaintiff and Defendant was consensual.  In *Velazquez v. Commonwealth*, the court reviewed the testimony of a SANE nurse who testified that the injuries she observed were "inconsistent with consensual intercourse" and "consistent with non-consensual intercourse."  557 S.E.2d 213, 219 (Va. 2002).  The Court noted that either opinion on its own would not preclude a finding by the jury that the injuries "resulted from some trauma other than a rape" and thus would not be problematic, *id.*, but when expressed together, the "testimony as a whole clearly expressed [the SANE's] opinion that A.L. was raped because [the SANE's] opinion excluded all other trauma as the cause of A.L.'s injuries.  In this sense, the combination of the two opinions 'closed the circle.'"  *Id.*  As a result, the court held that the testimony "improperly invaded the province of the jury on the ultimate issue of fact to be decided in the case."  *Id.*  Here, Ledray also seeks to impermissibly "close the circle" and express her opinion that non-consenting sexual contact occurred.  Her opinion, therefore, should be excluded.

> ### 2.    Ledray's Opinion Depends on the Unreliable SANE Report

Ledray did not examine Plaintiff, and her opinion regarding the cause of Plaintiff's alleged physical injuries is based entirely on the words and diagrams in the SANE Report. Significantly, because Plaintiff declined to be photographed as part of standard SANE

examination protocol, Ledray is simply left to guess what Plaintiff's alleged injuries look like. As set forth in Defendant's Motion *in Limine* to Exclude Testimony Regarding the SANE's Physical Findings and the SANE Report as Unreliable, which is hereby incorporated by reference, the SANE's findings are unreliable and inadmissible under Federal Rule of Evidence 403. As a result, Ledray should be precluded from testifying about the alleged injuries purportedly documented in that Report.

In her deposition, Ledray candidly acknowledged the limitations of her opinion:

Q:   Okay. So at this point in time, as it relates to the issue of injuries or procedures, you're solely relying on the SANE report?

A:   The SANE report and the—of what the SANE did, yes.

Q:   Okay. And have you done any sort of independent assessment of the accuracy of the depictions of the injuries in the SANE report?

A:   No.

Q:   Besides what's in the report, can you tell me any more about what any of these injuries look like?

A:   No.

Q:   And you haven't conducted any independent medical examination of the Plaintiff in any way.

A:   No.

Q:   So for purposes of your opinion, you assume that Nurse Graebe's descriptions are accurate?

A:   Yes.

Q:   Okay. And you're assuming her assessments are correct?

A:   Yes.

Q:   And so if she testified otherwise, . . . your opinion may have to change.

A:      Yes.

Ex. B, Ledray Dep. 159:20-160:22.  Indeed, because there are no photographs, Ledray confessed she did not know what any of the supposed injuries looked like.  *Id.* at 176:21-177:2 ("Q.  What did the swelling look like?  A.  I don't know, because I can only see the drawing.  I can only take her word that there was swelling."); *id.* at 209:17-210:12 (abrasions); *id.* at 236:11-17 (anal findings).

Because the SANE Report is inherently unreliable,[5] coupled with Ledray's inability to review any photographs of the alleged injuries, any expert testimony regarding the physical findings in the SANE Report is equally unreliable and inadmissible.  *See, e.g.*, *Emigh v. Consol. Rail Corp.*, 710 F. Supp. 608, 612 (W.D. Penn. 1989) ("[W]hen the underlying source is so unreliable as to render it more prejudicial than probative, making it inadmissible under Rule 403, Rule 703 cannot be used as a backdoor to get the evidence before the jury."); *Viterbo v. Dow Chem. Co.*, 646 F. Supp. 1420, 1424 (E.D. Tex. 1986) ("If the underlying data is so lacking in probative force and reliability that no reasonable expert could base an opinion on that data, then an opinion which rests entirely upon that data must be excluded.") (citation omitted).

**3.      Ledray's Opinion that Plaintiff's Alleged Injuries Are Not Consistent with Consenting Sexual Contact Is Not Supported in the Scientific Literature.**

Sexual contact of any kind—consensual or nonconsensual—can cause injury to female genitalia.  Indeed, studies have documented no statistical difference in the incidence of injury from consensual or nonconsensual intercourse.  *See, e.g.*, Sarah Anderson et al., *Genital Findings of Women After Consensual and Nonconsensual Intercourse*, 2 J. Forensic Nursing 59, 63

---

[5] Indeed, in at least one instance, Ledray appears to agree that the SANE nurse's findings are unreliable, testifying at her deposition that she had "no idea what [the SANE] meant" by "tissue from rectum protruding through rectum" and she did not know if that was even physically possible.  Ex. B, Ledray Dep. 237:11-19.  She stated that she had never seen a SANE Report which contained that description, *id.* at 237:20-238:1, and speculated that the SANE may have seen a "hemorrhoid."  *Id.* at 239:8-9.

(Summer 2006) (finding "no statistical difference in the presence of injury between the [consensual and non-consensual] groups."). Ledray acknowledges that consenting sexual contact can cause injuries and testified that she has witnessed injuries resulting from consensual sex. Ex. B, Ledray Dep. 264:1-20. In other words, the findings from any SANE examination—injuries or not—can be consistent with consenting or non-consenting sexual contact.

Despite this reality, Ledray failed to explain in her expert report the basis for her opinion that Plaintiff's injuries were "inconsistent with consenting sexual contact." Under questioning at her deposition, Ledray stated that her opinion that Plaintiff's injuries were "inconsistent with consenting sexual contact" was based on Ledray's assumption that Plaintiff had "multiple injuries." Ex. B, Ledray Dep. 257:17-259:6. But even assuming that Plaintiff did have multiple injuries—an assumption based entirely on the unreliable findings in the SANE Report which cannot be tested given the lack of photographs—Ledray's opinion is not supported by reliable scientific methodology. There is a dearth of literature on the number of injuries occurring during sexual intercourse, but three past studies have "had information regarding number of lesions [sustained during consensual sexual intercourse]. These figures vary from 0 to 75% having more than one lesion." Birgitte S. Astrup et al., *Nature, frequency and duration of genital lesions after consensual sexual intercourse—Implications for legal proceedings*, 219 Forensic Sci. Int'l 50, 50 (2012). In the Astrup study, of women who recently had consensual sexual intercourse, approximately 21% of women had more than one lesion as seen with toluidine blue dye and approximately 12% of women had more than two lesions as seen with toluidine blue dye. *Id.* at 52. In other words, consensual sexual contact may cause multiple injuries in a significant percentage of women. Accordingly, Ledray's opinion that she can determine from the "fact" of "multiple injuries" that forced penetration occurred is not grounded in science and, therefore,

should be excluded. *Daubert*, 509 U.S. at 590 ("Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known.").

      **B.**    **Ledray's Opinion As to "Policies and Procedures" Must Be Limited to the DOJ National Protocol.**

Ledray lastly opines: "Having reviewed the medical records, it is also my opinion, to a reasonable degree of medical certainty, that the forensic examination on [Plaintiff] was performed in accordance with the policies and procedures that govern such examinations." Ex. A, Ledray Expert Report 4. Ledray never identifies in her report which "policies and procedures" she believes governs such examinations or the specific policies and procedures the SANE followed in Plaintiff's examination. Ledray later testified that by "policies and procedures," she was referring to the DOJ National Protocol. Ex. B, Ledray Dep. 319:12-3:20-4. To the extent that Ledray seeks to render opinions about any other policies or procedures, her testimony should be excluded on the grounds that she failed to identify any other such policies and procedures as the subject of her opinion. In fact, Plaintiff and her experts have failed to provide any local or institutional policies and procedures that governed Nurse Graebe's examination and accordingly any testimony about whether the SANE examination was conducted consistent with such policies and procedures should be excluded.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant requests the exclusion of Ledray's proffered expert opinion except as to the following opinions: (1) that Plaintiff "suffered genital injuries that would be considered consistent with forced penetration;" (2) "to a reasonable degree of medical certainty, that the forensic examination on Jane Doe was performed in accordance with the [DOJ National Protocol] that govern[s] such examinations;" and (3) "that Jane Doe's report was not

'late' and that she reported to police in a period that is well within the period in which most victims of sexual assault report."

Dated: October 16, 2015

Respectfully submitted,

/s/ *Jon R. Fetterolf*
Jon R. Fetterolf (D.C. Bar No. 479225)
Rachel F. Cotton (D.C. Bar No. 997132)
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Tel:  (202) 778-1800
Fax:  (202) 822-8106
jfetterolf@zuckerman.com
rcotton@zuckerman.com

*Attorneys for Defendant Alfredo Simon Cabrera*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically served using the CM/ECF

system and e-mail on this 16th day of October 2015, on the following:

> Andrew G. Slutkin
> Christopher Mincher
> Steven J. Kelly
> SILVERMAN, THOMPSON, SLUTKIN & WHITE, LLC
> 201 North Charles Street, 26th Floor
> Baltimore, Maryland 21201
> aslutkin@mdattorney.com
> cmincher@mdattorney.com
> skelly@mdattorney.com

> /s/ *Rachel F. Cotton*
> Rachel F. Cotton