# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------

Jane Doe,

     Plaintiff,

       v.

Alfredo Simon Cabrera,

     Defendant.

---------------------------------------------------------------

§
§
§
§  Case No. 1:14-cv-01005 (RBW)
§
§
§
§
§

## DEFENDANT'S MOTION FOR BIFURCATION OF THE TRIAL

In the interests of avoiding prejudice, promoting a clear and effective presentation of the issues, and promoting judicial economy, Defendant Alfredo Simon Cabrera, through undersigned counsel, hereby moves, pursuant to Federal Rule of Civil Procedure 42(b), for bifurcation of the trial in this matter into a liability phase and, if necessary, a damages phase. Defendant's counsel has conferred with Plaintiff's counsel, as required by Local Civil Rule 7(m), and Plaintiff's counsel opposes the motion.

## INTRODUCTION

Bifurcation of the trial of this case is warranted because evidence of Defendant's net worth, which is necessary for Plaintiff to claim punitive damages but wholly irrelevant to the question of liability, could improperly prejudice and influence the jury's liability determination. Damages issues—relating to both compensatory and punitive damages—should be tried in a separate damages phase only after and if the jury finds liability. Such a division would help focus the jury's attention during the liability phase on the facts of the night of the alleged assault. This would avoid potential prejudice to Defendant or Plaintiff that could result from the concurrent presentation of damages-related evidence regarding Plaintiff's mental and emotional problems pre-dating and post-dating that night. Trying liability before damages would also

promote efficiency, as the latter will involve complicated and extensive medical testimony that would become unnecessary should Defendant prevail on liability.

## APPLICABLE LAW

A court may bifurcate claims or issues for separate trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). A court has "broad discretion" in determining whether to bifurcate, and a court "may order a case bifurcated even if only one criterion from Rule 42(b) is satisfied." *Am. Nat'l Red Cross v. Travelers Indem. Co.*, 924 F. Supp. 304, 306 (D.D.C. 1996) (citations omitted).

Because "[b]ifurcation may be appropriate 'where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue,'" *Athridge v. Aetna Casualty & Surety Co.*, 604 F.3d 625, 635 (D.C. Cir. 2010) (quoting *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996)), the separation of the liability and damages phases of a trial is an "obvious use" for Rule 42(b) as, "[l]ogically, the existence of liability must be resolved before damages are considered," 9A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 2390 (3d ed. 2008). Courts in the District of Columbia and elsewhere routinely try liability and damages separately. *See, e.g.*, *Winstead v. Dist. of Columbia*, 840 F. Supp. 2d 149, 161 (D.D.C. 2012); *Harbor Ins. Co. v. Omni Constr., Inc.*, No. 86-0954, 1987 WL 12789, at *2 (D.D.C. June 11, 1987); *In re Ampicillin Antitrust Litig.*, 88 F.R.D. 174, 178-79 (D.D.C. 1980); *see also* Wright, *supra* § 2390 (collecting cases).

## ARGUMENT

Bifurcation of the trial of this case is necessary given Plaintiff's request for punitive damages. Considerations of fairness and efficiency also favor division of the trial into a liability phase and a damages phase, with the former focusing on the night of the alleged assault and the

latter involving an evaluation of compensatory and punitive damages, to occur, if at all, after a jury finding of liability.

### A.    Plaintiff's Request for Punitive Damages Necessitates Bifurcation of the Trial of This Case.

Plaintiff's request for punitive damages compels bifurcation of the trial.  Under District of Columbia law,[1] recovery of punitive damages is permissible "only if it is shown by clear and convincing evidence that the tort committed by the defendant was aggravated by egregious conduct and a state of mind that justifies punitive damages."  *Chatman v. Lawlor*, 831 A.2d 395, 400 (D.C. 2003) (citation omitted).  In addition to establishing that the defendant engaged in "outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights," *Vassiliades v. Garfinckel's*, 492 A.2d 580, 593 (D.C. 1985) (citations omitted), a plaintiff seeking punitive damages "*must* establish the defendant's net worth at the time of trial." *Chatman*, 831 A.2d at 402 (emphasis in original; citations omitted); *see also Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 941 (D.C. 1995) ("Because the purpose of punitive damages is to punish a tortfeasor and deter future conduct, the amount of such damages should be enough to inflict punishment, while not so great as to exceed the boundaries of punishment and lead to bankruptcy." (citations omitted)).  Because evidence of a defendant's net worth is essential to a request for punitive damages, but typically irrelevant and highly prejudicial to a jury's deliberations regarding liability, courts in the District of Columbia and elsewhere frequently try punitive damages separately from liability.  *See, e.g.*, *Am. Nat'l Red Cross*, 924 F. Supp. at 308.

The need to bifurcate punitive damages from liability is particularly acute in this case, given that Plaintiff has not requested evidence of Defendant's net worth during discovery, and

---

[1] District of Columbia law governs the availability of punitive damages in this diversity action.  *See Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66-67 (D.D.C. 2002).

instead has only asked for Defendant's recent professional baseball contracts, which establish his prior salary, but certainly not his current worth. *See Welty v. Heggy*, 429 N.W.2d 546, 549 (Wis. Ct. App. 1988) (any measure of net worth other than the difference between the value of the assets and liabilities of the defendants at a time reasonably close to the date of trial is "illusory"), *cited in Jonathan Woodner Co.*, 665 A.2d at 941.   Having failed to seek discovery regarding Defendant's net worth, Plaintiff should not be allowed to explore the subject in front of the jury while it weighs evidence pertaining to liability, if at all.   Hearing that Defendant is a professional athlete who in the previous year received a multimillion-dollar salary may make the jurors more likely to resolve liability issues in Plaintiff's favor so as to be able to award her at least some money. *See N.D. Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D.N.D. 2004) ("Evidence of the defendants' net worth, although relevant to issues concerning the claim for punitive damages, can have an adverse effect on jury deliberations concerning liability and compensatory damages.").   Thus, there is a significant risk of substantial and substantive prejudice to Defendant should liability and punitive damages be tried together.   Bifurcation provides an obvious and appropriate mechanism for avoiding such prejudice.

**B.      Compensatory Damages, Too, Should Be Tried Separately From Liability.**

Liability is also in this case readily separable, factually and legally, from issues relating to compensatory damages. *See Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 98 (S.D.N.Y. 2001) (granting motion to bifurcate in part because "the issues of liability and damage are not inextricably intertwined such that they must be tried together").   Whether Plaintiff can establish Defendant's liability will (or at least, should) depend entirely on a jury's perception of what occurred on a single night in April, 2013, when Plaintiff alleges she was assaulted.   On the other hand, whether and to what extent Plaintiff suffered damages in the form of "extreme and

4

permanent pain and suffering, humiliation, mental distress, medical expenses, and lost wages"[2] as a result of the alleged assault will depend on evidence relating to Plaintiff's life after that night, as compared to her life before that night, and thus likely involve testimony from the numerous treating psychiatrists and therapists that Plaintiff saw both before and after the alleged event, as well Plaintiff's family and friends who knew her both before and after alleged event. The fundamental separateness of these liability and compensatory damages inquiries informs a number of additional considerations weighing in favor of bifurcation.

Perhaps most critically, there is a high likelihood that trying liability and damages together could result in significant prejudice to Defendant. *See Miller v. N.J. Transit Auth. Rail Operations*, 160 F.R.D. 37, 41 (D.N.J. 1995) ("'[A] paramount consideration in ruling on a motion to bifurcate is a fair and impartial trial to all litigants'" (quoting *Beauchamp v. Russell*, 547 F. Supp. 1191, 1199 (N.D. Ga. 1982))); *Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998) (listing among factors considered in determining bifurcation issues "[t]he likelihood that bifurcation, or the failure to bifurcate, would result in risk of substantive prejudice, such as the jury not deciding any aspect of the case strictly on the merits of the evidence"). Plaintiff will likely offer extensive damages testimony relating to her emotional and mental states during the years following the alleged assault, including from the numerous treating psychiatrists and therapists she met with after the alleged assault. Defendant will then submit additional testimony related to myriad mental and emotional problems Plaintiff suffered from before the alleged assault to rebut any proposition that the events of April 28, 2013 could have been the cause of Plaintiff's current problems. Each side's damages evidence has no

---

[2] Defendant is filing, concurrently with this motion, a motion *in limine* for sanctions precluding evidence of Plaintiff's claimed compensatory damages, pursuant to Fed. R. Civ. P. 37(c)(1), in light of Plaintiff's discovery-undermining failure to timely disclose a computation of her damages as required by Fed. R. Civ. P. 26 and LCvR 26.2.

5052331.7

tendency to prove what happened on the night of the alleged assault, but risks arousing the sympathies of the jury and causing the jury to decide liability not strictly on the merits of the relevant evidence. *See Helminski v. Ayerst Labs.*, 766 F.2d 208, 212 (6th Cir. 1985) (bifurcation is warranted when "the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination" (citation omitted)).[3]

Prejudice is not the only Rule 42(b) consideration necessitating bifurcation.  Here, bifurcation would also promote judicial economy by reducing the length of the proceeding if there is no liability finding.  A consolidated trial would involve the presentation of extensive evidence and testimony relevant only to damages, which would be obviated in a bifurcated trial if the jury were to return a verdict in Defendant's favor on liability.[4]  "[L]iability must be resolved before damages may be considered," and here, as is "[o]ften" the case, "the evidence relevant to the two issues is wholly unrelated." *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) (citation omitted).  At least four mental health experts—three by Plaintiff and one by Defendant—have been designated to offer extensive testimony.  There will also be friends and family members of Plaintiff that Plaintiff and Defendant seek to call in connection with their damages presentations.  All of this testimony, which is among the most complex evidence in this case, would be rendered unnecessary should the jury, following a bifurcated liability phase, return a verdict for Defendant, conserving considerable juror, court, party, and witness resources.  Moreover, certain general considerations of economy and efficiency that might, in appropriate

---

[3] For example, Plaintiff will offer evidence in the form of medical expert testimony that in the years since the alleged assault she has exhibited symptoms of post-traumatic stress disorder.  That evidence, in addition to being complex and not relevant to liability, would be prejudicial in that it would invite the jury to infer that Defendant was the source of the trauma, and may thereby influence the jury's liability determination. *See Mineo v. City of New York*, No. 09-cv-2261 (RRM)(MDG), 2013 WL 1334322, at *2 (E.D.N.Y. Mar. 29, 2013) (bifurcating liability and damages phases of *Monell* claim where plaintiff's damages evidence included "complicated, expert-based claims relating to post-traumatic stress and other damages issues").

[4] Defendant is filing, concurrently with this motion, a motion *in limine* to exclude cumulative and duplicative expert testimony.  That motion pertains in part to Plaintiff's proffered damages experts.

5052331.7

cases, counsel against bifurcation, such as the need for a second jury, jury charge, or deliberations period should the plaintiff prevail on liability, carry minimal weight here, given that Plaintiff's request for punitive damages in and of itself compels bifurcation of the trial.

## CONCLUSION

For the foregoing reasons, Defendant requests that the Court bifurcate the trial into a liability phase and, if necessary, a damages phase.

Dated:  October 16, 2015                    Respectfully submitted,

                                            /s/ *Jon R. Fetterof*
                                            Jon R. Fetterolf (D.C. Bar No. 479225)
                                            Rachel F. Cotton (D.C. Bar No. 997132)
                                            ZUCKERMAN SPAEDER LLP
                                            1800 M Street, N.W., Suite 1000
                                            Washington, DC 20036
                                            Tel:  (202) 778-1800
                                            Fax:  (202) 822-8106
                                            jfetterolf@zuckerman.com
                                            rcotton@zuckerman.com

                                            *Attorneys for Defendant Alfredo Simon Cabrera*

7

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing **DEFENDANT'S MOTION FOR BIFURCATION OF THE TRIAL** to be electronically filed with the Clerk of the Court by using the CM/ECF system on this 16th day of October, 2015, and electronically served via the CM/ECF system on the following:

Andrew G. Slutkin
Steven J. Kelly
Christopher Mincher
SILVERMAN, THOMPSON, SLUTKIN & WHITE, LLC
201 North Charles Street, 26th Floor
Baltimore, MD 21201
aslutkin@mdattorney.com
skelly@mdattorney.com
cmincher@mdattorney.com


                                        /s/ *Rachel Cotton*
                                        Rachel F. Cotton