# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANE DOE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:14-cv-1005 (ESH)** |
| **ALFREDO SIMON CABRERA,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Defendant Alfredo Simon Cabrera and interested non-party Benjamin Voce-Gardner filed a joint motion seeking to quash subpoenas served upon Marina Fernandez and Mr. Voce-Gardner in the above-captioned case pending before Judge Reggie Walton.  (Joint Motion to Quash Subpoena and for a Protective Order, Sept. 11, 2015, ECF No. 79 ("J. Mot.").)  The subpoenas arise from several text messages sent by Ms. Fernandez—employed at that time as a law clerk to Judge Walton—to Mr. Voce-Gardner, an associate at defense counsel's law firm of Zuckerman Spaeder.  Judge Walton referred consideration of the Joint Motion to the Calendar Committee for random reassignment, and as a result, this Court will address this motion only.  (Order, Sept. 14, 2015, ECF No. 83 ("Referral Order").)  For the reasons explained more fully herein, the Court grants the motion in part and denies it in part.

## I.    HISTORY

### A.  Facts

The factual circumstances underlying the present discovery dispute have been discussed in detail by Judge Walton.  (*See* Memorandum Opinion, Sept. 30, 2015, ECF No. 89 ("Disqualification Memo. Op.").) For purposes of this motion, an abbreviated recitation will suffice.  On August 6, 2015, one of

Judge Walton's law clerks, Marina Fernandez, sent several text messages to Benjamin Voce-Gardner, an associate at Zuckerman Spaeder who had entered an appearance on behalf of defendant in the above-captioned case. (*See* Order, Aug. 18, 2015, ECF No. 75, Ex. A ("Zuckerman Spaeder Letter").)  Judge Walton had previously screened Ms. Fernandez from substantive involvement in the case due to the fact that her father was and remains a partner at Zuckerman Spaeder. (*Id.* at Ex. C ("Fernandez Decl.").) Ms. Fernandez had enjoyed a personal relationship with Mr. Voce-Gardner since January 2015, when he represented her in an unrelated legal matter on a pro bono basis and the two "became friends." (*Id.*) Whether Judge Walton was made aware of this relationship, prior to revelation of the ex parte text messages, is unclear from the record; plaintiff, however, was not. (Pl.'s Opposition to Joint Motion to Quash, Sept. 28, 2015, ECF No. 87 ("Pl.'s Opp'n") at 4.)

On August 5, Ms. Fernandez attended a hearing in which Judge Walton considered arguments on three pending motions,[1] including defendant's Motion for Disclosure of [Plaintiff's] Grand Jury Testimony. (*See* Transcript, Mot. Hear. Before J. Walton, Aug. 13, 2015, ECF No. 74.)  On August 6, at 2:56 p.m., Ms. Fernandez texted Mr. Voce-Gardner: "You're going to owe me a beer, FYI."  (Pl.'s Sur-Reply in Opp'n to J. Mot, Oct. 14, 2015, ECF No. 94 ("Pl.'s Sur-Reply"), Ex. B.)  At 3:34 p.m. that same day, Judge Walton issued an order granting defendant's Motion for Disclosure.  (Order, Aug. 6, 2015, ECF No. 72.)  Then, at 4:25 p.m., Ms. Fernandez texted Mr. Voce-Gardner: "Yes, as of 3:34 today you owe me a beer (or wine!)."  (Pl.'s Sur-Reply, Ex. B.)  At an unspecified time later that afternoon, she sent him a final text: "Dude, it's a joke. Let's catch up soon for real though."  (*Id.*)

After Judge Walton scheduled an emergency status conference to address the apparent impropriety, Zuckerman Spaeder sent a letter to the Court divulging the content of the text messages

---

[1] The hearing included argument on: defendant's Motion for Disclosure of Jane Doe's Grand Jury Testimony, July 17, 2015, ECF No. 63; defendant's Motion to Conduct Mental Health Examination of Plaintiff, May 13, 2015, ECF No. 46; and plaintiff's Motion to Strike Certain Rebuttal Expert Reports, June 25, 2015, ECF No. 57.

(albeit not the text messages themselves),[2] and adding that Ms. Fernandez had also sent a "similarly worded" text message to her father that same day.  (Zuckerman Spaeder Letter.)  The letter also revealed an additional text message sent by Ms. Fernandez to Mr. Voce-Gardner on June 29, 2015, in which Ms. Fernandez informed Voce-Gardner that she had recently dealt with a discovery dispute with the parties over the phone and expressed an eagerness to socialize with Voce-Gardner if and when he happened to be in Washington, D.C.  (*Id.*)

### B.  Procedural History

Following the emergency status conference held on August 18, 2015, plaintiff filed a motion to disqualify Judge Walton.  (Pl.'s Motion to Disqualify, Aug. 28, 2015, ECF No. 77 ("Mot. to Disqualify").)  Plaintiff argued that the undisclosed prior relationship between the law clerk and Voce-Gardner, the law clerk's text messages, and the ruling favorable to defendant on the Motion for Disclosure cast doubt on the legitimacy of that and other rulings by Judge Walton.  Plaintiff further submitted that, considered in their totality, the circumstances reflected substantive bias on the part of the Court, or at the very least, created an "appearance of impropriety."  (*Id.* at 1.)  Plaintiff sought extensive discovery to bolster her argument for disqualification by subpoenaing documents from both Mr. Voce-Gardner and Ms. Fernandez, prompting defendant and Voce-Gardner (as an interested non-party to the underlying civil case) to file a Joint Motion to Quash Subpoena and for a Protective Order.[3]  Judge Walton retained jurisdiction over the Motion to Disqualify, but requested that the Court's Calendar

---

[2]  Initially, only the content of the messages was provided to plaintiff.  The Court understands that some of the actual text messages have since been produced to plaintiff in redacted form.  (*See* Pl.'s Sur-Reply, Ex. B.)

[3]  Defendant seeks a protective order under Rule 26(c)(1) with respect to both the subpoena served upon Ms. Fernandez and that served upon Mr. Voce-Gardner.  (J. Mot. at 2.)  Mr. Voce-Gardner seeks to quash his subpoena under Rule 45(b)(2)(B) and a protective order under Rule 26(c)(1).  (*Id.*)  Ms. Fernandez did *not* join in the Joint Motion as an interested non-party.  Although her representative sent a letter to plaintiff's counsel objecting to the scope of the subpoena (*see* J. Mot., Ex. E), Ms. Fernandez's attorney has neither entered an appearance, nor did he participate in the conference call addressing the discovery dispute.  (Transcript, Conf. Call, Sept. 29, 2015, ECF No. 94, Ex. A.)

Committee randomly reassign the Joint Motion to Quash to another member of the Court.  (Referral Order.)

Before the parties could file responsive pleadings on the discovery dispute, Judge Walton issued a twenty-seven page Memorandum Opinion denying plaintiff's Motion to Disqualify.  In the last four pages of the decision, Judge Walton addressed the reassigned discovery dispute. (Disqualification Memo. Op. at 24) ("Simply put, through the Court's representations at the emergency telephonic conference and the two law clerks' declarations, the plaintiff has all the information she needs to advance the strongest case she can muster for the Court's recusal.").

Thereafter, this Court questioned how Judge Walton's opinion might impact the resolution of the reassigned discovery dispute and asked the parties to brief two separate issues: first, whether Judge Walton's refusal to recuse himself from the case rendered the corresponding discovery motion moot, and second, whether this Court still possessed jurisdiction to rule upon the issue when another member of the Court had already "address[ed] the propriety of any discovery."  (Order, Oct. 4, 2015, ECF No. 90 (quoting Disqualification Memo. Op. at 23 n.28).)

## II.   ANALYSIS

The Joint Motion before the Court attacks the two subpoenas on both procedural and substantive fronts: defendant and Mr. Voce-Gardner first contend that Judge Walton's denial of plaintiff's Motion to Disqualify has mooted any outstanding discovery dispute by resolving the very issue as to which plaintiff sought discovery; second, they contend that this Court is precluded from reviewing another district court judge's ruling on the necessity for further discovery; and finally, they argue that the subpoenas are unnecessary, overbroad, and deployed solely to "fish[]" for grounds to impeach a perfectly adequate internal investigation conducted by Judge Walton.  (J. Mot. at 2) ("This Court plainly does not require additional

discovery to determine what happened in its own chambers…the Court has conducted its own inquiry and reach its own conclusions. That should be the end of the matter.").

The Court addresses each of these arguments in turn.

## A. Mootness

First, there is a question whether Judge Walton's Memorandum Opinion denying plaintiff's Motion to Disqualify has rendered the discovery dispute moot. Plaintiff argues that the scope of discovery is not limited to the judicial disqualification issue and was never intended to be. (Pl.'s Sur-Reply at 1.) Indeed, plaintiff expressly reserved the right to seek disqualification of defense counsel in her original Motion to Disqualify. (See Mot. to Disqualify at 13 n.8.) Further, courts have broad discretion to decide whether to grant formal discovery tailored to produce evidence for motions to disqualify counsel. See, e.g., United States v. Philip Morris Inc., 312 F. Supp. 2d 27, 35 (D.D.C. 2004).[4]

The question nevertheless remains whether the reassignment of the Joint Motion to Quash limits this Court to adjudicating discovery *exclusively* in furtherance of the judicial disqualification motion (which had been filed), or whether its grant was broader and contemplated evidence that could support future motions as well. The assigned motion was predicated on the two subpoenas, neither of which give any indication as to their purpose or motivation. The subpoenas simply demanded wide-ranging discovery from Ms. Fernandez and Mr. Voce-Gardner.

Moreover, as both a general matter and in the context of disqualification, the law supports a prospective view of ancillary discovery requests and does not require subpoenas to target evidence

---

[4] While there may be merit to plaintiff's contention that the pending discovery dispute is unfettered from the failed motion for judicial disqualification, it is noteworthy that there is no pending motion to disqualify defense counsel, and such motions are generally disfavored in this Circuit. *See Koller By & Through Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984) *vacated sub nom. Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985). If plaintiff elects to file such a motion, however, it will be adjudicated by Judge Walton, and not this Court.

relevant only to motions that have already been filed. *See Cobell v. Norton*, 237 F. Supp. 2d 71, 101 n.26 (D.D.C. 2003) (discovery is appropriate to gather "admissible evidence in support of a pending or contemplated motion for disqualification"); *see also Cheeves v. S. Clays, Inc.,* 797 F. Supp. 1570, 1580 ("the discovery mechanisms of the Federal Rules of Civil Procedure would be available in an appropriate case to a party who contemplates filing a motion for disqualification"); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (Rule 26(b)(1) has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case….Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.").

There is, however, contrary support for the interpretation that this Court's purview is limited to discovery for the motion to disqualify Judge Walton. The Referral itself ordered the Calendar Committee to reassign the Joint Motion to Quash "(and not this case)" to another member (Referral Order), and defendant's Joint Motion characterized the present dispute as concerning "the discovery…relate[d] to Plaintiff's Motion to Disqualify the Court." (J. Mot. at 1.)  Until this Court raised mootness concerns, even plaintiff appeared to presume the narrower interpretation by frequently limiting her argument to the disclosure of evidence in furtherance of a motion to disqualify a *judge*. (*See, e.g.* Pl.'s Opp'n at 7 (explaining under what circumstances "[d]iscovery in aid of a motion for judicial disqualification is appropriate").)

Fortunately, this Court need not decipher the parameters of the Referral Order in order to resolve the mootness issue.  Judge Walton denied the motion for disqualification without prejudice and explicitly "le[ft] open the possibility that the resolution of that [Joint Motion to Quash and for a Protective Order] could result in the Court having to reconsider this Opinion."  (Disqualification Memo.

Op. at 26 n.30.)  In other words, Judge Walton expressly conditioned the finality of his ruling upon the resolution of the present discovery dispute.

Indeed, even if Judge Walton ultimately does not reverse his decision on recusal based on the fruits of further discovery, the discovery dispute should be resolved so that there is, if necessary, an adequate record for appellate review.  Courts have noted that, when it comes to disqualification proceedings, "as long as the trial court concludes that there will be an adequate record for appellate review, whether in the form of affidavits, documents, or submissions *in camera,* the court may in its discretion decide whether discovery is either warranted or inappropriate." *Philip Morris*, 312 F. Supp. 2d at 35; *see also General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d 704, 710 (6th Cir.1982) (a decision on disqualification is adequately founded if "the factual inquiry is conducted in a manner that will allow of appellate review[]); *Fullmer v. Harper*, 517 F.2d 20, 21-22 (10th Cir. 1975) (where serious ethical questions were raised in a disqualification motion, a colloquy between court and counsel was insufficient in the court below to develop a full record, and further investigation into the facts was required so that the appellate court could "have a record before it which will permit a meaningful review").

The Court therefore has determined that Judge Walton's Memorandum Opinion did not render the discovery dispute moot.  Judge Walton expressly reserved the right to reconsider his opinion based on this Court's adjudication of the Joint Motion to Quash.  Moreover, it is the duty of this Court to assemble a meaningful and complete record in the event of appellate review.

**B.  Preclusion**

The Court also requested that the parties address the implications of Judge Walton's assertion that "simply put…the plaintiff has all the information she needs to advance the strongest case she can muster for the Court's recusal."  (Disqualification Memo. Op. at 24.)  Because "one

7

district court does not have jurisdiction to review the decisions of another district court," *Klayman v. Kollar-Kotelly*, 2013 U.S. App. LEXIS 10148, at *2 (D.C. Cir. May 20, 2013), this Court thought it prudent to inquire whether, by adjudicating the requests for further discovery, it would be proceeding without jurisdiction.

Despite defendant's arguments to the contrary, Judge Walton's declaration of his skepticism of the need for discovery is best interpreted as dicta, and not a "decision" or "ruling" within the doctrine articulated in *Klayman.*  This reading is supported by the aforementioned footnote in Judge Walton's Memorandum Opinion that expressly contemplates this Court's resolution of the Joint Motion to Quash.  It would make little sense for Judge Walton to implicitly terminate the discovery dispute, and in the same opinion state: "The defendant and the associate recently filed a Joint Motion to Quash and for a Protective Order.  As alluded to earlier, the Court saw it prudent to refer that motion to another member of this Court for resolution. The Court leaves open the possibility that the resolution of that motion could result in the Court having to reconsider this Opinion."  (Disqualification Memo. Op. at 26 n.30.)

This Court is therefore not precluded from ruling upon the Joint Motion to Quash.

**C.  The Joint Motion and Subpoenas**

As the Joint Motion concedes, there is nothing "to prevent the party seeking recusal from trying to engage in discovery incident to a recusal motion."  (J. Mot. at 5.)  Discovery in aid of a motion for disqualification is appropriate when "the party seeking discovery is able to demonstrate in good faith, pursuant to Rule 26, a substantial basis that the discovery being sought appears reasonably calculated to lead to the discovery of admissible evidence in support of a pending or contemplated motion for disqualification, and that such information is not obtainable from some other source that is more convenient."  *Cobell*, 237 F. Supp. 2d at 101 n.26 (citations omitted).  For purposes of this motion, the discovery sought must therefore be reasonably calculated to lead to evidence that could support "a

showing of an appearance of bias or prejudice sufficient to permit the average citizen reasonably to question a judge's impartiality." *United States v. Bostick*, 791 F.3d 127, 155 (D.C. Cir. 2015) (citing *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981)).

At the outset, the Court agrees with defendant and Mr. Voce-Gardner that the majority of the requests in the two subpoenas are overbroad, unduly intrusive, and unlikely to lead to admissible or relevant evidence.  Requests for communications between Ms. Fernandez and Mr. Voce-Gardner dealing with unrelated legal matters implicate the attorney-client privilege and are not reasonably calculated to lead to evidence demonstrating any impropriety in *Doe v. Cabrera*.  (*E.g.* J. Mot., Ex. A, Voce-Gardner Subpoena, Req. 2.)  Similarly, the requests for exchanges involving Judge Walton and his two clerks invade the sanctity of chambers and the privileges enjoyed by judicial officers.  *See Cobell*, 237 F. Supp. 2d at 100 (describing "discovery of judicial officers" as an "extreme step" that is rarely permitted); *see also Terrazaas v. Slagle*, 142 F.R.D. 136, 139 (W.D. Tex. 1992) (noting the "sanctity of communications between the judges and their law clerks").[5]  The Court also finds the many requests for documents identifying cell phones and email addresses used by Mr. Voce-Gardner and Ms. Fernandez to be overbroad.  (*E.g.* Voce-Gardner Subpoena, Req. 7-8; Fernandez Subpoena, Req. 10-11.)

That said, serious issues involving the conduct of a judicial law clerk have come to light, and plaintiff is understandably concerned that Ms. Fernandez may have participated in a more extensive back-and-forth with defense counsel about the above-captioned case during her tenure as a law clerk.  We already know of one such example: in its Letter to the Court, defense counsel refers to a text message sent by Ms. Fernandez to her father (a partner at Zuckerman Spaeder) as "similarly worded" to the improper messages sent to Mr.

---

[5] In any event, plaintiff has conceded that "concerns about judicial privilege are weighty enough" that she has disclaimed the requests dealing with in-chambers communications and agreed to "properly withdraw them should the subpoenas be permitted to stand in other respects."  (Pl.'s Sur-Reply at 16.)

Voce-Gardner, but has not produced the actual text message to either plaintiff or the Court.  (Zuckerman Spaeder Letter.)

Given the incomplete state of the record and the need to assure itself that the relevant facts are known, the Court will order Ms. Fernandez and Mr. Voce-Gardner to submit to the Court for *in camera* review all documents reflecting or referring to communications between Ms. Fernandez and any member of Zuckerman Spaeder relating to *Doe v. Cabrera.  See Philip Morris*, 312 F. Supp. 2d at 35 (expressing the wisdom of *in camera* review of documents in aid of a disqualification motion).  Requests for material outside these targeted parameters serve no useful purpose and will therefore be denied.

## CONCLUSION

For the foregoing reasons, the Joint Motion to Quash Subpoena and for a Protective Order filed by defendant and interested non-party Benjamin Voce-Gardner is granted in part and denied in part.  A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   October 20, 2015